UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/17/2026

IN RE ELETSON HOLDINGS, INC.

26-cv-3620 (LJL)

OPINION AND ORDER

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Levona Holdings, Ltd. ("Levona"), Eletson Gas LLC ("Gas") and EMC Gas

Corp. ("EMC") move, pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of

Bankruptcy Procedure, and Rule 5011-1 of the Local Rules for the Bankruptcy Court of the

Southern District of New York, for an order withdrawing the reference to the Bankruptcy Court

for the Southern District of New York for *Levona Holdings Ltd. v. Eletson Holdings, Inc.*,

Adversary Proceeding No. 26-1036-jpm (the "Adversary Proceeding").  Dkt. No. 1.  The

Defendants include Eletson Holdings ("Holdings"); Eletson Corp. ("Corp"); Apargo Ltd.,

Fentalon Ltd., and Desimusco Trading Ltd. (collectively, the "Cypriot Nominees"); Vassilis

Kertsikoff, Vasilis Hadjieleftheriadis, and Lascarina Karastamati (collectively, the "Individual

Defendants"); and Reed Smith LLP, Charles G. Weller, and Louis M. Solomon (collectively, the

"Reed Smith Defendants").  For the following reasons, the motion to withdraw is granted.

## BACKGROUND

### I.    Prior Proceedings Before this Court and in the Bankruptcy Court

Since March 2023, the courts in this District have been flooded with filings arising out of

the dispute between three Greek shipping families and a Canadian hedge fund over the

ownership and control of what is reputed to be among the largest natural gas shipping company in the world.[1]

The Individual Defendants are members of the Greek shipping families; each controls the entities referred to in this Opinion as the Cypriot Nominees.  The special purpose vehicle Levona is managed by the Canadian hedge fund Murchinson Ltd ("Murchinson")., which controls both Levona and Pach Shemen, another company under common ownership.  The natural gas shipping company is Eletson Gas ("Gas").  Before the dispute began, the Greek shipping families and the Canadian hedge fund were partners in the operation of Gas through a Third Amended and Restated Limited Liability Company Agreement (the "LLCA").  *See* Dkt. No. 67-2.  The Greek shipping families owned Gas's common shares through their ownership of Eletson Holdings, which was in turn majority owned by Lassia Investment Co., Glafkos Trust Co., and Family Unity Trust Co. (the "Former Majority Shareholders"); the Canadian hedge fund owned Gas's preferred shares through Levona.  Trouble began when, as a result of the Covid-19 pandemic, shipping slowed and Gas ran into financial distress.  To forestall seizures of vessels owned by Gas, Levona extended a line of credit to Gas in exchange for Gas's interests in two vessels, the *Symi* and the *Telendos*, and subject to Holdings' rights to obtain Levona's preferred shares (and thereby to assume full ownership and control of Gas) by the exercise of an option if the loan was repaid or security or collateral was provided for it (the "Purchase Option").  The agreement between the parties was documented in a binding offer letter ("BOL") and related documents (the "Transaction Documents").  *See* Dkt. Nos. 67-10, 67-12, 67-13.  Thereafter,

---

[1] Familiarity with these proceedings is presumed.  For a full background with respect to the underlying dispute giving rise to this proceeding, *see Eletson Holdings, Inc. v. Levona Holdings, Ltd.*, 2026 WL 84510 (S.D.N.Y. Jan. 12, 2026); *In re Eletson Holdings Inc.*, 2025 WL 2710411 (S.D.N.Y. Sept. 22, 2025).

Murchinson assumed an interest in Holdings by purchasing its distressed debt through Pach Shemen.  Ultimately, two related disputes arose between the parties.

First, Holdings and its subsidiary Corp. brought claims in arbitration against Levona, and Levona brought counterclaims against Holdings after Levona attempted to sell a portion of Gas's fleet to a competitive shipping company, Unigas.  In short, Holdings and Corp. alleged, among other things, that they had become the full owners of Gas and that Levona was stripped of any ownership or control of the company because Holdings had exercised the Purchase Option and thereby obtained the preferred shares of Gas.  Levona alleged that it and not Holdings was the owner of the preferred shares because the Purchase Option had not been exercised, that Holdings and Corp. had mismanaged Gas, and that they were wrongly preventing Levona from completing the Unigas transaction or selling the *Symi* and *Telendos* in violation of the LLCA.  *See* Dkt. Nos. 67-16, 67-17.  In September 2023, an arbitrator ruled for Holdings and Corp., accepting their claims and rejecting Levona's counterclaims.  *See* Dkt. No. 67-58 (the "Final Award").  The dispute arrived to the undersigned that same month when Holdings moved to confirm the arbitral award and Levona moved to vacate it.  Dkt. Nos. 14, 28.  After initially finding that the award was confirmable, Dkt. No. 104, this Court ultimately granted summary judgment to Levona and vacated the award, finding that it had been procured by fraud, Dkt. No. 678.

