**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEVONA HOLDINGS LTD., ELETSON GAS LLC, and EMC GAS CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>ELETSON HOLDINGS, INC., ELETSON CORP., APARGO LIMITED, FENTALON LIMITED, DESIMUSCO TRADING LIMITED, VASSILIS KERTSIKOFF, VASILIS HADJIELEFTHERIADIS, LASCARINA KARASTAMATI, REED SMITH LLP (DELAWARE), REED SMITH LLP (ENGLAND & WALES), CHARLES G. WELLER, and LOUIS M. SOLOMON,<br><br>Defendants. | Case No. 1:26-cv-03620-LJL |

**STIPULATION AND ~~[PROPOSED]~~ ORDER REGARDING THE PRODUCTION AND EXCHANGE OF ELECTRONICALLY STORED INFORMATION**

The undersigned Parties hereby stipulate, without waiver of the objections raised in Dkt. Nos. 74-1 to 74-6, [and the Court hereby orders] as follows, as to the preservation, collection, exchange, and production of electronic and Hard Copy Documents and ESI (as defined below) in this action.

## I. General Provisions

### a. Scope

The Parties producing Hard Copy Documents and ESI (each a "Producing Party") shall prepare their Hard Copy Documents and ESI for production to the Parties receiving the production (each a "Receiving Party") in accordance with the specifications set forth below. The undersigned Parties shall abide by these specifications beginning on the date of their signatures below. This Stipulation and Order supplements the Federal Rules of Civil Procedure (the "Federal Rules" or

"FRCP"), the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), and any other applicable orders or rules.

**b. Cooperation**

The Parties shall cooperate in good faith on issues relating to the discovery of ESI and Hard Copy Documents. As part of this cooperation, the Parties shall adhere to any guidelines set forth by the Court and any applicable orders or rules. The Parties recognize that collaborative conduct in the course of discovery reduces litigation costs and delay. Without in any way limiting their obligations to comply with their formal discovery obligations, the Parties shall engage in informal discussions about the discovery of ESI and Hard Copy Documents throughout the litigation as necessary. Counsel will be knowledgeable about their respective clients' information technology infrastructure, including the manner in which potentially relevant data is stored and retrieved. When appropriate and as necessary, counsel may engage the assistance of someone knowledgeable about a Party's electronic systems. The Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and encouraged to bring technically-adept personnel together to resolve any e-discovery issues.

**c. Meet And Confer Procedures**

The Parties shall meet and confer regarding discovery disputes in the manner provided in Section 4.C of the Court's Individual Practices In Civil Cases.

**d. Outside Counsel Responsibility For Discovery**

The Parties incorporate FRCP 26(g)(1), which provides that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented," and that "[b]y signing, an attorney or party certifies that to the best of the person's knowledge,

information, and belief formed after reasonable inquiry" that it complies with FRCP 26(g)(1)(A) and (B).

**e. Transparency**

Upon request, any Party must disclose the steps it took, is taking, or will take to identify, collect, ingest, process, search, review, and produce ESI and Hard Copy Documents, including by disclosing associated software products or systems.

## II. Definitions

The terms listed below shall be defined as follows.

1. "Documents" has the meaning set forth in FRCP 34(a) and Local Rule 26.3.

2. "Electronically Stored Information" and "ESI" have the meanings set forth in FRCP 26 and 34(a). Examples of ESI include but are not limited to the following.

a. Digital communications such as email, voice mail, Text Messages, instant messaging such as Microsoft Teams, Slack, and similar programs and platforms, and ephemeral messaging such as Signal, WhatsApp, Telegram, Snapchat, and similar programs and platforms.

b. Email server stores or files such as Microsoft Exchange .edb, Microsoft Outlook .pst or .ost, and similar programs and platforms.

c. Word-processed Documents such as Microsoft Word files and drafts thereof, Google Docs, iWork Pages, and similar programs and platforms.

d. Spreadsheets and tables such as Microsoft Excel worksheets, Google Sheets, iWork Numbers, and similar programs and platforms.

e. Accounting application data such as QuickBooks and similar programs and platforms.

f. Image and facsimile files such as.PDF, .TIFF, .JPG, .GIF, and similar programs and platforms.

g. Sound recordings such as .WAV, .MP3, and similar programs and platforms.

h. Video and animation such as .MP4, .AVI, .MOV, and similar programs and platforms.

i. Databases such as Access, Oracle, SAP, SQL data, and similar programs and platforms.

j. Contact and relationship management data such as Microsoft Outlook contacts and similar programs and platforms.

k. Calendar and diary application data such as Microsoft Outlook calendar entries, blog entries, and similar programs and platforms.

l. Presentations such as Microsoft PowerPoint, Google Slides, iWork Keynote, and similar programs and platforms.

m. Network access and server activity logs and similar programs and platforms.

n. Project management application data and similar programs and platforms.

o. Computer-aided design or drawing files and similar programs and platforms.

p. Cloud-based or other virtualized ESI, including applications, infrastructure and data, and similar programs and platforms.

3. "Extracted Text" means the text extracted from ESI, including all headers, footers, and Document body information when reasonably available.

4. "Hard Copy Document" means any Document collected from physical files rather than from electronic sources.

