**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>ELETSON HOLDINGS INC., *et al.*,<br>*Debtors*. | |
| LEVONA HOLDINGS LTD., ELETSON GAS LLC, and EMC GAS CORP.,<br>*Plaintiffs*,<br>-against- | Chapter 11<br>Case No. 23-10322 (JPM)<br>Jointly Administered |
| ELETSON HOLDINGS INC., ELETSON CORP., APARGO LIMITED, FENTALON LIMITED, DESIMUSCO TRADING LIMITED, VASSILIS KERTSIKOFF, VASILIS HADJIELEFTHERIADIS, LASCARINA KARASTAMATI, REED SMITH LLP (DELAWARE), REED SMITH LLP (ENGLAND & WALES), CHARLES G. WELLER, and LOUIS M. SOLOMON,<br>*Defendants*. | Civ. No. 26-cv-3620 (LJL) |

**MEMORANDUM OF LAW IN SUPPORT OF REED SMITH DEFENDANTS' MOTION FOR ISSUANCE OF LETTERS ROGATORY WITH RESPECT TO CANADIAN ENTITY**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

I. RELEVANT BACKGROUND ........ 4

A. The Claims Asserted Against the Reed Smith Defendants ........ 4

B. Murchinson and Its Relationship to Plaintiff Levona and Defendant Reorganized Holdings ........ 5

C. Murchinson Maintains Levona's Files ........ 5

D. Murchinson Maintains Eletson's Files ........ 8

E. The Discovery the Reed Smith Defendants Seek ........ 8

II. LEGAL STANDARD ........ 9

III. DISCUSSION ........ 10

A. Murchinson Is at the Center of the Underlying Events ........ 11

B. The Evidence Is Not Otherwise Obtainable ........ 22

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Blagman v. Apple, Inc.*,
2014 WL 1285496 (S.D.N.Y. Mar. 31, 2014) .......... 9, 10

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998) .......... 21

*Chen-Oster v. Goldman, Sachs & Co.*,
293 F.R.D. 557 (S.D.N.Y. 2013) .......... 10

*Conditt v. Dunn*,
225 F.R.D. 100 (S.D.N.Y. 2004) .......... 18, 19

*In re Eletson Holdings, Inc.*,
23-10322-jpm (Bankr. S.D.N.Y.) .......... 11

*In re Eletson Holdings Inc.*,
664 B.R. 569 (Bankr. S.D.N.Y. 2024) .......... 14, 15

*Eletson Holdings, Inc. et al. v. Levona Holdings, Ltd.*,
No. 23 Civ. 7331 (LJL) (S.D.N.Y.) .......... 1

*Empire Tractor Corp. v. Time, Inc.*,
10 F.R.D. 121 (E.D. Pa. 1950) .......... 20

*Feltman v. Kossoff & Kossoff LLP (In re TS Emp., Inc.)*,
597 B.R. 543 (Bankr. S.D.N.Y. 2019) .......... 18

*Gap, Inc. v. Stone Int'l Trading, Inc.*,
1994 WL 38651 (S.D.N.Y. Feb. 4, 1994) .......... 10

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
105 F.R.D. 435 (S.D.N.Y. 1984) .......... 9

*Joseph v. Gnutti Carlo S.p.A.*,
2016 WL 4083433 (S.D.N.Y. July 25, 2016) .......... 9

*Kellogg v. Nichols*,
170 F.4th 20 (2d Cir. 2026) .......... 14

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
841 F. Supp. 2d 769 (S.D.N.Y. 2012) .......... 9

*Munafo v. Metro. Transp. Auth.*,
2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) .......... 19

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
2005 WL 1214345 (S.D.N.Y. May 18, 2005) .......... 9, 10, 22

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .......... 10

*Quinn Emanuel Urquhart & Sullivan, LLP v. Nano Dimension Ltd.*,
No. 2584-CV-01885 (Mass. Super. Ct. July 8, 2025) .......... 20

*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*,
8 N.Y.3d 438 (2007) .......... 18

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2023 WL 5322019 (S.D.N.Y. Mar. 8, 2023) .......... 9

*United States v. Al Fawwaz*,
2014 WL 627083 (S.D.N.Y. Feb. 18, 2014) .......... 9

*Weber v. Multimedia Ent., Inc.*,
1997 WL 729039 (S.D.N.Y. Nov. 24, 1997) .......... 19

**Statutes**

28 U.S.C. § 1781(b)(2) .......... 9

28 U.S.C. § 1783 .......... 22

**Other Authorities**

Hindenburg Research, *Sorrento's Pandemic Profiteering: Experts and Former Employees Speak Out on Sensational Claims of Covid-19 Cure* (May 20, 2020), https://hindenburgresearch.com/sorrento/ .......... 20

https://marcbistricercanada.com/ .......... 17

https://peter-kanelos-eletson.mystrikingly.com/ .......... 17

https://www.pexels.com/photo/a-young-man-in-a-headband-holding-a-squash-racket-over-his-shoulder-7648137/ .......... 17

https://www.pexels.com/photo/man-wearing-plaid-dress-shirt-and-black-pants-sitting-near-brown-brick-wall-769747/ .......... 17

Matthew Pierce, *N.J. Firm Made Misleading Websites in Names of Multiple Canadians and an Alleged CRA Scammer*, CBC News (May 9, 2025, at 1:00 PT) https://www.cbc.ca/news/canada/online-reputations-1.7491509 .......... 17

Ross Todd, *Litigators of the Week: Federal Judge Tosses $102M Award After Finding Perjury in Underlying Arbitration*, Am. Law. Litig. Daily (Jan. 16, 2026), https://www.quinnemanuel.com/media/yp2fm5w0/amlaw0116202670017quinn.pdf .......... 19

Spencer Jakab, *A Shipping Company's Bizarre Stock Maneuvers Create High Seas Intrigue*, Wall St. J. (July 13, 2017), https://www.wsj.com/articles/a-shipping-companys-bizarre-stock-maneuvers-create-high-seas-intrigue-1499960367) .......... 19

Spencer Jakab, *Financier Behind DryShips Stock's Wild Ride Has Settled With SEC*, Wall St. J. (Sept. 20, 2021), https://www.wsj.com/finance/stocks/financier-behind-dryships-stocks-wild-ride-has-settled-with-sec-11632151697 ....................19

Spencer Jakab, *Martin Shkreli's Legacy Upends a Creative Financier: Humanigen Still Needs to Improve on the Company It Keeps*, Wall St. J. (Oct. 24, 2017), https://www.wsj.com/articles/martin-shkrelis-legacy-upendsa-creative-financier-1508837400 ....................20

