**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>ELETSON HOLDINGS INC., *et al.*,<br>*Debtors*. | |
| LEVONA HOLDINGS LTD., ELETSON GAS LLC, and EMC GAS CORP.,<br>*Plaintiffs*,<br>-against- | Chapter 11<br>Case No. 23-10322 (JPM)<br>Jointly Administered |
| ELETSON HOLDINGS INC., ELETSON CORP., APARGO LIMITED, FENTALON LIMITED, DESIMUSCO TRADING LIMITED, VASSILIS KERTSIKOFF, VASILIS HADJIELEFTHERIADIS, LASCARINA KARASTAMATI, REED SMITH LLP (DELAWARE), REED SMITH LLP (ENGLAND & WALES), CHARLES G. WELLER, and LOUIS M. SOLOMON,<br>*Defendants*. | Civ. No. 26-cv-3620 (LJL) |

**[PROPOSED] ORDER GRANTING REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTERS ROGATORY) WITH RESPECT TO CANADIAN ENTITY ACE148 INCORPORATED**

**TO THE ONTARIO SUPERIOR COURT OF JUSTICE:**

1. The United States District Court for the Southern District of New York presents its compliments to the Ontario Superior Court of Justice, and respectfully requests international judicial assistance to compel the production of documents from, and the oral examination under oath of representatives of, a Canadian entity, to be used in civil proceedings before this Court in the above-captioned matter. This Court requests the assistance described herein as necessary in the interests of justice.

## I. Summary of Action

2. Plaintiffs Levona Holdings Ltd. ("Levona"), Eletson Gas LLC ("Gas"), and EMC

Gas Corp. ("EMC," and collectively with Levona and Gas, "Plaintiffs") commenced this proceeding as an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York on April 24, 2026, Adv. Pro. No. 26-01036 (JPM), in connection with the jointly administered chapter 11 cases captioned *In re Eletson Holdings Inc., et al.*, Case No. 23-10322 (JPM) (Bankr. S.D.N.Y.). On June 17, 2026, this Court granted Plaintiffs' motion to withdraw the reference to the Bankruptcy Court, and the proceeding is now pending before the Honorable Lewis J. Liman of this Court as Civ. No. 26-cv-3620 (LJL). Dkt. No. 19. The operative pleading is the Amended Complaint, Dkt. No. 61 (the "FAC"). Under this Court's Case Management Plan and Scheduling Order, depositions must be completed by January 22, 2027 and fact discovery closes on February 26, 2027. Dkt. No. 41 ¶¶ 6, 7(d).

3. Plaintiffs assert claims against, among others, Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon (collectively, the "Reed Smith Defendants") for declaratory judgment (Count 1, FAC ¶¶ 71–72), conversion and replevin (Count 2), tortious interference with contract (Count 4, *id.* ¶¶ 95–105), tortious interference with prospective business relationship (Count 5, *id.* ¶¶ 106–111), breach of fiduciary duty (Count 6, *id.* ¶¶ 112–122), legal malpractice (Count 7, *id.* ¶¶ 123–127), and deceit and collusion under New York Judiciary Law § 487 (Count 8, *id.* ¶¶ 128–130). Plaintiffs further allege that the Reed Smith Defendants "intentionally, knowingly, and substantially aided, abetted, conspired with, and acted as agents of" the other defendants. *Id.* ¶¶ 109, 120. Plaintiffs seek, among other relief, damages "in an amount to be determined at trial but not less than $600 million," punitive and treble damages, disgorgement, and forfeiture of "all fees and income received by the Reed Smith Defendants and the Individual Defendants during the period of their disloyalty." *Id.* ¶ 131(c)–(h).

4. The Reed Smith Defendants deny these allegations. They have moved to dismiss the Amended Complaint on the grounds that the claims against them lie outside this Court's subject-matter jurisdiction, are barred in part by the applicable limitations period, and are insufficiently pleaded. Dkt. No. 105. They further assert, among other defenses, that no fiduciary or attorney-client relationship existed as alleged; that they engaged in no wrongful conduct; that Plaintiffs are not the real parties in interest with respect to the claims asserted on behalf of Gas and EMC; that Plaintiffs sustained no cognizable damages; and that this Court lacks personal jurisdiction over Mr. Weller and over Reed Smith LLP (England & Wales). The Reed Smith Defendants further contend that Plaintiff Levona and Defendant Eletson Holdings Inc. are under common control, such that the adversity required by Article III of the Constitution of the United States is absent.