Second, while (and even before) the parties were contesting confirmation and vacatur of the award before the undersigned, a separate saga was unfolding in the United States Bankruptcy Court for the Southern District of New York.  As noted, Pach Shemen had purchased the debt of Holdings.  On March 7, 2023, Pach Shemen and two other creditors of Holdings (the "Petitioning Creditors") commenced involuntary bankruptcy proceedings against Holdings and two affiliates (Eletson Finance (US) LLC and Agathononissos Finance LLC, the "Debtors").  *See*

3

*In re Eletson Holdings Inc.* (the "Bankruptcy Proceeding"), No. 23-10322, Dkt. No. 1 (Bankr. S.D.N.Y. filed Mar. 7, 2023).  On September 25, 2023, on motion of the Debtors, the Bankruptcy Proceeding was converted to a voluntary bankruptcy under Chapter 11.  *See* Bankruptcy Proceeding, Dkt. No. 215.  Ultimately, the Greek shipping families submitted one proposed plan of confirmation which would have kept them in control of Holdings (and thereby of at least the common shares of Gas), while the Canadian hedge fund through Pach Shemen and alongside the other Petitioning Creditors submitted their own proposed plan of confirmation.  The Bankruptcy Court found that the plan submitted by the Greek shipping families was unconformable and confirmed the plan submitted by Pach Shem and the other Petitioning Creditors on October 25, 2024.  *See* Bankruptcy Proceeding, Dkt. No. 1132.  Since that date, as the Bankruptcy Court has found, the Greek shipping families have gone to extensive efforts to undermine the plan of confirmation and to retain control of Holdings (and thereby of Gas).  Those efforts have led to numerous orders of contempt, each of which has been the subject of an appeal assigned to the undersigned as related to the arbitration matter.  *See In re Eletson Holdings*, 2025 WL 2710411, at *5–8 (detailing orders of the Bankruptcy Court).

## II.     The Proof of Claim

On December 18, 2023, before the Bankruptcy Court confirmed the Plan of Reorganization submitted by the Petitioning Creditors, Levona filed a proof of claim in the Bankruptcy Proceedings (the "Proof of Claim").  In it, Levona asserted that the Purchase Option lapsed without being exercised and that Levona remained the sole owner of Gas's preferred shares.  *See* Bankruptcy Proceeding, Dkt. No. 1997-1.  It alleges that Holdings "improperly interfered with Levona's management of Gas," resulting in hundreds of millions of dollars in injury to Levona.  *See id.* at 5.  Levona asserted claims for breach of the LLCA, fraud and fraudulent inducement in entering into the BOL, and related common law tort claims.  *Id.* at 9–

12.  The Proof of Claim remains pending and has never been adjudicated.

### III.   The Adversary Proceeding

Plaintiffs filed this adversary proceeding in Bankruptcy Court on April 24, 2026.  *See* Bankruptcy Proceeding, Dkt. No. 1997.  The defendants in the proceeding include: (1) Holdings and Corp., (2) the Cypriot Nominees, (3) the former officers and directors of Holdings and Corp. (the Individual Defendants), and (4) the law firm of Reed Smith, which represented Holdings and Corp. in the arbitration and confirmation proceedings and two of its partners (the Reed Smith Defendants).  Plaintiffs bring nine causes of action, which can be divided into two categories. First, in Count One, Plaintiffs seek a declaratory judgment against all defendants declaring that:

> Levona owns and controls Gas's preferred shares, the *Symi*, and the *Telendos*; that no Defendant owns or controls Gas's preferred shares, the *Symi*, or the *Telendos*; that the Purported Nominees and Individual Defendants, and all of their respective affiliates, lack authority to control the operations of Gas or its subsidiaries or the Symi; that the Reed Smith Defendants lack authority to represent Gas, EMC, or their respective subsidiaries; that the BOL Purchase Option was not exercised; and that the Purported Nominees were never nominated the receive the preferred shares of Gas[.]

*Id.* ¶ 113(a); *see also id.* ¶¶ 54–55.

Second, Plaintiffs asserts eight state-law common law claims against the defendants: (1) conversion against all defendants; (2) breach of contract against all defendants other than the Reed Smith Defendants; (3) tortious interference with contract against all defendants other than Holdings and Corp.; (4) tortious interference with prospective business relations against all defendants; (5) breach of fiduciary duty against Holdings, Corp., the Individual Defendants, and the Reed Smith Defendants; (6) violation of New York Judiciary Law § 487 against the Reed Smtih Defendants; (7) conspiracy against all Defendants; and (8) aiding and abetting against all Defendants.  *Id.* ¶¶ 56–112.