5. "Hit Report" means a report with the number of Documents identified (*i.e.*, "hits") by each keyword Search Term or Boolean search string.

6. "Load File" and "Unitization File" mean an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load/Unitization File will also contain data relevant to the individual Documents, including extracted and user-created Metadata.

7. "Media" means any object or device, including but not limited to discs, tapes, computers, or other devices on which data is or was stored.

8. "Metadata" has the same meaning as set forth in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020, and includes but is not limited to any application and system information of a file that contains data about that file.

9. "Producing Party" means an entity from which the production of ESI or Hard Copy Documents is sought.

10. "Native," "Native Format," or "Native Data Format" mean an electronic Document's associated file structure as defined by the original creating application. For example, the Native Format of a Microsoft Excel workbook is a .xls or .xlsx file.

11. "NIST Library" means the list of over 26 million known and traceable software application files known as the NIST List or the National Software Reference Library ("NSRL") maintained by the federal technology agency known as the National Institute of Standards and Technology ("NIST").

12. "OCR Text" means text generated through the optical character recognition process.

13. "Requesting Party" means an entity seeking the production of ESI or Hard Copy Documents.

14. "Search Terms" means a search methodology using keywords, terms, or phrases including Boolean search strings.

15. "Static Image" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A TIFF image is an example of a Static Image.

16. "Tagged Image File Format" and "TIFF" mean the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents.

17. "TAR" means Technology Assisted Review using computer algorithms or programs to identify and tag potentially responsive Documents based on keywords or other Metadata.

18. "Text Messages" means electronic messages that are sent among users with mobile devices. Text Messages include Short Messaging Service ("SMS") and Multimedia Messaging Service ("MMS") messages, as the terms are set forth in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

## III. Custodians And Data Sources

At the time a Party serves responses and objections to document requests, it shall also disclose the custodial and non-custodial data sources from which it proposes to collect ESI and Hard Copy Documents (*e.g.*, shared drives, servers, cloud-based storage, and similar platforms and programs), and disclose information sufficient for the Requesting Party to evaluate the reasonableness of each proposed custodial and non-custodial data source. Each Producing Party will also identify and disclose any databases that contain "structured data," algorithms embedded in the structured data, or customer lists, including producing any readily available user manuals, training manuals, or explanations of the types of data and available fields contained in such structured database systems. Each Producing Party will identify reasonably accessible non-custodial data sources that may contain relevant or responsive information (when producing such data, Producing Parties will list the non-custodial sources in the "Custodian" field of the production Load File). Following such disclosures, the Parties shall meet and confer regarding the disclosures.

The Parties recognize that additional custodians or data sources may be required as discovery proceeds.

## IV. Searches

### a. General

At the time a Party serves responses and objections to document requests, it shall also serve the Search Terms that it intends to use (including any filters, limiters, or other parameters) for its own ESI to be reviewed and produced. Thereafter, the Parties shall meet and confer regarding search methodologies that the Producing Party proposes to employ to identify responsive materials. The Parties shall negotiate in good faith the Search Terms for searches of custodial emails and other ESI as a mechanism to cull the volume of data subject to review. The Parties recognize that as discovery proceeds, it may become necessary to add additional Search Terms, which shall be negotiated in good faith using the framework described herein.

### b. Preparation For Meet And Confer

The Parties agree that negotiations regarding Search Terms, methodologies, custodians, and data sources are intended to be a cooperative and interactive process that involves a good faith exchange of information and proposals to facilitate the production of Documents requested by the Requesting Party. Prior to meeting and conferring, the Parties shall be prepared to discuss the Parties' initial disclosures and the proposed Search Terms and methodologies for searching and retrieving Documents, including (i) the proposed methodology and scope of searching for ESI, including any Search Terms or Boolean search strings, date ranges or other filters, phrases to be searched, categories of Documents or requests for production that are amenable to retrieval without the utilization of Search Terms or other parameters, and any other parameters or methodologies to

be applied to ESI; and (ii) the proposed methodology and scope of manual Hard Copy Document retrieval.

**c. TAR And Generative AI**

Advanced search, analytical, and retrieval technologies such as generative AI, predictive coding, or other TAR tools may not be utilized unless disclosed and agreed to by the Parties. Any Producing Party proposing to use generative AI, predictive coding, TAR, analytics, or algorithmic tools in connection with collection, processing, search, responsiveness review, privilege review, redaction, or production preparation shall disclose the tool and version to be used, the stage of workflow in which it is proposed to be used, validation methodologies, and any measured precision or recall metrics. This provision shall not restrict any Receiving Party's use of analytics, generative AI, or review tools on materials already produced.

**d. Search Terms**

The Parties recognize that developing efficient Search Terms will require transparent efforts by both the Producing and Requesting Parties. To facilitate related meet and confers, the Parties shall be prepared to discuss any relevant terminology, nicknames, code words, euphemisms, acronyms, slang, terms of art, email addresses, or other language likely to be contained in responsive Documents; appropriate synonyms and variations on search syntax for proposed Search Terms, including through the use of wildcard characters, truncation, stem words, fuzzy logic, or proximity terms to address over- and under-inclusiveness; and whether any appropriate testing and quality control measures were conducted or will be conducted to evaluate the sufficiency of any proposed Search Terms.