T.I.A.S. No. 7444, 23 U.S.T. 255 ....................22

www.peterkanelos.com ....................17

www.peterkaneloseletsonshipping.weebly.com ....................17

## Rules

Fed. R. Civ. P. 26(a) ....................15

Fed. R. Civ. P. 26(b)(1)....................9, 21

Fed. R. Civ. P. 28(b)(2)....................9

Fed. R. Civ. P. 45 ....................22

## Treatises

6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.46[6] (3d ed. 1997)....................19

Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon (collectively, the "Reed Smith Defendants") respectfully submit this Memorandum of Law in support of their Motion for Issuance of Letters Rogatory to enable the Reed Smith Defendants to obtain documents and testimony from Murchinson Ltd. ("Murchinson"), a non-party located in Ontario, Canada. This memorandum is supported by the accompanying Declaration of Marshall R. King, dated November 10, 2026 ("King Decl.") and the exhibits thereto, and by the [Proposed] Order Granting Request for International Judicial Assistance (Letter Rogatory) with Respect to Canadian Entity, with Schedules A and B annexed thereto, submitted herewith (the "Proposed Letter Rogatory").

## PRELIMINARY STATEMENT

Murchinson possesses evidence that is indispensable to this case. It controls the plaintiffs that filed this litigation, maintains the financial records and emails of plaintiff Levona Holdings, Ltd. ("Levona"), and engaged in fraud and perjury in the JAMS arbitration that Levona must prove it would have won but for Reed Smith's alleged misconduct. Relying on its presence in Canada, Murchinson and its U.S. citizen founder Marc Bistricer are playing a shell game to conceal crucial evidence under the guise of Levona lacking control over Murchinson documents. A letter rogatory is necessary to prevent Murchinson and the Plaintiffs from manipulating corporate formalities to hide evidence showing that Plaintiffs' claims are meritless.

The issue here is not whether non-party Murchinson is liable for Levona's wrongs (*see Eletson Holdings, Inc. et al. v. Levona Holdings, Ltd.*, No. 23 Civ. 7331 (LJL) (S.D.N.Y.) ("Vacatur Dkt."), Dkt. No. 83 at 74–79). Rather, the operative question for purposes of this motion is whether Murchinson possesses relevant evidence that the Reed Smith Defendants cannot obtain through alternative means. The answer to that question is unequivocally yes for at least two reasons.

*First*, Murchinson has relevant documents regarding Plaintiffs that will not otherwise be produced. Levona does not have its own email accounts and Plaintiffs do not dispute that what they characterize as "Levona business" was conducted using murchinsonltd.com email addresses, maintained by Murchinson. Plaintiffs propose that Murchinson will voluntarily provide emails with certain third-party domains to Levona and, subsequently, Murchinson will decide for itself which of the remaining documents in its cloud accounts to provide to Levona based on whether Murchinson decides they "concern the business of Levona, Eletson Gas, and/or EMC Gas." Levona's counsel will subsequently review the Murchinson-selected document set for further narrowing, including removing all documents pre-dating January 1, 2022, before any production takes place. King Decl. Ex. A at 15–16 (Correspondence with Counsel for Plaintiffs).

That approach is inadequate. To start, Plaintiffs have not answered repeated requests to define exactly what they mean by "the business of Levona, Eletson Gas, and/or EMC Gas." That creates numerous ambiguities about what topics Murchinson will or will not consider within its scope, including Levona's fabrication of evidence in the arbitration to show the payment option was not exercised, Murchinson's 2021 bribe of Eletson Corporation CFO Peter Kanelos, and efforts to minimize the visibility of online references to that bribery (the true scope of which Murchinson has not revealed). As a result, relevant documents likely will be withheld without any notice to the Reed Smith Defendants.

Plaintiffs also refuse to produce documents from Marc Bistricer's murchinsonltd.com email address and his other Murchinson files. They take this position even though, among other things, Murchinson's own lawyer wrote that Murchinson (not Levona) owned the Eletson Gas preferred shares and Bistricer used the first-person pronoun "we" in his arbitration testimony about Levona. Bistricer also was directly involved in myriad Levona matters relevant to this case.

For example, he testified at a deposition in the arbitration that he spoke with Adam Spears about the negotiation of the February 2022 binding offer letter between Levona and several Eletson entities, as well as Levona's potential sale of its stake in Levona back to Eletson Gas. Vacatur Dkt. No. 595-3 (Bistricer Arb. Dep.) at 165:25–166:11, 168:21–169:5. Plaintiffs' dubious claim that they can access some (but not all) of the murchinsonltd.com emails of Mark Lichtenstein, but lack the practical ability to obtain the murchinsonltd.com emails of Marc Bistricer, also necessitates Murchinson's production of documents.

*Second*, the relevant evidence in Murchinson's possession goes beyond even an appropriately scoped definition of the "business" of Levona, Eletson Gas, or EMC. For example, Bistricer's Murchinson custodial file would include his communications with financiers of Eletson vessels including Tufton, Oaktree, and Libera. *See* Vacatur Dkt No. 595-3 (Bistricer Arb. Dep.) at 44:21–45:8 (testifying that in the leadup to the acquisition of Eletson Gas preferred shares from Blackstone, Bistricer "of course" spoke to "Tufton, Oaktree, Libera," among other lenders). Such communications are relevant to Plaintiffs' claimed damages.

Plaintiffs' expansive damages claims make additional records in Murchinson's possession potentially relevant. Levona and the other Plaintiffs seek reputational damages even though the inextricably intertwined reputation of Murchinson is compromised for reasons having nothing to do with the Reed Smith Defendants. Among other things, Murchinson (and Bistricer) has been penalized by the SEC, criticized in numerous public articles for harming investors, and accused by its own counsel in a public court filing of deception and bad faith. The entity with a tarnished reputation that controls the Plaintiffs who filed this case and are claiming reputational damages should not be permitted to stage-manage discovery and conceal relevant documents through the arbitrary and self-serving process that Plaintiffs propose.

And there can be no mistake: Plaintiffs are attempting to use Murchinson's Canada location as a sword and shield in discovery. The Reed Smith Defendants have asked Plaintiffs multiple times to explain the basis for Levona being able to obtain certain documents related to the business of Levona, Eletson Gas, and EMC from Murchinson but not other documents in Murchinson's possession (like Bistricer's communications). Plaintiffs have pointed to nothing giving Plaintiffs that authority. Instead, it is a *choice* made by Murchinson about what to provide. Murchinson gives Levona the documents it decides to and conceals everything else in the relative comfort of a foreign jurisdiction. That is not party discovery; it is a controlling entity stage-managing a document production to their adversaries' prejudice.

The requested Letter Rogatory is needed to ensure that all relevant, responsive, and non-privileged documents from Murchinson—not just those of Murchinson's choosing—are produced.