5. This proceeding is part of a dispute that this Court has described as follows: "Since March 2023, the courts in this District have been flooded with filings arising out of the dispute between three Greek shipping families and a Canadian hedge fund over the ownership and control of what is reputed to be among the largest natural gas shipping company in the world." Dkt. No. 19 at 1–2. The Canadian hedge fund is Murchinson Ltd. ("Murchinson"), which is located in Toronto, Ontario, Canada. As this Court has found, "[t]he special purpose vehicle Levona is managed by the Canadian hedge fund Murchinson Ltd ('Murchinson')[,] which controls both Levona and Pach Shemen, another company under common ownership." *Id.* at 2.

6. Before the dispute began, "the Greek shipping families and the Canadian hedge fund were partners in the operation of Gas through a Third Amended and Restated Limited Liability Company Agreement (the "LLCA")." *Id.* "The Greek shipping families owned Gas's common shares through their ownership of Eletson Holdings, which was in turn majority owned

by Lassia Investment Co., Glafkos Trust Co., and Family Unity Trust Co. (the "'Former Majority Shareholders'"); the Canadian hedge fund owned Gas's preferred shares through Levona." *Id.* Levona is a special purpose entity incorporated under the laws of the British Virgin Islands on or about October 20, 2021, and created by Murchinson for the purpose of acquiring and holding the preferred shares of Gas (the "Preferred Shares"). Murchinson "owns and controls Nomis Bay Lt[d]. and BPY Limited, and through them, owns and controls Levona." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL) (S.D.N.Y.) (the "Vacatur Proceeding"), Dkt. No. 435 at 11. Nomis Bay and BPY are Bermuda-based special purpose vehicles that "do not have employees." *Id.* at 18.

7. "Trouble began when, as a result of the Covid-19 pandemic, shipping slowed and Gas ran into financial distress. To forestall seizures of vessels owned by Gas, Levona extended a line of credit to Gas in exchange for Gas's interests in two vessels, the Symi and the Telendos, and subject to Holdings' rights to obtain Levona's preferred shares (and thereby to assume full ownership and control of Gas) by the exercise of an option if the loan was repaid or security or collateral was provided for it (the 'Purchase Option'). The agreement between the parties was documented in a binding offer letter ('BOL') and related documents (the 'Transaction Documents')." Dkt. No. 19 at 2. "Thereafter, Murchinson assumed an interest in Holdings by purchasing its distressed debt through Pach Shemen." *Id.* at 2–3.

8. "Ultimately, two related disputes arose between the parties." *Id.* at 3. "First, Holdings and its subsidiary Corp. brought claims in arbitration against Levona, and Levona brought counterclaims against Holdings after Levona attempted to sell a portion of Gas's fleet to a competitive shipping company, Unigas." *Id.* "In short, Holdings and Corp. alleged, among other things, that they had become the full owners of Gas and that Levona was stripped of any ownership

or control of the company because Holdings had exercised the Purchase Option and thereby obtained the preferred shares of Gas. Levona alleged that it and not Holdings was the owner of the preferred shares because the Purchase Option had not been exercised, that Holdings and Corp. had mismanaged Gas, and that they were wrongly preventing Levona from completing the Unigas transaction or selling the Symi and Telendos in violation of the LLCA." *Id.* The Reed Smith Defendants represented Holdings and Corp. in that arbitration.

9. "In September 2023, an arbitrator ruled for Holdings and Corp., accepting their claims and rejecting Levona's counterclaims." *Id.* "The dispute arrived [before Judge Liman] that same month when Holdings moved to confirm the arbitral award and Levona moved to vacate it. . . . After initially finding that the award was confirmable, . . . this Court ultimately granted summary judgment to Levona and vacated the award, finding that it had been procured by fraud." *Id.* This Court's opinion and order of January 12, 2026 in the Vacatur Dkt. No. 678 therein, is referred to herein as the "Vacatur Decision" and is annexed as Exhibit B to the Amended Complaint.

10. "Second, while (and even before) the parties were contesting confirmation and vacatur of the award before the undersigned, a separate saga was unfolding in the United States Bankruptcy Court for the Southern District of New York." *Id.* "On March 7, 2023, Pach Shemen and two other creditors of Holdings (the "'Petitioning Creditors'") commenced involuntary bankruptcy proceedings against Holdings and two affiliates," which were converted to a voluntary chapter 11 case on September 25, 2023. *Id.* at 3–4. "Ultimately, the Greek shipping families submitted one proposed plan of confirmation which would have kept them in control of Holdings (and thereby of at least the common shares of Gas), while the Canadian hedge fund through Pach Shemen and alongside the other Petitioning Creditors submitted their own proposed plan of

confirmation. The Bankruptcy Court found that the plan submitted by the Greek shipping families was [unconfirmable] and confirmed the plan submitted by Pach Shem[en] and the other Petitioning Creditors on October 25, 2024." *Id.* at 4. Since that date, Murchinson has controlled both Plaintiff Levona and Defendant Eletson Holdings Inc.