Plaintiffs seek to withdraw the reference of bankruptcy with respect to the recently filed

adversary proceeding, such that the claims will be adjudicated in this Court.  Dkt. No. 1.

## PROCEDURAL HISTORY

Plaintiffs filed this motion to withdraw the reference on May 1, 2026.  Dkt. No. 1.  On May 4, 2026, the Court issued an order directing that any opposition to the motion to withdraw the reference be filed by May 18, 2026 and any reply filed by May 25, 2026.  Dkt. No. 5.  On May 11, 2026, the Court granted the motion of Plaintiffs and the Reed Smith Defendants for an extension.  Dkt. No. 10.  On May 27, 2026, the Reed Smith Defendants filed their opposition to the motion to withdraw the reference, Dkt. No. 14, to which Plaintiffs replied on June 8, Dkt. No. 18.  No other defendants have responded to the motion to withdraw the reference.

## DISCUSSION

### I.    General Standards

Federal district courts have original jurisdiction over all civil proceedings "arising under," "arising in," or "related to" cases under Title 11 of the United States Bankruptcy Code.  28 U.S.C. § 1334(b).  In this District, these cases are automatically referred to the Bankruptcy Court.  *See In re Standing Order of Reference Re: Title 11*, No. 12-mc-32, Dkt. No. 1 (S.D.N.Y. Feb. 1, 2012).  A "district court may withdraw, in whole or in part, any case or proceeding referred under [28 U.S.C. § 157], . . . on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  In determining whether to exercise that authority, the court considers the three factors set forth by the Second Circuit in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993), as modified by *Stern v. Marshall*, 564 U.S. 462 (2011).  *See In re Celsius Network LLC*, 670 B.R. 379, 390 (S.D.N.Y. 2025).

First, the Court considers "whether the bankruptcy court may finally determine [the] proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court [that] is governed by Article III."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs.*

6

*LLC.*, 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013) (quoting *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. Nov. 7, 2012)).  The Bankruptcy Court may hear and enter final judgments in "core proceedings arising under title 11," *Stern*, 564 U.S. at 474, which are defined by statute and include, but are not limited to, "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of assets of the estate," 28 U.S.C. § 157(a)(2); *see In re Empire State. Grp.*, 2024 WL 3666381, at *4 (S.D.N.Y. Aug. 5, 2024) ("[A] claim is core when it is 'directly related to a bankruptcy court's central functions.'" (quoting *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005)).

Second, the Court considers "whether the claims at issue are legal or equitable, and thus 'whether a right to a jury trial exists.'"  *In re TS Emp., Inc.*, 2021 WL 5087928, at *2 (S.D.N.Y. Nov. 2, 2021) (quoting *Lehman Bros. Holdings, Inc. v. Hometrust Mortg. Co.*, 2015 WL 891663, at *2 (S.D.N.Y. Feb. 25, 2015)).  Though it is not dispositive, the fact that a claim may give rise to a right to a jury trial weighs in favor of withdrawal because a jury trial "cannot be conducted by a non-Article III court without consent of the parties."  *Dynergy*, 905 F. Supp. 2d at 534 n.3.

Third, the court examines "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  *Orion*, 4 F.3d at 1101.  Once a district court resolves the issue of adjudicative authority, "it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors" in making a determination as to whether to withdraw a reference of bankruptcy.  *Id.*

The party seeking withdrawal of the reference need not check all three of the *Orion* boxes.  Thus, whether a case is a core case or not is just one factor that a court must give significant weight in withdrawal analysis, but it is not dispositive; were it so, there would be no

need to consider efficiency, prejudice, uniformity, or any other factor.  *See DeWitt Rehab. &*
*Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 590 (S.D.N.Y. 2012) (acknowledging
that the "most important" factor "is whether the claim is core or non-core," but that "any factor
may have substantial importance in a given case, and none is dispositive"); *In re Northwest*
*Airlines Corp.*, 2008 WL 4755377, at *6 (S.D.N.Y. Oct. 28, 2008); *In re Schneorson*, 2024 WL
1242084, at *2 (E.D.N.Y. Mar. 22, 2024).  "In the final analysis, the critical question is
efficiency and uniformity."  *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998).