**i. Search Term Hit Reports And Negotiations On Modifications**

At the same time a Producing Party discloses proposed Search Terms, it shall also share preliminary reports of the number of Documents identified by the Search Terms (*i.e.*, Hit Reports). Hit Reports must be provided in Excel format (unless otherwise agreed to by the Parties) and must include (a) the overall number of Documents being searched, (b) the number of Documents hit by each Search Term with separate hit counts for individual Documents that hit on the Search Term and for Documents including families that hit on the Search Term, and (c) the number of unique Documents hit by each Search Term (*i.e.*, Documents that would not be included in the search results but for the inclusion of that particular Search Term). Requesting Parties may accept, object to, or otherwise propose modifications to the Producing Party's proposed Search Terms, and the Producing Party will respond to the proposed modifications. If a Producing Party rejects or proposes to alter a Search Term modification proposed by a Requesting Party, it shall provide information sufficient to support its position (*e.g.*, estimates of the incremental number of false positive hits and the incremental number of true positive hits introduced by disputed Search Terms, as well as examples of the false positive hits). Requesting Parties will accept, object to, or otherwise supplement the Producing Party's response, and the Parties will subsequently meet and confer as to any objections and alterations regarding Search Terms.

**ii. Search Term Syntax**

The Parties shall agree on the meaning of the search syntax used in developing Search Terms. Should a Producing Party learn that the search syntax used by its search tool differs from that used by the Parties during Search Term negotiations, and such differences materially alter the nature of the agreed upon Search Terms, the Parties shall promptly meet and confer regarding any modifications to the Search Terms so affected.

**e. Responsive Material Discovered Outside Of Search Terms**

The use of Search Terms does not relieve a Party of its obligation to conduct a reasonable search for responsive discovery. If any Party identifies ESI or Documents that are responsive and subject to discovery in this action that are outside of the Search Terms or methodologies agreed to by the Parties, the Party shall produce all such Documents.

**f. Productions And Supplementations**

Productions of responsive Documents shall proceed on a rolling basis and be completed on the schedule specified in the operative Case Management Order. If, after reviewing ESI and Documents received from Producing Parties, the Requesting Party believes that additional Search Terms are necessary or that changes to the Search Terms or methods of searching or review are warranted, the Requesting Party shall request a meet and confer.

**V. Productions**

The following provisions govern the production format and procedure for Documents and images that will be produced in this action.

**a. Hard Copy Document Productions**

**i. Hard Copy Document Production Format**

All Documents originating in hard copy format shall be produced as black-and-white, single-page, 300 dpi Group IV TIFF images, with OCR Text and related paths provided in Document-level text files. If a Requesting Party reasonably believes that a Document originally produced in black and white needs to be produced in color, it shall notify the Producing Party. The Parties agree to meet and confer in good faith concerning the re-production of such Documents in color, either as a JPEG file or in Native Format. Notwithstanding the foregoing, any Hard Copy Document produced in electronic form shall also be made available in its original (*i.e.,* physical,

non-electronic) form within five business days of any request for such access by a Requesting Party.

**ii. Hard Copy Document Grouping**

During the scanning process for Hard Copy Documents, distinct Documents shall be kept distinct and not be merged into a single record, and single Documents shall not be split into multiple records (*i.e.*, Hard Copy Documents should be logically unitized). The Producing Party must use reasonable efforts to unitize Documents correctly. Where a Document or a Document group such as a folder, clipped bundle, or binder has an identification spine or other index or label, such information shall be scanned and produced as the first page of the Document or grouping.

**iii. Hard Copy Document Production Load Files And Metadata**

Productions of the Hard Copy Document images shall be made using an image Load File (.OPT or .LFP) and a delimited database/Metadata Load File (.DAT), pursuant to **Appendix 2**. The objective coding fields that shall be produced for Hard Copy Documents are listed in **Appendix 1 – Part 1**.

**b. ESI Productions**

The following provisions govern the production format and procedure for ESI.

**i. ESI Production Format**

Producing Parties shall produce all ESI in TIFF format according to the following specifications.

1. Where technologically feasible, TIFFs shall be produced as single-page Group IV TIFFs (or .JPEGs for color Documents) in 8.5 x 11 inch page-size images at a resolution of at least 300 DPI with the quality setting of 75% or higher.

2. When producing Documents in TIFF format, the image files shall be produced along with image Load Files that link the images to the corresponding Document, indicate the beginning and ending of each Document, and show the Bates number of each page and the appropriate unitization of the Documents.

3. Each image file of an electronic Document shall be created directly from the original electronic Document. Image files shall show all text and images that would be visible in the original Native Format, including redlines, speaker notes, or similar notations.

4. All TIFF files shall be provided with an accompanying searchable text (.TXT) file extracted from the Native File (*i.e.*, not generated as an OCR file from the TIFF images), and such text files shall contain the full text extraction. To the extent technologically feasible, extracted text shall provide all comments, tracked changes, speaker notes, and similar notations, and any text from hidden worksheets, slides, columns, rows, or similar fields. In the case of files with redacted text, OCR'ed text of the redacted Documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

5. All Documents shall be produced in their original language. For Documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

6. Each text file shall be named according to the Bates number of the first page of the corresponding image file (*e.g.*, BATES000001.TXT).