# I. <u>RELEVANT BACKGROUND</u>

## A. The Claims Asserted Against the Reed Smith Defendants

Plaintiffs filed the Complaint in this Adversary Proceeding on April 24, 2026, Dkt. No. 1, and the operative Amended Complaint on July 28, 2026, Dkt. No. 61 ("FAC"). The FAC pleads that Levona is a special purpose entity and "Gas is controlled by Levona, which is directing Gas's and EMC's actions in this litigation." FAC ¶¶ 15–17. The Amended Complaint alleges, among other things, that the Reed Smith Defendants owed and breached fiduciary duties of care and loyalty to Gas (FAC ¶ 115–16); made statements that were false, deceitful, or collusive (*id.* ¶¶ 33, 65–68, 129–30); acted with knowledge of, and in concert with, the other Defendants (*id.* ¶¶ 31, 82, 102–03, 109, 120); held a contingency or success-fee interest in the Arbitration and were paid from funds diverted from Gas, EMC, or their subsidiaries (*id.* ¶¶ 35, 52, 59, 69); and committed legal malpractice (Count 7). Plaintiffs seek damages including "losses to Gas's enterprise value," "lost profits," "commercial and reputational damages," and disgorgement of "all fees and income

received by the [Reed Smith Defendants] . . . during the period of their disloyalty." *Id.* ¶¶ 70, 119, 127, 131(g).

**B. Murchinson and Its Relationship to Plaintiff Levona and Defendant Reorganized Holdings**

Murchinson created Levona on October 20, 2021, as a paper company to acquire Blackstone's stake in Eletson Gas. Murchinson owns and controls Levona through Nomis Bay Ltd. and BPY Limited, which "do not have employees." Vacatur Dkt. No. 435 at 11, 18. Following proceedings in which a bankruptcy court confirmed a plan submitted by "the Canadian hedge fund through Pach Shemen and alongside the other Petitioning Creditors," *id.* at 4, both Plaintiff Levona and Defendant Eletson Holdings, Inc. ("Reorganized Holdings") are now "under common control," Vacatur Dkt. No. 535 at 3. As discussed below, documents in Murchinson's possession are thus relevant to Plaintiffs' authority to assert the claims of Gas and EMC, as well as to the events leading to Plaintiffs' claims. *See infra* Section III.A.

**C. Murchinson Maintains Levona's Files**

Levona does not maintain its own document management system. Instead, as this Court found, "Levona itself, in its original responses to Eletson's discovery requests, indicated that Levona's custodial documents are held by Murchinson and are merely a subset of Murchinson's records." Vacatur Dkt. No. 435 at 19. According to those discovery responses, "Mark Lichtenstein's Levona-related emails are maintained in a non-segregated Microsoft 365 cloud account using the @murchinsonltd.com email domain," and that account "includes non-Levona materials, including but not limited to non-Levona materials regarding his work for Pach Shemen and Murchinson." Vacatur Dkt. No. 182-2 at 9, 15–16; *see also id.*, Vacatur Dkt. No. 435 at 19.

The same is true today. King Decl. Ex. B (Plaintiffs' ESI Disclosure, dated September 8, 2026). On September 8, 2026, Plaintiffs served their ESI Disclosure and took the same position they took in the Vacatur Proceeding—that responsive Murchinson materials residing on Murchinson's systems are outside Levona's possession, custody, or control. *Id.*

The Reed Smith Defendants have exhausted alternative avenues to obtain these materials without a letter rogatory. Counsel met and conferred with Plaintiffs' counsel on September 18, 20, and 22, 2026, and asked Plaintiffs to collect and produce responsive materials residing on Murchinson's systems. Plaintiffs declined. King Decl. Ex. A at 36–37. Counsel also met and conferred with Plaintiffs' counsel on November 9, 2026 relating to the requests in Schedules A and B. The Reed Smith Defendants also asked Murchinson to voluntarily accept service of a subpoena. Murchinson refused to do so. King Decl. Ex. C at 6 (Correspondence with Murchinson's Counsel).

The Reed Smith Defendants also repeatedly asked Plaintiffs' and Murchinson's counsel for information regarding the process that Murchinson is purportedly undertaking to provide documents on Murchinson's server to Plaintiffs for potential review and production. For example, on October 9, 13, and 20, 2026, the Reed Smith Defendants asked Murchinson's counsel for information regarding this process. King Decl. Ex. C at 3–7. Finally, on October 21, 2026, Murchinson's counsel responded that "[t]he process is still a work in progress, but we will use search terms and document review to ensure that Levona receives Levona's documents." *Id.* at 2–3. The Reed Smith Defendants immediately responded on October 21, and followed up on October 26, seeking additional information regarding "the search terms you are using and the criteria you are applying to determine that a document in Murchinson and/or Ace148's possession is 'Levona's document[].'" *Id.* at 2. On October 27, 2026, Murchinson's counsel responded, "We have not

determined the search terms; rather, we are working with Levona's counsel at Quinn Emanuel on them." *Id.* at 1.

The Reed Smith Defendants similarly repeatedly inquired with Plaintiffs' counsel regarding the process Murchinson's counsel, "working with Levona's counsel at Quinn Emanuel," *id.*, was undertaking to identify supposed Levona documents on Murchinson's server, including on September 19, October 21, October 23, and October 27, 2026. King Decl. Ex. A at 24–25, 60–65. Finally, on October 27, 2026, Plaintiffs' counsel responded with some information regarding Murchinson's process, including the search terms that Murchinson's counsel would use to identify a set of documents for its review. *See id.* at 17–19. According to Plaintiffs' counsel, Murchinson would voluntarily transfer communications that hit on those search terms to Plaintiffs if the communications were with certain domain names. For communications not with those domain names, "Murchinson's counsel will then review the remaining documents not previously transferred and transmit to Quinn Emanuel those that concern the business of Levona, Eletson Gas, and/or EMC Gas." *Id.* at 18–19.

However, despite repeated requests, Plaintiffs' counsel has not explained how Murchinson's counsel will determine whether a document "concern[s] the business of Levona, Eletson Gas, and/or EMC Gas." *Id.* at 15. Furthermore, Plaintiffs' counsel finally confirmed on November 4, after repeated requests, that "[t]here is no written agreement between Plaintiffs and Murchinson regarding Plaintiffs' rights to their documents." *Id.* at 16. In the absence of any agreement defining what documents on Murchinson's servers belong to Plaintiffs, and based on Murchinson's and Plaintiffs' counsels' refusal to provide that information to the Reed Smith Defendants, Murchinson's counsel, already operating voluntarily, is free to pick and choose which documents "concern the business of Levona, Eletson Gas, and/or EMC Gas." *Id.* at 18–19.