11. "On December 18, 2023, before the Bankruptcy Court confirmed the Plan of Reorganization submitted by the Petitioning Creditors, Levona filed a proof of claim in the Bankruptcy Proceedings (the 'Proof of Claim'). In it, Levona asserted that the Purchase Option lapsed without being exercised and that Levona remained the sole owner of Gas's preferred shares." *Id.* "The Proof of Claim remains pending and has never been adjudicated." *Id.* at 5. The Proof of Claim is annexed as Exhibit A to the Amended Complaint and is incorporated into it by reference.

12. In granting the motion to withdraw the reference to the Bankruptcy Court, this Court observed that the issues in this proceeding "will likely include the extent of discovery that should be allowed and the ability to obtain discovery from outside the United States." Dkt. No. 19 at 16.

13. The present request concerns discovery as to Ace148 Incorporated (referred to by Plaintiffs as "Ace148 Inc.") ("Ace148"), a privately held investment company located in Toronto, Ontario, Canada.

14. Ace148 was founded by Adam Spears, who serves as its principal. Mr. Spears is a director of Levona, has performed work for Pach Shemen, and verified Plaintiffs' interrogatory responses in this proceeding as "an authorized representative of each of the Plaintiffs." King Decl. Ex. F. In the Vacatur Proceeding, this Court identified Mr. Spears as one of the individuals "whose conduct and communications are central to this case." Vacatur Dkt. No. 435 at 19. In their initial

disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure in this proceeding, Plaintiffs themselves identified Mr. Spears as a person likely to have discoverable information concerning, among other subjects, the BOL, the Purchase Option, Levona's interests in Gas, the valuation of the vessels, the proposed sale to Unigas, and the damages Plaintiffs claim. King Decl. Ex. A. Mr. Spears also received the July 13, 2022 email from Eletson's former Chief Financial Officer, Peter Kanelos, attaching a document entitled "Murchinson Buyout Steps," which this Court addressed in the Vacatur Decision. Vacatur Dkt. No. 678 at 91, 103.

15. Mr. Spears's documents are not maintained on any system belonging to Plaintiffs. In the Vacatur Proceeding, Levona disclosed that Mr. Spears's Levona-related emails "are maintained in a non-segregated Microsoft 365 cloud account using the @ace148.com email domain," which "includes non-Levona materials, including but not limited to materials regarding his work for Pach Shemen." Vacatur Dkt. No. 182-2 at 15. In this proceeding, Plaintiffs have disclosed that Mr. Spears's documents "are maintained in a non-segregated account that non-party Ace148 Inc. ('Ace148') controls," and that Plaintiffs' documents "will first need to be identified on [Ace148's] servers for delivery to Plaintiffs." King Decl. Ex. B. Plaintiffs propose to search Mr. Spears's documents only for the period beginning January 1, 2022. *Id.*

16. This Court finds that the evidence sought from Ace148 is relevant to the claims and defenses in this proceeding. Mr. Spears acted on behalf of Levona with respect to transactions at the heart of this case, and Ace148 maintains on its own systems in Ontario Mr. Spears's records concerning Levona, the Preferred Shares, the vessels, and the matters pleaded in the Amended Complaint, as well as records of his work in other capacities.

17. This Court further finds that the evidence sought is necessary for trial and, if admissible, will be adduced at trial. The Reed Smith Defendants require the documents and

testimony described in Schedules A and B in order to test Plaintiffs' allegations concerning the ownership of the Preferred Shares, the exercise or non-exercise of the Purchase Option, the proposed Unigas transaction, the authority of Levona to prosecute the claims asserted on behalf of Gas and EMC, the timing of Plaintiffs' alleged injuries, and the existence, incidence, and amount of the damages Plaintiffs claim, which are alleged to be "not less than $600 million." FAC ¶ 131(c).

18. This Court further finds that the evidence is not otherwise obtainable. Ace148 is not a party to this proceeding, has no presence in the United States subject to this Court's subpoena power, and is therefore beyond the reach of Rule 45 of the Federal Rules of Civil Procedure. Canada is not a party to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. No. 7444, 23 U.S.T. 2555, and 28 U.S.C. § 1783 does not reach Ace148, which is neither a national nor a resident of the United States. The Reed Smith Defendants have served requests for production and interrogatories on Plaintiffs seeking related material, and Plaintiffs have responded that Mr. Spears's documents reside in an account controlled by Ace148, from which only the documents Ace148 identifies as Plaintiffs' documents will be delivered to Plaintiffs. King Decl. Ex. B; King Decl. Ex. C. The Reed Smith Defendants have also asked counsel for Ace148 to voluntarily accept service of a subpoena. That request was denied. King Decl. Ex. D.