## II.    Application of the General Standards

The parties do not dispute that each count of the complaint in the Adversary Proceeding
except for Count One raises claims as to which the Bankruptcy Court cannot enter final
judgment, and that therefore the first factor in the *Orion* test is satisfied for at least the majority
of the claims in the Adversary Proceeding.  The bankruptcy court has final adjudicative authority
only if the proceeding resolves a proof of claim, if the parties have consented to the bankruptcy
court entering final judgment, or if the right being adjudicated is a public right.  *See In re Kossoff*
*PLLC*, 2024 WL 1892432, at *4 (S.D.N.Y. Apr. 29, 2024); *Roman Cath. Diocese of Rockville*
*Ctr., N.Y. v. Arrowood Indem. Co.*, 2021 WL 1978560, at *3 (S.D.N.Y. May 17, 2021); *Lehman*
*Bros. Holdings Inc. v. Wellmont Health Sys.*, 2014 WL 3583089, at *3 (S.D.N.Y. July 18, 2024).
Counts Two through Eight of the complaint in the Adversary Proceeding assert claims
respectively for conversion, breach of contract, tortious interference with contract, tortious
interference with prospective business relations, breach of fiduciary duty, violation of New York
Judiciary Law § 487, conspiracy, and aiding and abetting.  Each of those claims arises from
rights Plaintiffs allegedly held prior to and independent of Holdings' bankruptcy.  Plaintiffs do
not assert public rights.  *See In re Empire State Grp., LLC*, 2024 WL 3666381, at *3 ("The
public right[s] exception applies when the claim at issue derives from a federal regulatory

scheme, or it is deemed essential to a limited regulatory objective within the agency's authority that the claim be resolved by expert government agency." (citing *Stern*, 564 U.S. at 490)).  A "common law contract claim" "does not implicate a public right."  *Id.*; *see also Dynegy*, 905 F. Supp. 2d at 531 (deeming breach of contract claim "clearly outside" the public rights exception). So too with the tortious interference, conversion, conspiracy, breach of fiduciary duty, and judiciary law claims.  *See In re Arbco Cap. Mgmt.*, 479 B.R. 254, 266 (S.D.N.Y. 2012) (concluding that state law claims "are indisputably private rights").

There also is no dispute that Counts Two through Eight in the Adversary Proceeding are legal in nature, as opposed to equitable, and that a right to jury trial therefore exists.  *See In re TS Emp. Inc.*, 2021 WL 5087928, at \*2; *In re Iridium Operating LLC*, 285 B.R. 822, 835 (S.D.N.Y. 2002) ("A determination as to [this factor] . . . is effectively a question of whether the defendant has a right to a jury trial on th[e] [asserted] claims.").[2]  As the Reed Smith Defendants point out, they have a right to a jury trial on Plaintiffs' common law claims.  Dkt. No. 14 at 22–23.  They continue to note that the "reason that the Reed Smith Defendants' right to a jury trial is so clear is that the claims against them are state law claims brought by non-Debtors," such that the "[t]hese claims should never have been brought in court at all and should be dismissed for lack of subject matter jurisdiction."  Dkt. No. 14 at 22.  They expressly do not disclaim their ability to invoke their jury trial rights if the case proceeds past a motion to dismiss.  *Id.*  The other

---

[2] The request for a declaratory judgment "does not transform a contract dispute under [state] law into a dispute concerning public rights."  *In re Empire State Grp., LLC*, 2024 WL 3666381, at \*3 (quoting *Arrowood Indem. Co.*, 2021 WL 1978560, at \*4 n.12).  "Actions for declaratory judgments are neither legal nor equitable."  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 285 (1988).  Courts thus "look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy."  *Id.*; *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).

defendants have not yet appeared and have not foregone their jury trial rights.[3]

The Reed Smith Defendants argue that the Court should deny the motion to withdraw the reference because Count One of the complaint in the Adversary Proceeding seeks resolution of Levona's Proof of Claim and thus is within the Bankruptcy Court's final adjudicative authority. The Reed Smith Defendants also argue that Counts Two through Eight do not fall within this Court's jurisdiction and thus cannot provide a basis for withdrawal of the reference and that considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law counsel against withdrawal of the reference. Those arguments are not meritorious.

Plaintiffs concede that the Bankruptcy Court would have authority to enter final judgment as to Count One to the extent that such claim seeks resolution of the Proof of Claim against Holdings. Dkt. No. 1 at 15. The Proof of Claim itself falls within the core jurisdiction of the Bankruptcy Court. *See Stern*, 564 U.S. at 497; *see also Katchen v. Landy*, 382 U.S. 323, 330–31, 335 (1966) (holding that bankruptcy courts have authority to decide issues where the defendant has filed a proof of claim); *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (holding that a defendant that had filed a proof of claim is not entitled to a jury trial). By filing the Proof of Claim against Holdings, Levona subjected itself to bankruptcy court jurisdiction and knowingly gave up its right to a jury trial on those claims. *See In re Thomson McKinnon Secs. Inc.*, 153 B.R. 414, 416 (S.D.N.Y. 1993) ("The filing of a proof of claim in a bankruptcy case for distribution purposes is a public right which results in the creditor's loss of the right to demand a jury trial."); *In re Arbco*, 479 B.R. at 262 ("A creditor may subject itself to the binding authority of the bankruptcy court by filing a proof of claim against the bankruptcy estate.").