7. In the case of email, the corresponding text file shall include the following information where reasonably available: (i) the authors of the email communication (*i.e.*, "From"); (ii) the individuals to whom the communication was directed (*i.e.*, "To"); (iii) who was copied and

blind copied on such email (*i.e.*, "CC" and "BCC"); (iv) the subject line of the email (*i.e.*, "RE" or "Subject"); (v) the names of any attachments; and (vi) the text (*i.e.*, body) of the email.

**ii. ESI Production Fields And Metadata**

The objective coding fields and Metadata that shall be produced for all ESI, including ESI produced in TIFF or Native Format, are listed in **Appendix 1 – Part 2**.

**iii. ESI Productions In Native Format**

**1. Native File Types**

The Parties shall produce the following ESI types in Native Format.

1. Spreadsheet files (*e.g.*, comma separated value or .CSV files, Microsoft Excel worksheets or .XLS files, Google Sheets, iWork Numbers, and similar files).

2. Presentation files (*e.g.*, Microsoft PowerPoint or .PPT files, Google Slides, iWork Keynote, or similar files).

3. Personal databases (*e.g.*, Microsoft Access or similar files).

4. Audio/video files (*e.g.*, .MP4, .AVI, .MOV, or similar files).

5. Computer Assisted Drawing files (*e.g.*, .DWG, .STEP, .SLDPRT, or similar files).

**2. Text Messages**

Responsive Text Messages shall be produced in a reasonable, usable format. The Producing Party shall disclose its production format of Text Messages to the Receiving Party prior to the production of Text Messages. The Receiving Party retains its rights to meet and confer on such production format to address any concerns.

**3. Presentations**

Microsoft PowerPoint or other presentation files shall be produced in Native Format as (*e.g.*, as .PPT files). PowerPoint presentations shall also be produced as TIFF images in full-slide

image format, along with speaker notes (which should follow the full images of the slides) with related searchable text, Metadata, and bibliographic information.

**4. Hidden Content**

ESI shall be processed in a manner that preserves hidden columns, rows, text, worksheets, notes, tracked changes, comments, or other content. Any Party seeking a deviation from this provision must provide notice to other Parties. The Parties agree to meet and confer in good faith regarding such requests.

**5. Native Format Production Specifications**

Any Document produced in Native Format shall be produced according to the following specifications.

1. A unique Bates number and confidentiality designation shall be used as the file name (*e.g.*, "BATES000001_Confidential.xls"). The original file name and file extension shall be preserved in the corresponding production Load File.

2. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. For any Documents produced in Native Format, a single-page placeholder image shall be provided that indicates the file was produced in Native Format and that contains the Bates number and confidentiality designation, if any, of the corresponding file.

3. In order to preserve the integrity of any file produced in Native Format, no Bates number, confidentiality designation, or internal tracking number should be added to the body of the Native File unless otherwise agreed to between the Parties during any meet and confer related to the production of that Native File.

4. Receiving Parties may request that Producing Parties produce additional file types of electronic Documents in Native Format where converted image format distorts information or causes it to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperate consistent with the provisions set forth in this Stipulation and Order.

**iv. De-Duplication And De-NISTing Of Documents**

To reduce the unnecessary costs of reviewing and producing exact duplicate Documents, and to the extent reasonably possible and accounting for any technical limitations of any Party's ESI, each Party may remove exact duplicate ESI prior to producing Documents pursuant to the following procedures.

1. Subject to the provisions in this section, each Party may remove exact duplicate ESI prior to producing Documents based on the MD5 or SHA-1 hash values at the parent Document level. Stand-alone files will de-duplicated against other stand-alone files, but not against attachments contained in Document families. Where any exact duplicates have attachments, hash values must be identical for the parent Document. If a seemingly "identical" Document is an attachment to different emails (*e.g.*, where the same Document is attached to two unique emails), then the attachment is not an exact duplicate and shall be produced together with each email.

2. Producing Parties may de-duplicate Documents across custodians. The names of all custodians who had an exact copy of any Documents eliminated through such global de-duplication shall be provided in the All_Custodians field accompanying the original file.

3. If a Producing Party identifies a large number of exact duplicate Documents during the course of its review, the Parties may meet and confer regarding a custom de-duplication

protocol. Except for the removal of extracted logos, no custom de-duplication method will be implemented without first meeting and conferring with the Requesting Party.

4. Common system and program files as defined by the NIST Library need not be processed, reviewed, or produced.

**v. Email Thread Suppression**

Email threads are email communications that contain prior or lesser-included email communications. A Producing Party may not use email thread suppression to exclude emails from production without first meeting and conferring with the Requesting Party.

**vi. Password-Protected Files**

Producing Parties shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Stipulation and Order, and that all decrypted Documents are produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Stipulation and Order, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed that are responsive or members of a responsive family, the Producing Party must: (i) produce a slip sheet for each encrypted or password-protected Document indicating that the Producing Party could not successfully process the Document because it could not be decrypted; and (ii) provide the Metadata for the Document required by **Appendix 1** to the extent it can be reasonably extracted from the file in its encrypted form. The Parties shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production.