### D. Murchinson Maintains Eletson's Files

Reorganized Holdings, nominally Plaintiffs' adversary, has adopted the same approach. In its October 30, 2026 ESI Disclosure, Eletson identified only three custodians for its post-Effective Date "eletsonholdings.com" account: Adam Spears, Leonard Hoskinson, and Mark Lichtenstein. King Decl. Ex. D at 2 (Eletson ESI Disclosure, dated October 30, 2026). Eletson then disclosed that Spears and Lichtenstein are employed by Ace148 Inc. and Murchinson, respectively. It said that, because those entities "conduct business unrelated to Eletson," responsive documents "must first be identified on their respective servers before they can be delivered to Eletson." *Id.* Eletson commits to produce only "[t]o the extent Ace148 or Murchinson delivers any such documents." *Id.* Both sides of this purportedly adversarial case thus let the same non-party Murchinson (and Ace148) decide which of its own principals' documents will be produced.

### E. The Discovery the Reed Smith Defendants Seek

The Letter Rogatory requests that the Ontario Superior Court of Justice compel Murchinson to (i) produce the documents described in Schedule A to the Proposed Letter Rogatory, and (ii) produce for oral examination under oath one or more representatives knowledgeable about the topics described in Schedule B to the Proposed Letter Rogatory. The document requests and deposition topics are deliberately narrower than the discovery the Reed Smith Defendants have served on Plaintiffs. They are confined to categories of documents and communications as to which Murchinson is the likely custodian; they seek to exclude material duplicative of the party discovery Plaintiffs have agreed to provide; they are limited in time; and they identify the documents and topics sought with the specificity that an Ontario court requires.[1]

[1] While the Court ordered other parties' requests for discovery of Murchinson in the Vacatur Proceeding, that discovery was expressly confined to "documents and communications regarding the At-Issue documents prior to July

## II. LEGAL STANDARD

"Letters rogatory are the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts . . . to assist the administration of justice in the former country." *United States v. Al Fawwaz*, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (internal quotation marks omitted). This Court has the authority to issue letters rogatory pursuant to Rule 28(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2). *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 5322019, at *1 (S.D.N.Y. Mar. 8, 2023) (Rule 28(b) and Section 1781(b)(2) "authorize federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party discovery from a foreign entity") (quoting *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012)).

The assistance requested in letters rogatory "may include taking evidence from a person within the foreign court's jurisdiction." *Joseph v. Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016). "The request for assistance from one court to another is . . . usually granted, by reason of the comity existing between nations in ordinary peaceful times." *Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 778 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 105 F.R.D. 435, 438 n.3 (S.D.N.Y. 1984)).

"The determination to issue letters rogatory is committed to the court's discretion." *Blagman v. Apple, Inc.*, 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014). In determining whether to issue letters rogatory, "the court applies the relevance standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.*; *see also Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005

---

3, 2024." Vacatur Dkt. No. 435 at 20. As far as the Reed Smith Defendants are aware, Murchinson did not make a production in the Vacatur Proceeding, and any such production has not yet been made available to the Reed Smith Defendants. And even if it was, this discovery did not reach the subjects at issue here, including: the tortious interference, fiduciary duty, legal malpractice, and Section 487 claims now asserted against the Reed Smith Defendants; the conduct alleged to have occurred after the Vacatur Decision; or the hundreds of millions of dollars in purported damages (including reputational damages) that Plaintiffs now claim.

WL 1214345, at *1 (S.D.N.Y. May 18, 2005) ("No higher standard is required for issuing letters rogatory that seek the cooperation of the Canadian courts in obtaining equivalent discovery in that country."). Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Thus, "relevance, for purposes of discovery, is an extremely broad concept." *Blagman*, 2014 WL 1285496, at *4 (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see* Vacatur Dkt. No. 435 at 15. As a result, "[c]ourts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Netherby*, 2005 WL 1214345, at *1.

Courts also undertake a "particularized comity analysis" in determining whether to issue letters rogatory. Vacatur Dkt. No. 435 at 16 (quoting *Gap, Inc. v. Stone Int'l Trading, Inc.*, 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994)). That analysis considers "the specific facts involved, the sovereign interests at stake, . . . the likelihood that resort to the convention's procedures will prove effective," and "the availability of alternative means of securing the information." *Id.* (citations and quotation marks omitted).

## III. <u>DISCUSSION</u>

This Court should issue the Proposed Letter Rogatory because the requested discovery is highly relevant to the claims and defenses in this case and the evidence is not otherwise attainable. Courts in this District routinely issue letters rogatory to Canada seeking both documents and testimony. *See Netherby*, 2005 WL 1214345, at *1 (ordering issuance of letters rogatory to Canada to permit production of documents and the taking of depositions where the movant "established a

reasonable basis for believing that each of the witnesses named ha[d] relevant information"). Indeed, this Court has already granted in part a motion by other litigants for a letter of request directed to Murchinson in the Vacatur Proceeding. Vacatur Dkt. No. 435 at 19–20.

### A. Murchinson Is at the Center of the Underlying Events

Murchinson had a central role in matters underlying this case. Among other things, it (i) funded and directed the acquisition of Blackstone's former preferred interest in Gas, which is the asset at the core of this dispute; (ii) bribed Eletson Corp. CFO Peter Kanelos in 2021 to obtain confidential Eletson information before (and after) Levona was formed; (iii) directed Levona's conduct with respect to the Binding Offer Letter, the Purchase Option, the Fundamental Action Letter, and the Share Transfer Agreement; and (iv) directed the proposed sale of a portion of Gas's fleet to Unigas that Plaintiffs allege the Defendants wrongfully obstructed. *See* Vacatur Dkt. No. 435 at 18, 19; Vacatur Dkt. No. 678 at 4 n.3, 9–10, 17, 26, 27, 81, 83, 123; FAC ¶¶ 3, 45–47; FAC Ex. A (Proof of Claim); FAC Ex. C (Counterclaim); Final Award, Vacatur Dkt. No. 41-1 at 51. The requested discovery relates to each of these areas.

#### 1. Murchinson Holds Highly Relevant Documents Involving the Parties.

There is significant practical overlap between Murchinson and Levona. Indeed, the individuals principally involved with the aforementioned actions related to Plaintiffs—Marc Bistricer, Adam Spears, Mark Lichtenstein, and Joshua Fenttiman—are affiliated with Murchinson. Vacatur Dkt. No. 435 at 19; King Decl. Ex. B (Plaintiffs' ESI Disclosure, dated September 8, 2026).