19. This Court further finds that the documents and subjects of examination are identified with reasonable specificity in Schedules A and B; that the requests are limited in time; that they are directed principally to material as to which Ace148, rather than Plaintiffs, is the custodian; that they exclude documents already produced by Plaintiffs in this proceeding and

matters covered in any deposition of Mr. Spears taken as Plaintiffs' witness; and that compliance would not be unduly burdensome.

20. This Court respectfully requests that the Ontario Superior Court of Justice give effect to this request pursuant to Section 46(1) of the Canada Evidence Act, R.S.C. 1985, c. C-5, and Section 60 of the Evidence Act, R.S.O. 1990, c. E.23.

## II. Assistance Requested

1. The assistance of the Ontario Superior Court of Justice in Toronto, Ontario, Canada, is requested because the evidence sought from a Canadian entity—Ace148—is relevant to the claims and defenses in this case, is necessary for use at trial, and is not otherwise obtainable. The evidence is not obtainable through this Court's compulsory process because Ace148 is an Ontario entity, resident in Canada and outside the subpoena power of this Court, and because Canada is not a party to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. No. 7444, 23 U.S.T. 2555. This Court therefore respectfully requests that, in the interests of justice, the Ontario Superior Court of Justice issue such orders, subpoenas, or other compulsory process as may be necessary to compel Ace148:

a. to produce the documents described in Schedule A annexed hereto, within such time as the Ontario Superior Court of Justice shall direct; and

b. to produce for oral examination under oath, before a duly appointed examiner or court reporter, one or more officers, directors, or employees knowledgeable with respect to the subjects described in Schedule B hereto at a place and on a date to be fixed by the Ontario Superior Court of Justice.

2. This Court respectfully requests that the examination be conducted under oath or affirmation; that it be recorded stenographically and, if practicable, by video; that counsel for the

parties to the above-captioned proceeding be permitted to attend and to examine and cross-examine the witnesses; and that the examination be conducted in accordance with the procedures of the Ontario Superior Court of Justice, save that this Court requests that questions be permitted in the form ordinarily used in civil proceedings in the United States District Courts, to the extent consistent with Ontario law and practice.

3. This Court further respectfully requests that any objection to a question or a request for production be noted on the record and that, unless the witness is instructed not to answer on the basis of a privilege recognized under the law of Ontario or of the United States, the witness be directed to answer.

## III. Documents and Testimony Requested

### A. Instructions

4. This request calls for the document production set forth in Schedule A hereto and the oral examination set forth in Schedule B hereto from an entity: Ace148 Incorporated.

### B. Entity From Whom Documents and Testimony Are Requested

5. Ace148 Incorporated

10 Alcorn Avenue

Toronto, Ontario, Canada M4V 3A9

6. Ace148 is highly likely to possess the documents and knowledge described in Schedules A and B. This Court therefore requests documents and testimony from Ace148.

### C. Parties and Counsel

7. Counsel for the Reed Smith Defendants, who are the moving parties with respect to this request, are:

Marshall R. King, Nancy E. Hart, and C. Lee Wilson
Gibson, Dunn & Crutcher LLP

200 Park Avenue, 48th Floor, New York, New York 10166

Elkan Abramowitz and Richard F. Albert
Morvillo Abramowitz Grand Iason & Anello P.C.
556 Fifth Avenue, New York, New York 10017

**IV. Rights Under U.S. Law**

8. Under the laws of the United States, a party has a privilege to refuse to produce documents or to testify if to do so would disclose a confidential communication between the party and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. Other limited privileges on grounds not applicable here also exist, such as communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation. Nothing in this request is intended to require the production of documents or testimony protected by any privilege or immunity recognized under the laws of Canada or of the Province of Ontario.

**V. Use and Confidentiality Undertaking**

9. The Reed Smith Defendants have undertaken, and this Court requests that the Ontario Superior Court of Justice direct, that any documents produced and any testimony given pursuant to this request be used solely for the purposes of the above-captioned proceeding and any appeal therefrom, and be treated in accordance with any protective order entered in this proceeding.

**VI. Reimbursement for Costs**

10. The Reed Smith Defendants are willing to reimburse the Ontario Superior Court of Justice for its costs incurred in the execution of this Court's Letter Rogatory, and to pay the

reasonable costs and legal fees incurred by Ace148 Incorporated in responding to this request, in an amount to be fixed by the Ontario Superior Court of Justice.

## **VII. Reciprocity**

11. In the furtherance of justice and by the proper and usual process of this Court, the United States District Court for the Southern District of New York assures the Ontario Superior Court of Justice that it is willing to provide similar cooperation and assistance to the Ontario Superior Court of Justice in the event that Canada requests similar assistance.

Dated: ______________________

______________________________
The Honorable Lewis J. Liman
United States District Court Judge