---

[3] Plaintiffs note that they "do not seek a jury trial on any of their claims." Dkt. No. 1-1 at 8 n.4.

It is not correct, however, that the entirety of Count One is within the Bankruptcy Court's adjudicative authority.  Count One seeks a declaration as against all defendants, including the Individual Defendants, the Cypriot Nominees, and the Reed Smith Defendants.  The Cypriot Nominees, for example, have asserted that they continue to own the preferred shares of Gas.  *See* Dkt. No. 692 at 5, 15.  That claim does not fall within the Bankruptcy Court's adjudicative authority.  That claim does not assert a public right; it asserts rights arising from the LLCA and the other Transaction Documents.

More fundamentally, however, the fact that an adversary proceeding in the Bankruptcy Court asserts a claim within the Bankruptcy Court's final adjudicative authority is not determinative of whether the proceeding should be withdrawn.  The Bankruptcy Court's authority is derivative of that of the district court; it is delegated.  Matters outside the Bankruptcy Court's adjudicative authority are more readily withdrawn because in such cases the Bankruptcy Court may only submit proposed findings of fact and conclusions of law; it cannot enter judgment.[4]  But even as to matters within the Bankruptcy Court's adjudicative authority, its judgment is still subject to review by this Court and, on appeal, by the Second Circuit.  *See Stern*, 564 U.S. at 474–75 ("Parties may appeal final judgments of a bankruptcy court in core proceedings to the district court, which reviews them under traditional appellate standards." (citing 11 U.S.C. § 158(a); Fed. R. Bankr. P. 8013)).  The losing party has the right to ask an Article III court to review the Bankruptcy Court's legal conclusions and factual findings.  *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

---

[4] "When a bankruptcy judge determines that a referred 'proceeding . . . is not a core proceeding but . . . is otherwise related to a case under title 11,' the judge may only 'submit proposed findings of fact and conclusions of law to the district court.'"  *Stern*, 564 U.S. at 475 (quoting 28 U.S.C. § 157(c)(1)).  "It is the district court that enters final judgment in such cases after reviewing de novo any matter to which a party objects."  *Id.*

11

Thus, while courts are hesitant to withdraw core proceedings from the bankruptcy court and should do so only "rarely," *Bambu Sales, Inc. v. Stern*, 1998 WL 760335, at *3 (E.D.N.Y. Sept. 1, 1998), they have not resisted doing so when withdrawal of the reference serves the interests of efficiency without undermining the values of uniformity and consistency.  In particular, courts have withdrawn references where the proceedings are "expected to be exceptionally complex" and raise common law questions outside the special competence of the bankruptcy court, *In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 384–85 (S.D.N.Y. 2008) (citing cases); *Pitts v. C.I.R.*, 2005 WL 1278528, at *3 (S.D.N.Y. May 10, 2005) ("The reference to the Bankruptcy Court may be withdrawn even as to core matters where the interests of efficiency and uniformity so dictate."); *In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50 (S.D.N.Y. 2005) (finding a core claim should be withdrawn because "there is a higher interest, and that is an overriding consideration of judicial efficiency"); *In re Chateaugay Corp.*, 2002 WL 484950, at *7 (S.D.N.Y. Mar. 29, 2002) ("Even where a bankruptcy proceeding involves 'core' claims, courts frequently exercise their discretion to withdraw the reference of bankruptcy if the bankruptcy action involves common questions of law and fact with a pending district court action."); *In re Pan Am Corp.*, 163 B.R. 41, 43 (S.D.N.Y. 1993).