**vii. Redactions**

To the extent a responsive Document contains content claimed as privileged, or to comply with federal or state privacy requirements (*e.g.*, HIPAA), the Producing Party may produce that Document in a redacted form. Any redactions shall be clearly indicated on each page of the Document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (*e.g.*, "Redacted For Privilege"). Where a Document contains both privileged and non-privileged responsive content, the Producing Party may redact the privileged material but must produce the remainder of the Document without redactions to non-privileged content.

Native Microsoft Excel or other spreadsheet files that contain content claimed as privileged may be redacted by overwriting the data contained in a particular cell, row, column, or tab with the word "Redacted" and shall make clear the reason for the redaction (*e.g.*, "Redacted For Privilege"). The Parties acknowledge that redacting the Native may alter the Metadata of the produced file; however, the Metadata produced subject to **Appendix 1** will be the Metadata extracted from the original Native File, other than Metadata containing redacted information.

Native Microsoft Excels, PowerPoints, or other spreadsheet or presentation files that are redacted may be produced as black-and-white or color (as applicable), single-page, 300 DPI Group IV TIFF (or JPEG) images, with text and related paths provided in Document-level text files, with Load Files pursuant to **Appendix 2**, which shall include all information contained in the original file including but not limited to speaker notes and hidden content, with any redactions clearly delineated. If the file contains external video or audio components, the video or audio will be produced as Native Files.

If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall provide the non-redacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the Producing Party to produce the non-redacted portion of the content.

The Parties shall not make any redactions based on the purported relevancy or non-relevancy of a Document.

**viii. Exception Logs**

ESI that cannot be reviewed, produced, or imaged because of technical issues shall be identified as exception files and included on a log that lists the file name, custodian, and reason for exception (*e.g.*, corruption, unavailable password, proprietary software, or other technical issues). Producing Parties shall regularly provide an updated copy of this log to Receiving Parties, and shall provide a final copy of the log upon completion of Document production. If the Receiving Party requests production of any files listed on the exception log, the Parties will meet and confer in good faith regarding the requested files.

**ix. Additional Production Specifications**

All productions will include the additional specifications described below.

1. Delimited Metadata Load Files (.DAT) shall be provided containing a field with the full path and file name to the Native Files produced pursuant to **Appendix 2** and the Metadata fields identified in **Appendix 1**.

2. Delimited image Load/Unitization Files for images (.opt, .lfp, or .dii) shall be provided pursuant to **Appendix 2**.

3. Document-level text files (.txt) shall be provided for all Native Files containing extracted full text or OCR Text (OCR only if extracted text is not available or if the Document has been redacted).

4. Bates-number branding and confidentiality designations (if any) on the face of each TIFF image in the lower right-hand corner using a consistent font type and size that, to the extent reasonably feasible, does not obliterate, conceal, or otherwise interfere with any information from the source Document, including Bates-number branding from previous litigation productions. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

5. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be provided for all ESI produced in Native Format.

6. Each Bates number shall: (i) be unique across all Document productions, including prior productions; (ii) maintain a constant length and format across the entire production (*e.g.*, ABC00000001, with a consistent prefix and padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

7. To the extent any Documents contain redactions and are produced in TIFF format, the following specifications apply: (i) Microsoft PowerPoint slides or presentations will be produced with any notes, talking points, outlines, comments, or other similar annotations contained therein; and (ii) all hidden text or content (*e.g.*, track changes, hidden columns, comments, notes,

markups, or similar annotations) shall, to the extent reasonably feasible, be expanded, extracted, and rendered in the TIFF file.

8. Each of the Metadata and coding fields set forth in **Appendix 1** that can be extracted from a Document shall be produced for that Document. The Parties are not obligated to manually populate any of the fields in **Appendix 1** except Default Production Fields ("DPF") that are generated in the course of collection, review, and production (*e.g.*, BEGBATES, ENDBATES, and similar fields), and the "CUSTODIAN," "ALL_CUSTODIANS," "CONFIDENTIALITY," and "REDACTION" fields. If Metadata fields are not produced because they do not exist or because they are not reasonably accessible, the Producing Party shall include the fields in the header row of the .DAT file and leave the field blank for the corresponding Documents.

9. ESI items shall be processed so as to display either the name of the field (*e.g.*, [DATE]) or the date/time shown in the Document as it was last saved, not the date of collection or processing (*i.e.*, via an auto date/time stamp).

## VI. Family Relationships Of ESI

### a. Family Relationships

Parent-child relationships between ESI (*e.g.*, the association between an attachment and its parent email, or a spreadsheet embedded within a word processing Document) must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the required Metadata fields. If a Party withholds as privileged a member of a parent-child group (*e.g.*, a Document or portion of a Document) that has other non-privileged or privilege-redacted family members, any parent-child relationship must be similarly maintained by indicating the absence of that Document (or portion thereof) using a Bates-numbered slip sheet (or a clearly marked redaction) and the grounds for withholding or redacting.

In the event a Document or portion of a Document that is part of a family is initially withheld as privileged but later produced, the entire family must be reproduced with it, along with all required Metadata.