Even the limited evidence so far available to the Reed Smith Defendants shows that Murchinson views itself interchangeably with Levona. For example, Levona was the registered holder of Eletson Gas's preferred shares, but Murchinson's counsel wrote in an email to Eletson Holdings' debtor's counsel that "I represent Murchinson Ltd. which is the owner of the preferred

shares of Eletson Gas." *In re Eletson Holdings, Inc.*, 23-10322-jpm (Bankr. S.D.N.Y.) ("Bankruptcy Dkt."), Dkt. No. 1153-2 at 75. Bistricer likewise testified at his deposition in the Arbitration proceeding that Murchinson tracks all of Levona's "expenses and its investments and whatnot." Vacatur Dkt. No. 595-3 (Bistricer Arb. Dep.) at 180:18–25.

Plaintiffs claim not to have possession, custody, and control over Marc Bistricer's documents despite his clear association with Levona and the matters at issue in this case. Among other things, Bistricer communicated with Adam Spears about Levona matters and used "we" multiple times in his testimony referring to Levona. *E.g.*, Vacatur Dkt. No. 595-3 (Bistricer Arb. Dep.) at 156:9–22. *See also, e.g.*, Bankruptcy Dkt. No. 1 at 13 (Murchinson agreement referring to "*our* rights to act as Preferred to sell Eletson Gas vessels and/or the company (Eletson Gas) without legal interference") (emphasis added).

Bistricer's Murchinson documents alone justify this motion. He is a central figure in the case. Yet the Plaintiffs that he effectively owns and operates claim to have no practical ability to obtain his Murchinson custodial file that would include, for example, communications between Bistricer and relevant third parties like Peter Kanelos, the Eletson Corp. CFO who communicated with Bistricer using a Gmail address. Bistricer's Murchinson custodial file would also include his communications with financiers of Eletson vessels including Tufton, Oaktree, and Libera. *See* Vacatur Dkt. No. 595-3 (Bistricer Arb. Dep.) at 44:21–45:8 (testifying that in the leadup to the acquisition of Eletson Gas preferred shares from Blackstone, Bistricer "of course" spoke to "Tufton, Oaktree, Libera," among other lenders).

Both to ensure that all relevant Murchinson custodians produce relevant documents and to ensure that Plaintiffs' unstated definition of what constitutes the "business" of Levona, Eletson

Gas, and EMC does not unduly restrict the production of relevant material, Murchinson's compelled testimony and production of documents is needed.

**2. Murchinson Holds Highly Relevant Documents That Purportedly Are Outside the Scope of Plaintiffs' Undefined "Business"**

Plaintiffs have claimed that Murchinson has business interests "entirely unrelated to the business of Plaintiffs." King Decl. Ex. A at 16. That is both misleading and irrelevant to the Reed Smith Defendants' requests. First, Murchinson unquestionably has business interests that *are* directly related to the claims at issue in this proceeding. For example, [redacted] Murchinson's business lines do not define relevance in any event. As discussed below, Plaintiffs have put at issue Murchinson's actions affecting Plaintiffs' reputation, as well as perjury and fraud by Plaintiffs' witnesses in the arbitration, regardless of which Murchinson entity was involved.

**a. Murchinson-controlled Businesses Are Directly Relevant to This Proceeding**

Murchinson's key witnesses have communicated while wearing multiple different corporate hats, including Murchinson, Pach Shemen, and Levona. Plaintiffs and Murchinson should not be permitted to narrow the evidence available to the Reed Smith Defendants with after-the-fact line drawing that did not exist when the documents were created and/or sent.

For example, Plaintiffs allege that Defendants "thwarted the Unigas deal" through cease-and-desist letters and a wrongful arbitration (FAC ¶ 33). Plaintiffs' tortious interference claim rests on allegations of Reed Smith "blocking the Unigas transaction" through "communications to third parties including Unigas" (FAC ¶ 107). To test this theory and whether the Reed Smith

Defendants' alleged misconduct (as opposed to some other cause) led Unigas to act as it did, the Reed Smith Defendants must probe Murchinson personnel as to their negotiations and communications with Unigas.

Another example of relevant Murchinson conduct that extends beyond Murchinson's definition of the scope of Plaintiffs' business is Pach Shemen. While nominally separate from Levona and the other Plaintiffs, Pach Shemen has the same ownership structure as Levona, giving Murchinson common control over both Plaintiff Levona and, through Pach Shemen, Defendant Reorganized Holdings. Documents that Murchinson might characterize as relating to Pach Shemen are relevant to show that Plaintiffs' claims lack the necessary adversity to create jurisdiction in this Court. *See* Dkt. No. 105 (RS Defendants' Memorandum of Law in Support of their Motion to Dismiss) at 12; *Kellogg v. Nichols*, 170 F.4th 20, 26 (2d Cir. 2026) ("Without a case or controversy between adverse parties, a federal court does not have subject matter jurisdiction over an action.").

Pach Shemen also is the entity that Murchinson used to force Eletson Holdings into bankruptcy while the arbitration was ongoing (in a petition signed by Mark Lichtenstein, who has claimed to be all three of Murchinson's general counsel, Levona's "representative," and Pach Shemen's "representative and manager").[2] Before Pach Shemen existed, it was Murchinson that pursued what it called the "bankruptcy strategy" that Murchinson had "the lawyers in motion on." *In re Eletson Holdings Inc.*, 664 B.R. 569, 588 (Bankr. S.D.N.Y. 2024).[3] Adam Spears—a witness

[2] The arbitrator, former New York Supreme Court Justice Ariel Belen, concluded that Lichtenstein lied under oath by claiming he was orally appointed as Levona's general counsel, enabling Lichtenstein to be present throughout the arbitration hearing before testifying. Final Award, Vacatur Dkt. No. 41-1 at 70.

[3] The Reed Smith Defendants maintain their position in the pending motion to dismiss that the Court lacks jurisdiction over this matter. Dkt. No. 105 at 9–16. Plaintiffs argue in opposition to the motion to dismiss that the Reed Smith Defendants' "misconduct was part of a scheme that interfered with Holdings' bankruptcy proceeding, estate and Plan." Dkt. No. 114 at 2. Based on Plaintiffs' position, evidence related to the origin, timing, and motivation for Plaintiffs' affiliate to pursue that bankruptcy proceeding is relevant. Simply put, any harm Plaintiffs purportedly incurred due

Plaintiffs identify in their Rule 26(a) disclosures—has sworn under penalty of perjury that Pach Shemen "acquired its claims for investment purposes and not for the purpose of commencing these Bankruptcy Cases." Bankruptcy Dkt. No. 1 at 7. But according to the Bankruptcy Court, Murchinson's emails discuss a "need to move quickly," and reflect that "Murchinson's plan was to purchase a majority of [Eletson Holdings debt] in order to embark on a potential 'bankruptcy strategy' to exert control over the Debtors [including Eletson Holdings] and prevail in the Arbitration." *In re Eletson Holdings Inc.*, 664 B.R. at 588. Indeed, in Spears's correspondence with Eletson Holdings debtholders, one of Murchinson's payment terms was "$500k if the arbitration ends to our satisfaction on Eletson Gas . . . ." Bankruptcy Dkt. No. 1 at 13.