It is not atypical that an adversary proceeding may involve claims that are within the bankruptcy court's adjudicative authority.  That does not foreclose withdrawal.  For example, a debtor faced with a notice of claim may assert counterclaims seeking relief that "goes beyond a 'mere setoff,'" *In re Complete Mgmt., Inc.*, 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002), and which could have been brought by the debtor in district court, *In re Leedy Mortg. Co., Inc.*, 62 B.R. 303, 306 (E.D. Pa. 1986).  A creditor faced with such claims is not foreclosed from seeking withdrawal of the reference by virtue of the fact that she has filed a related proof of

12

claim. Even if the adversary proceeding will have the effect of resolving the proof of claim, the court will withdraw the reference if it involves non-bankruptcy law issues and, for example, "extensive discovery and pretrial proceedings are necessary and inevitable," *In re Leedy*, 62 B.R. at 306, the proceeding would require a jury trial, *Am. Biometrics Corp. v. Univ. of Fla.*, 1989 WL 144931, at *3 (D.N.J. Nov, 20, 1989), or if it "raises legal issues more commonly resolved by th[e district] court than the bankruptcy courts," *In re Complete Mgmt.*, 2002 WL 31163878, at *3, or those that "are not regularly handled by the Bankruptcy Court," *Mosier v. Callister, Nebeker, & McCullough*, 2007 WL 951549, at *6 (D. Utah Mar. 26, 2007). The fact that an adversary proceeding would resolve a proof of claim is just one factor among many for the court to consider in determining whether withdrawal of the reference would foster judicial economy without compromising the values of consistency and uniformity. *See In re Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y. 1995).

Next, the Reed Smith Defendants argue that there is no subject matter jurisdiction over the state law claims against them, Dkt. No. 14 at 1, 11, leaving only the claim for a declaratory judgment against them. They further argue that "once the dust has settled, there may no longer be a live controversy to litigate concerning Plaintiffs' declaratory judgment claim." *Id.* at 12. They say that they are "unlikely" to oppose Plaintiffs' declaratory judgment claim and that the "remaining defendants are unlikely to appear in this dispute even if service is effectuated," leaving only Holdings and Corp., which are not adverse to Plaintiffs with respect to the claim for declaratory relief. *Id.* at 13. In effect, the Reed Smith Defendants appear to suggest that the Court should disregard the state law claims and the claims against all defendants other than Holdings and Corp. as contrivances to put just the proof of claim before the Court. There are several responses to that argument.

13

First, it is simply fallacious for the Reed Smith Defendants to assert as they do that "the bankruptcy court is in the best practical position to decide any jurisdictional questions in the first instance." Dkt. No. 14 at 12 (citing *In re Fairfield Sentry Ltd.*, 2010 WL 4910119, at \*4 (S.D.N.Y. Nov. 22, 2010)). To the contrary, it is the prerogative and the responsibility of an Article III court to determine the powers that Congress has or could grant the bankruptcy court. *See Stern*, 564 U.S. at 482; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54–55 (1989); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52 (1982). The Reed Smith Defendants quote the opinion in *In re Fairfield Sentry* out of context. The court there stated that the bankruptcy court was best positioned to determine "in the first instance, the manner in which this case can and should proceed" only because it had already determined that the bankruptcy court had greater "familiarity with the underlying facts and claims presented here." *Id.* (citation omitted). It did not make a categorical statement. In *In re Formica Corp.*, 305 B.R. 147 (S.D.N.Y. 2004), also cited by the Reed Smith Defendants, the district court directed that "the bankruptcy should decide in the first instance any motion to dismiss for lack of subject matter jurisdiction," only after deciding that the bankruptcy court should retain jurisdiction over the adversary proceeding and that the bankruptcy reference would not be withdrawn based on the *Orion* factors. *Id.* at 151. The decision speaks at most to the competence of the bankruptcy court to draft an opinion regarding its jurisdiction and not a ruling that, as a matter of law, bankruptcy courts should determine their own jurisdiction before the district court is asked to examine that jurisdiction.

Second, the point is more than academic here. The Reed Smith Defendants argue that the adversary proceeding raises "significant" jurisdictional issues. Dkt. No. 14 at 11. Regardless how the Bankruptcy Court were to resolve those issues then they would invariably come before

14

the Court in the form of an appeal either by Plaintiffs or by the Defendants.  This Court does not need proposed findings and conclusions to be able to decide those jurisdictional issues.  It can decide those issues on its own.  Indeed, it would undermine the interests of judicial efficiency as well as unnecessarily delay resolution of this dispute for the Court in effect to direct that the Bankruptcy Court hear the jurisdictional dispute only for the parties to do it all over again once the case has reached this Court.  *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011) (finding that "[i]t would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated").

Third, the Reed Smith Defendants tellingly do not argue that the Court lacks subject matter jurisdiction with respect to Plaintiffs' claims against the Cypriot Nominees and the Individual Defendants.  The only argument they make is that the Cypriot Nominees and Individual Defendants are unlikely to appear and defend against the claims against them even if they are properly served.  Dkt. No. 14 at 13.  Even if that is true, it would not follow that there would be no live controversy between the parties for the Court to resolve.  *Id.*  The Court could enter a default judgment both on the claim for declaratory relief and on the claims for money damages.  *See* Fed. R. Civ. P. 55; *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127–28 (2d Cir. 2011).  It would still have subject matter jurisdiction.  The state law claims and claims against the defendants other than Holdings and Corp. are not a "tail wagging the dog" to bring an otherwise presumptively un-withdrawable claim before the Court.  They are the dog.