The Producing Party may produce emails or Documents with hyperlinks to other Documents. Where Documents contain hyperlinks to internally stored materials, including materials stored in iManage, SharePoint, OneDrive, or similar systems, the Producing Party shall identify the linked materials and produce them upon request absent a particularized showing of undue burden.

**b. Non-Responsive Attachments**

The Parties agree that a non-responsive finding shall not be a cognizable basis for withholding a Document from production if such Document is associated, through familial relationships, with a responsive Document.

**c. Embedded Documents**

Embedded ESI Documents (*e.g.*, a spreadsheet embedded within a word processing Document or an audio file embedded within a Microsoft PowerPoint presentation) will be extracted, to the extent available, and produced as independent Document records, and related back to the respective top-level parent Document (*e.g.*, standalone file, email message, or other parent) via the BegAttach and EndAttach Metadata fields referenced in **Appendix 1**. The embedded Document will be marked with a "YES" in the Load File under the "Is Embedded" field referenced in **Appendix 1**. Related embedded Documents will be produced within a continuous Bates range. Images that appear within the body of an email or standalone file should not be extracted as separate Documents. In the event that the aforementioned process with respect to Embedded ESI Documents becomes overly burdensome, for example due to the volume of the

embedded Documents or technical complexity of extraction or relation back, the parties shall meet and confer regarding reasonable accommodations to the process.

**d. Compressed Files**

Compression file types (*e.g.*, .ZIP, .CAB, .GZ, .RAR, or similar files) shall be decompressed to ensure that any compressed files within a compressed file are decompressed into the lowest possible compression resulting in individual folders or files.

## VII. Structured Data

When responsive information is located in a database, such as for enterprise resource planning or human resource applications or databases (*e.g.*, Workday, SuccessFactor, Access, Oracle, SQL Server data, SAP, or other structured or aggregated data sources), the Parties will meet and confer to address the production format of any responsive data.

## VIII. Production Media

Documents and ESI shall be produced via secure FTP site rather than through physical media (*e.g.*, CD-ROM, DVD, or external hard drive) unless such transmission is impracticable or the Parties hereafter agree on a different method of transmission. Each production shall be accompanied by a cover letter or email message, to be sent via email at the time of production, that includes the following information.

1. Name of the Producing Party.
2. Date of the production.
3. Bates number range.
4. Any notes regarding any irregularities in the production such as whether it is a replacement production or why there are any missing Bates numbers.

5. Any replacement productions or Documents shall cross-reference the original productions or Documents, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their productions and, if so, shall provide a key to decrypt the productions in a separate communication via email.

## IX. Non-Party Subpoenas And Productions

Any Party that issues a non-party subpoena shall immediately notify the other Parties when it receives non-party productions of Documents, ESI, or other responses from the non-party, and provide copies to the other Parties of all such productions or responses in the format in which they were received from the non-party. If the non-party produces Documents or ESI that are not Bates labeled, the Receiving Party shall Bates-label the Documents or ESI.

## X. Withheld Documents And Privilege Logs

For any Document withheld in whole or in part on the basis of privilege, work product doctrine, or other protection, the Party or third party withholding the Documents shall produce a privilege log or logs concerning any information that has been redacted or withheld in whole or in part from the production consistent with the following procedures.

1. The withholding party's privilege log shall be in a Microsoft Excel format that permits electronic sorting, filtering, and searching.

2. Each privilege log shall identify all responsive Documents withheld in whole or in part, including Documents produced with redactions. Privilege logging shall be Document-by-Document, except that categorical logging may be used for post-complaint communications between any Party and its counsel of record in this proceeding, post-complaint attorney work product prepared specifically for this action, and other categories as may be agreed by the Parties.

3. Privilege logs shall be detailed enough to enable other parties to assess the applicability of the privilege or protection asserted, shall set forth the privilege or protection relied on, indicate whose privilege is being asserted, and shall specify the following information separately in a unique privilege log entry for each Document.

a. Bates number range or, if no Bates number range, a unique privilege log Document identifier.

b. Family relationships, if applicable (*e.g.*, identification of parent emails and all attachments).

c. Document titles, to the extent contained in available Metadata, including subject lines for emails, unless that information is itself subject to a claim of privilege (in which case that withholding shall be indicated on the privilege log).

d. Sufficient factual basis to support the claim of privilege or protection.

e. The names of any authors, senders, or custodians of the Document.

f. The names of all addressees and recipients of the Document, including CC and BCC addressees and recipients.

g. The Document date, which shall be defined as the date sent for correspondence such as emails, memos, and letters, and the date last modified for other Documents.

h. Whether the Document has been produced in redacted form or withheld in its entirety.

i. The designation of the privilege or protection relied on (*e.g.*, attorney-client privilege or attorney work product).

j. Any other information required by court order or Local Rule.

4. Attachments to emails or other parent Documents shall be logged as separate Document entries on the privilege log, with family relationships identified.

5. Email addresses may be included in the privilege log rather than full names of authors, senders, and recipients, provided that the email addresses contain sufficient information to identify the relevant individuals.

6. Partially privileged (*i.e.*, redacted) Documents must be included in the privilege log.

7. Attorneys or their staff must be identified on the privilege log with an asterisk or similar notation to facilitate identification.