Murchinson, however, has not disclosed exactly what prompted this sudden strategy to acquire Eletson Holdings debt that had become due many months earlier in January 2022. Bankruptcy Dkt. No. 1 at 32. Spears—who signed the proof of claim that Plaintiffs' first amended complaint repeats and incorporates by reference—states in a sworn declaration that he simply "had a recollection that Eletson had distressed publicly-issued notes that may be outstanding." Bankruptcy Dkt. No. 127 ¶ 9. But Murchinson used *Eletson Holdings'* financial adviser on the debt offering—Jefferies, aka "Jefco"—to broker the transaction. *See* Bankruptcy Dkt. No. 1 at 13; Bankruptcy Dkt. No. 42-3 at 26–27, 51. And the Eletson Corp. executive at the center of the debt offering who was the debtholders' point-of-contact for related documents was Eletson Corp.'s chief financial officer—*i.e.*, Peter Kanelos. *Id.*, Dkt. No. 42-2 at 24–25.

Indeed, [redacted]

---

to delays in the bankruptcy proceeding (including diminished value of vessels) is attributable to Plaintiffs' own conduct and not the Reed Smith Defendants.

[redacted]. King Decl. Ex. F ([redacted]); King Decl. Ex. G ([redacted]); King Decl. Ex. H ([redacted]). Within hours on that same day, Murchinson's counsel emailed counsel for the Eletson Holdings debtholders seeking to connect. Bankruptcy Dkt. No. 1153-2 at 75. [redacted] King Decl. Ex. G at 2. [redacted] *See* King Decl. Ex. E ([redacted]).

It is not disputed that Marc Bistricer used his Murchinson email address to email Kanelos in October 2021 with a promise to pay "10% of whatever profit we make on this transaction." Vacatur Dkt. No. 595-63. Evidence also suggests that Lichtenstein sought to cover up the Kanelos deal. Final Award, Vacatur Dkt. No. 41-1 at 73 (citing Lichtenstein Arb. Hrg. Tr. at 164; Lichtenstein: addressing Kanelos in an email as if Lichtenstein did not know Kanelos was "just a game"). That is in addition to evidence showing that Lichtenstein sought to "manufacture evidence" to "argue that minutes of a March 10, 2022 Board Meeting were created

contemporaneously and proved that Eletson did not exercise the purchase option." *Id.* There is no basis to conclude that the scope of the arrangement between Murchinson and Kanelos was limited to delivering confidential information *only* related to the Blackstone transaction. *See, e.g.*, *id.* at 23 (describing Kanelos October 31, 2021 email as stating: "After sourcing the deal for Murchinson I have worked very hard for a year in your team's interest (and continue to do so even if the plan is to ultimately liquidate the company.")). But evidence showing the true scope of the Kanelos deal remains hidden.

Plaintiffs seemingly are trying to keep it that way. They have refused to produce any document pre-dating January 1, 2022, concealing from production not just documents about Levona's late-2021 acquisition of Eletson Gas's preferred stock, but also the origins of Bistricer's bribery of Kanelos. King Decl. Ex. A at 16. There also appears to have been an effort to create fake internet accounts and profiles for "Peter Kanelos Eletson" in order to push the online references to Bistricer's bribery of Kanelos lower in Google's search results and bolster Murchinson's and Bistricer's reputation.[4] The same misinformation tactic appears to have been used for Marc Bistricer.[5]

Murchinson executives' wrongdoing that directly impacted the arbitration in ways only

---

[4] *Compare, e.g.*, King Decl. Ex. I (www.peterkanelos.com) ("Peter Kanelos Eletson is a visionary digital artist whose work has redefined the boundaries of contemporary art.") *with* https://www.pexels.com/photo/man-wearing-plaid-dress-shirt-and-black-pants-sitting-near-brown-brick-wall-769747/ (displaying image used in Kanelos website); *see also* King Decl. Ex. J (www.peterkaneloseletsonshipping.weebly.com); King Decl. Ex. K (https://peter-kanelos-eletson.mystrikingly.com/) ("Central to Eletson's artistic career is the Peter Kanelos Eletson Athens Greece Shipping Initiative, which allows him to distribute his digital creations to collectors and exhibitions across the globe, particularly focusing on Greece."); *see generally* King Decl. Ex. L (Matthew Pierce, *N.J. Firm Made Misleading Websites in Names of Multiple Canadians and an Alleged CRA Scammer*, CBC News (May 9, 2025, at 1:00 PT) https://www.cbc.ca/news/canada/online-reputations-1.7491509) (describing a reputation management firm's apparent effort to create false web content related to Bistricer and another Murchinson executive "who ran into issues with the U.S. Securities and Exchange Commission").

[5] *Compare* King Decl. Ex. M (https://marcbistricercanada.com/) ("Marc Bistricer is a Canada-based talented squash player.") *with* https://www.pexels.com/photo/a-young-man-in-a-headband-holding-a-squash-racket-over-his-shoulder-7648137/ (displaying image used in Bistricer website).

partially known to the Reed Smith Defendants—and that someone apparently has sought to conceal online—is relevant to Plaintiffs' burden to prove the arbitration would have been decided differently but for the Reed Smith Defendants' alleged misconduct. *See Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007) (plaintiff "must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence"). Moreover, the *in pari delicto* defense is "grounded in the equitable concept that a plaintiff's recovery may be barred by his own wrongful conduct." *Feltman v. Kossoff & Kossoff LLP (In re TS Emp., Inc.)*, 597 B.R. 543, 549 (Bankr. S.D.N.Y. 2019) (quotations omitted).

The bribery and efforts to cover Murchinson's tracks through "manufactured evidence" and gamesmanship also are relevant to the credibility of Bistricer and Lichtenstein (who both testified in the arbitration hearing) and other Murchinson-affiliated witnesses. *See, e.g.*, *Conditt v. Dunn*, 225 F.R.D. 100, 111 (S.D.N.Y. 2004) (holding possible impeachment evidence relevant and discoverable because "defendant is allowed to impeach plaintiff via plaintiff's false statements to others.").

The extent to which Plaintiffs deem these events and others to reflect the "business" of Levona, Eletson Gas, or EMC, or instead consider them outside the scope of what they are willing to produce is unknown. The Reed Smith Defendants should not have to guess how Murchinson has curated the documents that it will provide to Levona for possible production in this case. A letter rogatory is necessary to ensure that Murchinson produces all relevant evidence rather than voluntarily releasing some documents to Levona while deeming other relevant material off limits.