Finally, the Reed Smith Defendants argue that there would be no efficiencies served by withdrawal of the reference because "the issues raised by the Complaint are distinct from the issues before this Court concerning the arbitration award," and the Adversary Proceeding has minimal overlap with the vacatur proceeding because the latter involved "arbitration fraud—not

full merits adjudication of the state-law claims presented here."  Dkt. No. 14 at 3, 17.  The Reed Smith Defendants underestimate the efficiencies that would be achieved by withdrawal of the reference and misstate the overlap between the Adversary Proceeding and the cases over which this Court has presided.

The Adversary Proceeding involves "exceptionally complex" issues that fall outside the core competence of the Bankruptcy Court.  *In re Enron*, 410 B.R. at 384–85.  The substantive issues concern the interpretation of the BOL and the LLCA; the facts and circumstances revolving around Levona's attempted sale to Unigas and Holdings' purported exercise of the Purchase Option; the relationship of the Cypriot Nominees and the Individual Defendants to the Former Majority Shareholders and the knowledge of those parties with respect to the LLCA; the BOL and the Transaction Documents; the duties owed by all of the defendants to Gas; and Reed Smith's conduct in representing the defendants.  *See* Bankruptcy Proceeding, Dkt. No. 1997.  The procedural issues are equally complex.  Reed Smith asserts that the Adversary Proceeding "will require additional discovery and evidence."  Dkt. No. 14 at 17.  The issues will likely include the extent of discovery that should be allowed and the ability to obtain discovery from outside the United States, the effect of the conduct of the Individual Defendants in failing to appear for their depositions in the vacatur proceedings, and the ownership of the privilege with respect to documents generated by or sent to or from Reed Smith by the Individual Defendants and the Former Majority Shareholders while the Former Majority Shareholders were exercising control over Holdings, and Gas and while Reed Smith was representing Holdings and Corp.  None of those issues will likely involve interpretation of the Bankruptcy Code.  They will involve questions of state, federal, and foreign law within the core competence of the district courts.

Nor would withdrawal of the reference for the Adversary Proceeding compromise the interests of "the uniform administration of bankruptcy law and intra-case uniformity." *Arrowood*, 2021 WL 1978560, at \*10 (citing *Dynegy*, 905 F. Supp. 2d at 533–34). "As for intra-case uniformity, courts in this district have found that uniformity is clearly served by leaving similar, related disputes in the hand of a single court." *In re Celsius*, 670 B.R. at 394 (cleaned up); *Bernard L. Madoff Sec.*, 2023 WL 6122905, at \*8. Plaintiffs represent without contradiction that none of the remaining proofs of claim in the Bankruptcy Proceeding raise issues regarding the ownership of the preferred shares and the *Symi* and *Telendos* or any of the other factual issues raised by the Proof of Claim at issue or the Adversary Proceeding. Dkt. No. 1-1 at 7. There is thus no risk that if this Court effectively resolves Levona's Proof of Claim, leaving it for the Bankruptcy Court to resolve other notices of claim, that the creditors of Holdings will be treated unfairly with respect to one another. As there are no other proceedings in the Bankruptcy Court that "involve[] similar allegations or claims to those charged herein," there is no uniformity gain to be made by denying withdrawal. *In re Celsius*, 670 B.R. at 394; *see also Michaelesco v. Shefts*, 303 B.R. 249, 254 n.6 (D. Conn. 2004) ("[B]ecause this action does not involve issues and claims similar to those asserted in other cases, there is minimal impact on the uniform administration of bankruptcy court proceedings."). In addition, because Plaintiffs' claims are based on state (or foreign) law, there is "no benefit" to the uniform administration of bankruptcy law, *Dynegy*, 905 F. Supp. 2d at 533, to be served by the Court denying the motion to withdraw the reference.

On the other hand, there are enormous efficiencies to be achieved from withdrawing the reference. In the first instance, this Court already has devoted substantial time and attention to the issues raised by the Adversary Proceeding. It has written a 124-page opinion holding that the

17

arbitration award was confirmable in which it reviewed at length the terms of the LLCA and the BOL and the facts and circumstances regarding the purported exercise of the Purchase Option. *See generally Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531 (S.D.N.Y. 2024). The Court also wrote a 138-page opinion vacating the Final Award based on fraud on the arbitrator in which it again reviewed at length the BOL, the facts regarding the exercise of the Purchase Option, and the conduct of the persons who are parties to the Adversary Proceeding with respect to the exercise of the purchase option. *See generally Eletson Holdings, Inc.*, 2026 WL 84510. The Court is intimately familiar with the lengthy record as it was developed before the arbitrator. It thus is well positioned to consider the issues raised by the Adversary Proceeding that turn on those same facts.