8. To the extent any previous designations are later modified or withdrawn, such changes shall be noted in an amended privilege log to ensure clarity.

9. Upon first assertion of any common interest or joint-defense protection, the asserting Party shall identify the participants, time period, and general subject matter of the asserted arrangement. The existence, participants, duration, and scope of any such arrangement shall not itself be treated as privileged.

10. Any Receiving Party challenging privilege log entries shall identify the challenged entries and may request additional information supporting the assertion of the privilege. Within seven (7) days thereafter, the Parties shall meet and confer in a good faith effort to resolve any such challenge. If disputes remain unresolved, either Party may submit the dispute to the Court for resolution.

11. Any Party or non-party that contends that foreign law limits or precludes production (including, without limitation, the GDPR) shall assert such contention with particularity, identifying the specific statutes or doctrines relied upon, their scope, and their applicability to the particular discovery requests at issue. The Party invoking such foreign law shall bear the burden of establishing its applicability and the extent of any resulting limitation on discovery. No Party may rely on another Party's or non-party's purported foreign law compliance concerns as a basis to withhold or limit its own discovery obligations without making the showing required herein.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD, WITHOUT WAIVER OF THE OBJECTIONS RAISED IN DKT. NOS. 74-1 TO 74-6.**

Dated: August ___, 2026

QUINN EMANUEL URQUHART & SULLIVAN LLP

/s/____________________
Isaac Nesser
William B. Adams
Daniel M. Kelly
Michael A. Wittmann
295 Fifth Avenue
New York, NY 10016
Tel: (212) 849-7253
isaacnesser@quinnemanuel.com
williamadams@quinnemanuel.com
danielkelly@quinnemanuel.com
michaelwittmann@quinnemanuel.com

Matthew Scheck
Matthew Roznovak (pro hac vice forthcoming)
Alexander Van Dyke (pro hac vice forthcoming)
300 W. 6th Street
Austin, TX 78701
Tel: (737) 667-6100
matthewscheck@quinnemanuel.com
matthewroznovak@quinnemanuel.com
alexvandyke@quinnemanuel.com

*Attorneys for Plaintiffs*

GIBSON, DUNN & CRUTCHER LLP

/s/____________________
Marshall R. King
mking@gibsondunn.com
C. Lee Wilson
clwilson@gibsondunn.com
Nancy Hart
nhart@gibsondunn.com

200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000

*Attorneys for Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Louis M. Solomon, and Charles G. Weller*

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

/s/ ____________________
Elkan Abramowitz
eabramowitz@maglaw.com
Richard F. Albert
ralbert@maglaw.com

556 Fifth Avenue
New York, New York 10017
Tel: (212) 880-9560

*Attorneys for Defendants Louis M. Solomon and Charles G. Weller*

GOULSTON & STORRS PC

/s/ ____________________
Jennifer B. Furey (admitted pro hac vice)
Nathaniel R.B. Koslof (admitted pro hac vice)
One Post Office Square, 28th Floor Boston,
MA 02109
jfurey@goulstonstorrs.com
nkoslof@goulstonstorrs.com
Tel: (617) 574-3575

Rae Berger
730 Third Avenue, 12th Floor
New York, NY 10017
rberger@goulstonstorrs.com
Tel: (212) 878-5120

*Attorneys for Defendants Eletson Holdings Inc. and Eletson Corporation*

**IT IS SO ORDERED.**

Dated: August 19, 2026

New York, NY

LEWIS J. LIMAN
United States District Judge

# APPENDIX 1

## Fields And Metadata To Be Produced

1. The Load Files accompanying Hard Copy Document productions will include the following objective coding fields.

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a Document family |
| ENDATTACH | Ending Bates number of a Document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the Document |
| CUSTODIAN | Name of custodian or custodial file |
| REDACTION | Identifies whether a Document has been redacted |
| CONFIDENTIALITY | Confidentiality designation |

2. The following Metadata fields shall be included in Load Files accompanying ESI or non-redacted Document productions. Such Metadata field values will be extracted from the Native Files and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by other law or order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the Document.

| Field | Field Description (Electronic Documents) | Field Description (Emails or Instant Messages) |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a Document family | Starting Bates number of a Document family |
| ENDATTACH | Ending Bates number of a Document family | Ending Bates number of a Document family |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodians of the Document | Custodians of the Document |
| ALL_CUSTODIANS | Names of all custodians including custodians of de-duplicated Document versions | Names of all custodians including custodians of de-duplicated Document versions |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |
| AUTHOR | Document author from Metadata | N/A |
| FROM | N/A | Sender of message or calendar invite |
| TO | N/A | Recipient of message or calendar invite |
| CC | N/A | Copied recipients of message or calendar invite |
| BCC | N/A | Blind copied recipients of message or calendar invite |
| SUBJECT | N/A | Subject of message or calendar invite |
| TITLE | Title from a Document's properties | N/A |
| DATETIME_CREATED | The date and time the file was created in the format MM/DD/YYYY HH:MM:SS | N/A |