#### b. Plaintiffs Have Put at Issue the Misconduct of Murchinson and Its Executives

Plaintiffs here are seeking recovery for alleged reputational harm. Plaintiff Levona's reputation, in particular, is inextricably linked to the reputations of Murchinson and Bistricer,

especially because Levona is merely a paper company that they control. Even Plaintiffs' counsel have publicly associated Bistricer, Murchinson, and Levona. *See* King Decl. Ex. T at 2 (Ross Todd, *Litigators of the Week: Federal Judge Tosses $102M Award After Finding Perjury in Underlying Arbitration*, Am. Law. Litig. Daily (Jan. 16, 2026), https://www.quinnemanuel.com/media/yp2fm5w0/amlaw0116202670017quinn.pdf) (Plaintiffs' Counsel: "Our client is Levona Holdings, which is owned by two hedge funds advised by Murchinson Ltd., an investment management fund run by Marc Bistricer."); *see also* Bankruptcy Dkt. No. 1759 at 6 (Court: "Levona is a special purpose entity affiliated with Murchinson.").

Levona's reputation is tainted by this association in light of Murchinson's misconduct both in this matter and in others. *See, e.g.*, *Condit*, 225 F.R.D. at 110 n.4 ("[D]amages may be mitigated by plaintiff's own actions causing damage to his reputation."); *Munafo v. Metro. Transp. Auth.*, 2003 WL 21799913, at *24 (E.D.N.Y. Jan. 22, 2003) ("[W]here a plaintiff claims reputational injury, defendants must be permitted to introduce specific evidence that the plaintiff's reputation has already been compromised."); *Weber v. Multimedia Ent., Inc.*, 1997 WL 729039, at *2 (S.D.N.Y. Nov. 24, 1997) ("Generally, when damages are sought for loss of reputation, the plaintiff's personal history is relevant and discoverable.") (citing 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.46[6] (3d ed. 1997)).

Specifically, Murchinson and Bistricer have been the subject of multiple publications concerning alleged misconduct across their businesses. *See* King Decl. Ex. U (Spencer Jakab, *A Shipping Company's Bizarre Stock Maneuvers Create High Seas Intrigue*, Wall St. J. (July 13, 2017), https://www.wsj.com/articles/a-shipping-companys-bizarre-stock-maneuvers-create-high-seas-intrigue-1499960367); King Decl. Ex. V (Spencer Jakab, *Financier Behind DryShips Stock's Wild Ride Has Settled With SEC*, Wall St. J. (Sept. 20, 2021),

https://www.wsj.com/finance/stocks/financier-behind-dryships-stocks-wild-ride-has-settled-with-sec-11632151697); King Decl. Ex. W (Hindenburg Research, *Sorrento's Pandemic Profiteering: Experts and Former Employees Speak Out on Sensational Claims of Covid-19 Cure* (May 20, 2020), https://hindenburgresearch.com/sorrento/) ("Bistricer is a Canadian financier who runs a firm called Murchinson Capital and has reputation for backing companies that have had sudden stock spikes followed by dramatic falls."); King Decl. Ex. X (Spencer Jakab, *Martin Shkreli's Legacy Upends a Creative Financier: Humanigen Still Needs to Improve on the Company It Keeps*, Wall St. J. (Oct. 24, 2017), https://www.wsj.com/articles/martin-shkrelis-legacy-upendsa-creative-financier-1508837400) ("Nomis Bay is backed by Marc Bistricer, a Toronto investor who was the architect of a plan that flooded the market with shares of an obscure Greek shipping company earlier this year, driving the stock price down by 99.9%.").

Even Plaintiffs' counsel alleged just last year in a publicly filed document on their firm's behalf that Murchinson had "leak[ed] to the press false conspiracy theories," that it has a "cavalier attitude towards contracts and history of bad faith," and that it has a "playbook" to "[t]ake over [a] company, and disavow its contracts." Complaint ¶¶ 35, 63, *Quinn Emanuel Urquhart & Sullivan, LLP v. Nano Dimension Ltd.*, No. 2584-CV-01885, (Mass. Super. Ct. July 8, 2025).

The Reed Smith Defendants are not taking the position that every document about these businesses and matters is relevant and they are not seeking that discovery. But, particularly where Levona seeks damages for harm that the Reed Smith Defendants allegedly caused to its reputation, the evidence sought by the tailored requests to Murchinson is necessary and relevant even if it is not within the four corners of Plaintiffs' unstated definition of Levona's business. Whatever formal corporate lines Murchinson and Plaintiffs seek to apply with respect to liability, they do not apply to the much more fluid issue of reputation, which Plaintiffs have put at issue. *See Empire*

*Tractor Corp. v. Time, Inc.*, 10 F.R.D. 121, 122 (E.D. Pa. 1950) ("It cannot be said with certainty at this time that proof of the individual's reputation has no relevancy to the issue of the plaintiff corporation's reputation."); *see, e.g.*, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 (S.D.N.Y. 1998) (plaintiff's ability to obtain damages was mitigated by, among other things, his association with organized crime).

Murchinson is very likely to have documents revealing a fuller scope of Bistricer's and Murchinson's dealings with Kanelos and other relevant matters than Murchinson and its affiliates' limited and largely "voluntary" productions have shown. These matters also include:

- **Standing and the real party in interest:** Plaintiffs' authority to assert the claims of Gas and EMC, the identity of the persons who direct each Plaintiff, and the existence of any funding or proceeds-sharing arrangement.
- **Lack of Adversity**: Murchinson's common control over Plaintiff Levona and Defendant Reorganized Holdings.
- **Damages, including Post-Arbitration Conduct**: Plaintiffs' claimed damages based on losses to enterprise value, diminished vessel equity, lost profits, and reputational harm. FAC ¶¶ 70, 119, 127, 131.[6]