The Reed Smith Defendants argue that the Court has not previously resolved the substantive issues raised by the Adversary Proceeding. Dkt. No. 14 at 17–18. In the confirmation opinion, the Court considered whether the arbitrator's decision was in manifest disregard of the law. In the vacatur opinion, the Court considered whether the false testimony presented before the arbitrator was material given the issues the arbitrator was asked to determine. To reach its conclusions in both of those proceedings, the Court was required to review the relationship between the parties and to come to some understanding regarding the material facts. The same may be said with respect to the procedural issues—the Court has devoted attention to those as well, addressing the ability of the parties to obtain foreign discovery and nuanced issues regarding the attorney-client privilege. The Court should not need lead time to familiarize itself with respect to the facts and governing law; it has already devoted judicial attention to that exercise.

18

Second, the Reed Smith Defendants' argument would only multiply proceedings and create "delay and costs to the parties." *Orion*, 4 F.3d at 1101. With respect to the Reed Smith Defendants' jurisdictional argument, review first by the bankruptcy court and then by this Court would only prolong the proceedings and result in the unnecessary expenditure of resources by both the courts and the parties. The same can be said with respect to the substantive issues. The Bankruptcy Court lacks final adjudicative authority with respect to the claims against persons or entities who are the debtors (*i.e.*, everyone except for Holdings). The most that the Bankruptcy Court could do with respect to those claims would be to write proposed findings and conclusions, and the matter would have to come before this Court before judgment could be entered. Even if, hypothetically, the Bankruptcy Court could exercise final adjudicative authority with respect to some portions of the claims, the issues still would invariably come back before this Court to review, among other things, the Bankruptcy Court's determinations on matters of law. The dispute between the parties has been going on for three years in federal court. It has been going on for four years in total. During that time, the parties and the market have lacked certainty regarding the ownership and control of Gas and its vessels. There is no reason to add a layer that would create additional delay. "The need to litigate first in the bankruptcy court and then again in the district court could make the proceedings generally more costly for the parties" in a manner that is unnecessary. *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Cos.*, 634 B.R. 226, 238 (S.D.N.Y. 2021).

Those efficiencies are not overcome by the Reed Smith Defendants' observation that in July of 2025, Holdings, Corp., and an assortment of their subsidiaries brought an adversary proceeding against the Reed Smith Defendants in Bankruptcy Court. *See Eletson Holdings Inc., v. Reed Smith LLP*, Adv. Pro. No. 25-1120 (the "Holdings Adversary Proceeding"), Dkt. No. 1

19

(Bankr. S.D.N.Y. filed July 30, 2025).  The claims in that proceeding have been brought by reorganized debtors by their former bankruptcy counsel with respect to alleged violations of the confirmed plan of reorganization.  Holdings Adversary Proceeding, Dkt. No. 59.  They do not involve, as this Adversary Proceeding does, preexisting rights allegedly enjoyed by Plaintiffs.  The Reed Smith Defendants have not identified factual overlap between those proceedings that would overcome the similarities identified here between this Court's vacatur proceedings and the Adversary Proceeding.

Thus, the Court's "extensive familiarity with the facts underlying this litigation and with the specific issues in the adversary proceeding" favor withdrawing the reference.  *In re G.M. Crocetti, Inc.*, 2008 WL 4601278, at *6 (S.D.N.Y. Oct. 15, 2008); *see also 1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) (observing that "[t]he reference of the core proceeding may be withdrawn in the interests of efficiency when it presents an overlapping of facts, transactions, and issues with a case pending before the district court" (cleaned up)); *In re Green*, 200 B.R. 296, 299 (S.D.N.Y. 1996) (granting motion to withdraw where denial would "result in duplicative presentations," "unnecessary delay," and "deplet[ion of] both judicial resources and the assets of the bankruptcy estate").  The *Orion* considerations uniformly counsel in favor of withdrawing the reference to the Bankruptcy Court.

CONCLUSION

The motion to withdraw the bankruptcy reference is GRANTED.  The Clerk of Court is respectfully directed to close Dkt. No. 1.

SO ORDERED.

Dated: June 17, 2026
     New York, New York                                   _____
                                                              LEWIS J. LIMAN
                                                         United States District Judge

20