| Field | Field Description (Electronic Documents) | Field Description (Emails or Instant Messages) |
|---|---|---|
| DATETIME_MODIFIED | The date and time the file was last modified in the format MM/DD/YYYY HH:MM:SS | N/A |
| SENT_DATETIME | N/A | The sent date and time of the message in the format MM/DD/YYYY HH:MM:SS |
| RECEIVED_DATETIME | N/A | The received date of the message in the format MM/DD/YYYY HH:MM:SS |
| MSG_STATUS | N/A | Whether a message was READ or UNREAD |
| TIMEZONE | Metadata field indicating the time zone. | Metadata field indicating the time zone in which an email was sent |
| FILENAME | Contents of this Metadata field, or an equivalent | N/A |
| FILEEXTEN | File extension | N/A |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |
| ORIGINALPATH | The directory structure of the original files; any container name is included in the path | The directory structure of the emails, if available |
| HASH | MD5 or SHA1 hash of the Document | MD5 or SHA1 hash of the email |
| MESSAGEID | N/A | Unique identifier for each email (used for email threading) |
| THREADID | N/A | Unique identifier for each email thread (used for email threading) |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile | Identifies whether the file is an email, attachment, or stand-alone efile |
| ISEMBEDDED | Identifies whether a Document is embedded within another Document | Identifies whether a Document is embedded within another Document |
| NATIVELINK | Link to Native File (if any) | Link to Native File (if any) |
| TEXTLINK | Link to text file for the Document | Link to text file for the email |

| Field | Field Description (Electronic Documents) | Field Description (Emails or Instant Messages) |
|---|---|---|
| REDACTION | Identifies whether a Document has been redacted | Identifies whether a Document has been redacted |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |
| IM_TIMESTAMP | N/A | The date and time when an instant message was sent |
| IM_AUTHOR | N/A | The user who sent the message or uploaded the file |
| IM_PARTICIPANTS | N/A | Users in conversation |
| IM_GROUP_NAME | N/A | The name of the channel, group, or direct message in which the message was sent or file was uploaded |
| IM_GROUP_ID | N/A | The unique identifier for the channel, group, or direct message in which the message was sent or file was uploaded |
| IM_MESSAGE_ID | N/A | The unique identifier for an instant message |
| IM_MESSAGE_TYPE | N/A | The type of message, such as a standard message, thread reply, bot message, or message with an attached file |
| IM_MESSAGE_COUNT | N/A | Number of messages |
| IM_EDITED | N/A | A Boolean flag indicating whether the message was edited after it was originally sent |
| IM_DATE_EDITED | N/A | The date and time when the message was last edited in the format MM/DD/YYYY HH:MM:SS |
| IM_DELETED | N/A | A Boolean flag indicating whether the message was deleted |
| IM_HAS_ATTACH | N/A | Indicates where there are attachments present in the thread |
| IM_ATTACH_COUNT | N/A | Number of attachments |
| IM_ATTACH_NAME | N/A | File name (for attachments) |

| Field | Field Description (Electronic Documents) | Field Description (Emails or Instant Messages) |
|---|---|---|
| IM_REACTIONS | N/A | Indicates whether there are reactions to a message in the thread |
| REDACTION_REASON | Basis for any redaction, including privilege or protection asserted | |

# APPENDIX 2

## Requested Load File Format For Documents And ESI

### I. Delimited Text File

A delimited text file (.DAT file) containing the fields listed in Appendix 1 shall be provided with any productions. The delimiters for the file should be in the following default Concordance format.

1. Comma: ASCII character 20 (¶)
2. Quote: ASCII character 254 (þ)
3. Newline: ASCII character 174 (®)
4. The first record should contain the field names in the order of the data.
5. All date fields should be produced in mm/dd/yyyy format.
6. Use carriage-return line-feed to indicate the start of the next record.
7. Load Files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, or similar media); a separate volume should be created for each piece of media delivered.
8. The name of the data Load File should mirror the name of the delivery volume, and should have a .DAT extension (*e.g.*, ABC001.DAT).
9. The volume names should be consecutive (*e.g.*, ABC001, ABC002, et. seq.).
10. If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

### II. Image Cross-Reference File (.opt)

The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

Further definitions and instructions as follows.

1. Definitions

a. ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document.

b. VolumeLabel: The name of the volume.

c. ImageFilePath: The full path to the image file.

d. DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

e. FolderBreak: Leave empty.

f. BoxBreak: Leave empty.

g. PageCount: Number of pages in the Document.

2. The name of the image Load File should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.LFP).

3. The volume names should be consecutive (*e.g.*, ABC001, ABC002, et. seq.).

4. There should be one row in the Load File per TIFF image.

5. Every image in the delivery volume should be contained in the image Load File.

6. The image key should be named the same as the Bates number of the page.

7. Load Files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

**III. Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002,VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003,VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004,VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005,VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006,VOL001,E:\100\ MT00000006.TIF,,,,

Summation DII File:

@C HASIMAGE YES

@T EPRG036023 2

@DD:\FILES\PRODUCTION\CD0004\VOL0011\Images

EPRG036023.tif

EPRG036024.tif

**IV. OCR/Extracted Text Files**

OCR or Extracted Text files shall be provided in a separate \TEXT\ directory containing Document-level text files. If Foreign Language or Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format.