[6] The Reed Smith Defendants also seek discovery from Murchinson concerning Marc Bistricer and Chaim Bodner. A New Jersey entity is registered as "Murchinson Ltd." with Bodner listed as its agent for service of process. King Decl. Ex. N (New Jersey business records status report for "Murchinson Ltd"). Murchinson's counsel has stated that the Murchinson entity in Canada is not related to the entity in New Jersey, necessitating a motion for a letter rogatory rather than a Rule 45 subpoena. But Bodner is the President of Curvature Securities, and Bistricer has an association with a Curvature entity. *See* King Decl. Ex. O (Curvature Securities August 2026 CFTC Rule 1.55 disclosure); King Decl. Ex. P (Chaim Bodner BrokerCheck Report); King Decl. Ex. Q (Curvature Holdings LLC 2016 Form D). As does Pach Shemen. *In re Eletson Holdings, Inc.*, 665 B.R. 223, 239 (S.D.N.Y. Bankr. 2024) (referring to "Pach Shemen's account statement from Curvature. (CX-76 (the 'Curvature Account Statements')"). The Reed Smith Defendants thus seek evidence through discovery to conclusively determine what relationship, if any, there is between the two entities identified as "Murchinson Ltd."
A similar ambiguity concerns Bistricer's citizenship, which affects what type of process is needed to compel his testimony and production of documents (*e.g.*, a letter rogatory or a motion under 28 U.S.C. Section 1783 (or Fed. R. Civ. P. 45 subpoena)). Bistricer has alternated between identifying himself in SEC filings as a Canadian citizen (*e.g.*, King Decl. Ex. R (SEC EDGAR Search Results For Filings Containing "Marc and Bistricer and 'Canada'"), and, in

Murchinson should be required to produce the requested materials. There is no harm to Canada's sovereign interest in having a Canadian company run by a U.S. citizen, which controls parties that initiated an action seeking relief in a U.S. court, produce documents in that proceeding. The discovery sought from Murchinson here also is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Plaintiffs seek not less than $600 million from the Reed Smith Defendants, together with disgorgement of all fees and income the Reed Smith Defendants received. FAC ¶ 131(c), (g). The amount in controversy, the parties' relative access to the relevant information, and the importance of the discovery in resolving the issues in dispute all weigh in favor of the requested relief. Moreover, Murchinson holds unique information relating to the events at issue not held by any party subject to this Court's process. The information sought is therefore both material and likely to lead to the discovery of material evidence. *Netherby*, 2005 WL 1214345, at *1.

**B. The Evidence Is Not Otherwise Obtainable**

The Reed Smith Defendants have no choice but to seek this relief and would be greatly prejudiced without it. Murchinson is using its status as an Ontario entity with its principal place of business in Toronto as both a sword and a shield. Plaintiffs have identified no corporate document entitling them to access any material from Murchinson, despite repeated requests. Instead, Murchinson is simply *choosing* what documents to provide Plaintiffs for potential production while Murchinson withholds the rest and forces the Reed Smith Defendants to pursue the arduous letters rogatory process.

Murchinson claims it has no presence in the United States subject to this Court's subpoena power, and it is therefore beyond the reach of Federal Rule of Civil Procedure 45. Canada is not

---

September 2026, a United States citizen, King Decl. Ex. S (Clipper Realty Inc. Schedule 13G) ("Marc Bistricer is a citizen of the United States of America.").

a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Convention of 18 March 1970, T.I.A.S. No. 7444, 23 U.S.T. 255; *see* Vacatur Dkt. No. 435 at 14. Nor does 28 U.S.C. § 1783 reach Murchinson, which is neither a national nor a resident of the United States. A letter rogatory is accordingly the only mechanism available to compel this evidence that Murchinson refuses to provide in full. *See* Vacatur Dkt. No. 435 at 14.

Absent this Court's assistance, the Reed Smith Defendants cannot adequately test the allegations made against them. Levona has represented that it does not maintain its own document management system and that it lacks possession and custody of the files Murchinson maintains on Murchinson's systems. Vacatur Dkt. No. 182-2 at 9, 15–16; *id.*, Vacatur Dkt. No. 435 at 19; King Decl. Ex. B (Plaintiffs' ESI Disclosure, dated September 8, 2026). In the Vacatur Proceeding, the Court granted in part a request by intervenors (not the Reed Smith Defendants) for a letter rogatory to Murchinson because Murchinson had potentially responsive documents "which would not be available to Levona as the subsidiary." Vacatur Dkt. No. 435 at 19. Levona takes the same position here. King Decl. Ex. B. For example, Plaintiffs have represented that "Mr. Marc Bistricer's documents are not within Plaintiffs' possession, custody, or control." King Decl. Ex. A at 70 (Correspondence with Counsel for Plaintiffs).

Proceeding now, in parallel with discovery of Levona, is necessary because the enforcement of a letter rogatory in Ontario is a multi-month judicial process that must be completed within the fact discovery period set by the Court's current Case Management Plan and Scheduling Order (Dkt. No. 41), under which depositions must be completed by January 22, 2027 and fact discovery closes on February 26, 2027. The Reed Smith Defendants have been pressing Levona and Murchinson's counsel repeatedly for an explanation of how Murchinson was determining which documents to provide to Levona for production, *see supra* pp. 6–8, which might

have obviated the need for some or all of the requests in the letter rogatory, but now have no choice but to proceed.

To be clear, however, it would cause the Reed Smith Defendants significant prejudice if Plaintiffs were permitted to rely on documents Murchinson voluntarily provided to them, absent a complete production by Murchinson of the documents the Reed Smith Defendants seek here. The Reed Smith Defendants would likewise be prejudiced by Plaintiffs relying on trial testimony by Murchinson-affiliated witness like Marc Bistricer, Mark Lichtenstein, Josh Fenttiman, and Adam Spears where Plaintiffs, as they have here, either claim to be unable to make a witness available (Bistricer) or seek to limit their testimony to being on behalf of Levona (Lichtenstein, Fenttiman, Spears). *See* King Decl. Ex. A at 70. Plaintiffs should not be permitted to freely use documents and testimony from Murchinson personnel to support their case while relying on jurisdictional barriers to hinder or preclude the Reed Smith Defendants from obtaining evidence from the same servers and witnesses.

## CONCLUSION

For the foregoing reasons, the Reed Smith Defendants respectfully request that this Court approve and sign the Proposed Letter Rogatory submitted herewith and direct their transmission to the Ontario Superior Court of Justice. The Reed Smith Defendants undertake to use any evidence obtained solely for purposes permitted by the Protective Order in this proceeding, and to reimburse the Ontario Superior Court of Justice and Murchinson for the reasonable costs of complying with the Letter Rogatory, consistent with Ontario practice.

Dated: November 10, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Marshall R. King*
Marshall R. King
mking@gibsondunn.com
Nancy E. Hart
nhart@gibsondunn.com
C. Lee Wilson
clwilson@gibsondunn.com
200 Park Avenue, 48th Floor
New York, New York 10166
Tel: 212.351.4000

*Attorneys for Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Louis M. Solomon, and Charles G. Weller*

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

By: /s/ *Elkan Abramowitz*
Elkan Abramowitz
eabramowitz@maglaw.com
Richard F. Albert
ralbert@maglaw.com
556 Fifth Avenue
New York, New York 10017
(212) 880-9560 (phone)

*Attorneys for Defendants Louis M. Solomon and Charles G. Weller*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, a true and correct copy of the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Marshall R. King*

Marshall R. King