## SCHEDULE A

You are requested to produce to the attorneys for Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon (the "Reed Smith Defendants") all Documents and Communications responsive to the Requests set forth below that are in Your possession, custody, or control, wherever located, or that can be obtained through reasonably diligent efforts.

## DEFINITIONS

1. Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. The definitions and rules of construction set forth below apply to these Requests. If You do not understand the meaning of any term used herein, You should promptly seek clarification through the undersigned.

2. The definitions and rules of construction set forth in the Federal Rules of Civil Procedure and the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules") are hereby incorporated and apply to these Requests. For the avoidance of doubt, and because these Requests are directed to an entity outside the United States, the principal such terms are separately set out below.

3. "Ace148" means Ace148 Incorporated (referred to by Plaintiffs in the Adversary Proceeding as "Ace148 Inc."), a company based in Toronto, Ontario, Canada, and its predecessors, successors, divisions, direct or indirect subsidiaries, and parent companies, and all of its officers, directors, employees, agents, representatives, or any other Person acting on its behalf, including Spears.

4. “Adversary Proceeding” or “Action” means the adversary proceeding captioned *Levona Holdings Ltd. et al. v. Eletson Holdings Inc. et al.*, Civ. No. 26-cv-3620 (LJL) (S.D.N.Y.), currently pending in the United States District Court for the Southern District of New York.

5. “Amended Complaint” means the Amended Complaint filed by Plaintiffs in the Adversary Proceeding, ECF No. 61, including the exhibits thereto.

6. “Arbitration” means the JAMS arbitration entitled *Eletson Holdings, Inc. et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, referenced in the Amended Complaint between Holdings and Corp., on the one hand, and Levona, on the other hand, including all claims, counterclaims, and proceedings therein.

7. “At-Issue Documents” means the documents at issue in the Vacatur Action, itemized by the United States District Court for the Southern District of New York at Vacatur Action, ECF No. 435 at 3, and located at docket numbers 127-4, 127-5, 127-8, 127-9, and 137-1 in the Vacatur Action, and includes any substantially identical copies or versions of those documents.

8. “Bankruptcy Proceeding” means the case captioned In re Eletson Holdings Inc., et al., No. 23-10322 (JPM) (Bankr. S.D.N.Y.). It covers (i) the involuntary Chapter 7 proceedings commenced on March 7, 2023 by the petitions of Pach Shemen LLC, VR Global Partners, L.P., and Alpine Partners (BVI), L.P. against Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC, together with any joinder in or amendment to those petitions; (ii) the Chapter 11 Cases into which those proceedings were converted on September 25, 2023; and (iii) all contested matters, adversary proceedings, and other proceedings arising in or related to either of them.

9. "Blackstone" means Blackstone Family Tactical Opportunities Investment Partnership (Cayman) ECS L.P. and Blackstone Family Tactical Opportunities Investment Partnership (Cayman) SMD L.P., and each of their predecessors, successors, related entities, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof.

10. "BOL" means the "Binding Offer Letter" referenced in Paragraph 32 of the Amended Complaint, together with all amendments, schedules, exhibits, and related agreements thereto.

11. "BPY" means BPY Limited and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf.

12. "Chapter 11 Cases" means the jointly administered chapter 11 cases captioned *In re Eletson Holdings Inc., et al.*, Case No. 23-10322 (JPM) (Bankr. S.D.N.Y.).

13. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), as defined in Local Civil Rule 26.3(c).

14. "Complaint" means the Complaint filed by Plaintiffs in the Adversary Proceeding on April 24, 2026, Adv. ECF No. 1, including the exhibits thereto.

15. "Concerning" means relating to, referring to, describing, evidencing, or constituting, as defined in Local Civil Rule 26.3(c).

16. "Corp." means Eletson Corp. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its

officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

17. “Document” is synonymous in meaning and equal in scope to the usage of the terms “documents or electronically stored information” in Federal Rule of Civil Procedure 34(a)(1)(A), as provided in Local Civil Rule 26.3(c). A draft or non-identical copy constitutes a separate “Document” within the meaning of the term. “Document” also includes all electronically stored information (“ESI”), including without limitation all letters, memoranda, text messages, e-mails, instant messages, photographs, social media messages and posts, chat and collaboration platform messages (including Microsoft Teams, Slack, WhatsApp, Signal, and Telegram), and any other electronic or digital Communications.

18. “Effective Date” means the purported effective date of the Plan, which occurred in November 2024, as referenced in Paragraph 26 of the Amended Complaint.

19. “Eletson Entities” means Holdings, Reorganized Holdings, Corp., Gas, and EMC, and each of their direct or indirect subsidiaries, including the entities that own or owned any Vessel.

20. “EMC” means Plaintiff EMC Gas Corp. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, and affiliates thereof, and all its officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

21. “FAL” means the “Fundamental Action Letter” referenced in Paragraph 87 of the Amended Complaint, signed on or about March 11, 2022.

22. "Financier" means the financier referenced in Paragraph 46 of the Amended Complaint and, if different, any financier referenced in Paragraphs 56, 57, 58, 59, 60, or 61 of the Amended Complaint.

23. "Gas" means Plaintiff Eletson Gas LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, and affiliates thereof, and all its officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

24. "Holdings" means Eletson Holdings Inc., a debtor in the Chapter 11 Cases, before the purported Effective Date of the Plan, and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all its officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

25. "Kanelos" means Peter Kanelos, the former Chief Financial Officer of Holdings, together with any entity he owns or controls (including any entity referred to as "PKT Gas"), and any attorney, agent, or representative purporting to act on his behalf or on behalf of an entity he owns or controls.

26. "Levona" or "Levona Holdings Ltd." means Plaintiff Levona Holdings Ltd. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies (including Murchinson), members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf.

27. "LLCA" means the Third Amended and Restated Limited Liability Company Agreement of Eletson Gas LLC referenced in Paragraph 16 of the Amended Complaint, together with all amendments thereto.

28. "Loan" and "Loan Agreement" mean the loan and loan agreement referenced in the BOL and in Paragraphs 9 and 42 of the Amended Complaint.

29. "Murchinson" means Murchinson Ltd. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf.

30. "Murchinson Affiliate" means all affiliates of Murchinson, including but not limited to Levona, Nomis Bay, BPY, and Pach Shemen.

31. "Nomis Bay" means Nomis Bay Ltd. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf.

32. "OCM Maritime Entities" means OCM Maritime Thames LLC, OCM Maritime Autumn LLC, OCM Maritime Rhine LLC, and OCM Maritime Yukon LLC, together with Oaktree Capital Management, L.P. and any other entity affiliated with it that is a party to any sale-leaseback or charter of any Vessel.

33. "Ownership Dispute" means the dispute Concerning the ownership or control of Gas, EMC, the Preferred Shares, the Vessels, or any Vessel-Owning Subsidiary that is referenced in the Amended Complaint, including any question as to whether Levona, Eletson Holdings, Eletson Corp., the Individual Defendants, the Purported Nominees, or any other Person owned,

controlled, or was authorized to give instructions or directions on behalf of Gas, EMC, or any Vessel-Owning Subsidiary.

34. "Pach Shemen" means Pach Shemen LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf.

35. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association, as defined in Local Civil Rule 26.3(c).

36. "Plaintiffs" means Levona, Gas, and EMC, collectively.

37. "Plan" means the confirmed chapter 11 plan of reorganization in the Chapter 11 Cases, ECF No. 1132.

38. "Preferred Shares" means the preferred shares of Gas referenced in the Amended Complaint.

39. "Proof of Claim" means the proof of claim filed by Levona in the Chapter 11 Cases on or about December 18, 2023 (Claim No. 21-1), attached as Exhibit A to the Amended Complaint.

40. "Purchase Option" means the option to purchase the Preferred Shares set out in the BOL, including clauses 2.2 through 2.5 thereof, as referenced in Paragraph 32 of the Amended Complaint.

41. "Purported Nominees" means Apargo Limited, Fentalon Limited, and Desimusco Trading Limited, as those entities are identified in the Amended Complaint.

42. "Reed Smith Defendants" means Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon.

43. "Refer," "relate," "reflect," "regard," or "concern" shall be construed to bring within the scope of the Request all Documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request, including all Documents that reflect, memorialize, discuss, evaluate, consider, review, or report the subject matter of the Request.

44. "Relevant Period" means January 1, 2021 through April 24, 2026, unless otherwise specified in a particular Request. Each Request refers to the Relevant Period unless a different time period is stated.

45. "Relevant Proceeding" means the Arbitration, the Chapter 11 Cases, the Vacatur Action, the Adversary Proceeding, any proceeding seeking confirmation, recognition, enforcement, or vacatur of the award in the Arbitration, any proceeding that in whole or in part Concerns the BOL, the Purchase Option, the Preferred Shares, or the arrest or detention of any Vessel, and any other proceeding or dispute between Levona and one or more of the Eletson Entities.

46. "Reorganized Holdings" means Eletson Holdings Inc. after the purported Effective Date of the Plan and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all its officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

47. "Reputational Matter" means each of the following: (a) SEC Admin. Proc. File No. 3-20463 and the underlying investigation; (b) Murchinson's acquisition and trading in DryShips

Inc. securities; (c) Murchinson's investments in KaloBios Pharmaceuticals, Inc. / Humanigen, Inc.; (d) Murchinson's investments in Sorrento Therapeutics, Inc.; (e) the Nano Dimension Ltd. proxy contest, the Desktop Metal merger, and Quinn Emanuel Urquhart & Sullivan, LLP v. Nano Dimension Ltd., No. 2584CV001885 (Mass. Super. Ct.); (f) any reputation-management engagement of the kind reported by CBC News on May 9, 2025 at https://www.cbc.ca/news/canada/online-reputations-1.7491509.

48. "Share Transfer Agreement" means the agreement referenced in Paragraph 53 of the Amended Complaint, signed on or about March 11, 2022, by which "full control of the companies that own and control the vessels" was allegedly transferred to Levona, together with all amendments, schedules, exhibits, and related agreements thereto.

49. "Spears" means Adam Spears, the founder and principal of Ace148 and a director of Levona, in any capacity in which he has acted, including as a director, officer, employee, consultant, agent, or representative of Ace148, Levona, Gas, Pach Shemen, Reorganized Holdings, Murchinson, or any Murchinson Affiliate.

50. "Spears Account" means each email account, mailbox, and associated Microsoft 365 data repository (including OneDrive, SharePoint, and Teams data, archives, and backups) that uses the @ace148.com domain and is used by or for Spears, including the account adam@ace148.com, and the "non-segregated account" described in Plaintiffs' ESI Disclosure in the Adversary Proceeding dated September 8, 2026.

51. "Unigas" means the counterparty to the proposed transaction referenced in Paragraph 32 of the Amended Complaint and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all its

officers, directors, employees, agents, attorneys, assigns, representatives, or any Person who otherwise acted or is acting on its behalf.

52. “Unigas LOI” means the non-binding letter of intent dated on or about July 15, 2022, entered into by Levona, purporting to act on behalf of Gas, and Unigas, Concerning the sale of certain Vessels to Unigas for approximately $262 million, referenced in Paragraph 32 of the Amended Complaint and filed in the Vacatur Action at ECF No. 595-84, together with all drafts, amendments, and related agreements.

53. “Unigas Transaction” means the proposed sale contemplated by the Unigas LOI.

54. “Vacatur Action” means the action captioned *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL) (S.D.N.Y.), and all proceedings therein.

55. “Vacatur Decision” means the January 12, 2026 opinion and order of the United States District Court for the Southern District of New York in the Vacatur Action, ECF No. 678, attached as Exhibit B to the Amended Complaint.

56. “Vessel Financiers” means the Financier, the OCM Maritime Entities, and any other Person that has lent money secured by, held a mortgage over, purchased and chartered back, or otherwise financed any Vessel.

57. “Vessels” means the vessels currently or formerly owned, operated, chartered, financed, managed, or controlled by Gas, EMC, or their subsidiaries, including the vessels named *Symi* and *Telendos*.

58. “Vessel-Owning Subsidiary” means any direct or indirect subsidiary of Gas or EMC that owns, owned, operates, operated, charters, chartered, or holds or held title to any Vessel.

59. “Withheld Documents” means the documents referred to as the “Withheld Documents” in the Vacatur Decision, together with the At-Issue Documents.

60. “You” and “Your” refer to Ace148, the entity to which this request is addressed.

61. The use of a singular form of any word includes the plural, and vice versa; the use of a verb in any tense includes the use of that verb in all other tenses; and the use of the term “the” shall not be construed as limiting the scope of any Request.

62. The terms “all,” “any,” and “each” shall each be construed as encompassing any and all, as provided by Local Civil Rule 26.3(d). The connectives “and,” “and/or,” and “or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

63. References to employees, officers, directors, members, managers, or agents shall include both current and former employees, officers, directors, members, managers, and agents.

64. The definitions used herein are chosen for clarification and the convenience of the parties, and shall not be construed as admissions.

## INSTRUCTIONS

1. Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation or exclusion.

2. These Instructions and the above Definitions should be construed to require responses based upon the information available to You and others acting on Your behalf. In responding to the Requests, You shall produce all Documents and Communications in Your possession, custody, or control, including Documents and Communications in the Spears Account and Documents and Communications maintained by You on behalf of, or for the benefit of, Spears, any Plaintiff, Reorganized Holdings, Pach Shemen, or any Murchinson Affiliate, regardless of the capacity in which Spears created, sent, or received them and regardless of whether You or any

Plaintiff regard them as "Plaintiffs' documents." However, You need not produce any documents that Plaintiffs have already produced in this action.

3. The Requests shall not be deemed to call for identical copies of Documents and Communications. "Identical" means precisely the same in all respects; for example, a Document with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4. In the event You are able to produce only some of the Documents and Communications called for in a particular Request, please promptly produce all the Documents and Communications available and state the reason(s) for Your inability to produce the remainder.

5. If there are no Documents or Communications responsive to a category in the Requests, please state so in writing. If a Document or Communication requested is no longer existing or available, please state so in writing.

6. If You object to a portion of any Request, please state the grounds of Your objection with specificity and produce all Documents and Communications called for by that portion of the Request to which You do not object.

7. If, in responding to these Requests, You encounter any ambiguities when construing a Request, Instruction, or Definition, please set forth the matter that You find to be ambiguous and explain the construction You used in responding.

8. Any Document redacted or withheld from production on the basis of any claimed privilege or immunity shall be logged in accordance with Local Civil Rule 26.2 and Federal Rule of Civil Procedure 26(b)(5), including the type of Document or Communication, the general subject matter, the date, and, where appropriate, the author, addressee, custodian, and any other recipient, and, where not apparent, the relationship of the author, addressee, custodian, and any

other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable the Reed Smith Defendants to assess the applicability of the privilege claimed. If any Document or Communication is withheld in reliance on a common interest or joint defense agreement, please identify the applicable agreement and describe, among other relevant details, its execution date, scope, and justification. You must produce any and all portions of any responsive Document to which the claim of privilege or immunity does not apply, and any redactions must be clearly visible on the redacted Document.

9. If You are withholding a Document or Communication for any reason other than a claim of privilege or work product doctrine, please provide the reason for withholding the Document.

10. In the event any Document responsive to these Requests has been lost, discarded, destroyed, or is otherwise no longer in Your possession, custody, or control, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all persons who received copies of the Document, including indicated and blind copy recipients; (c) the present custodian of the Document; (d) the date of the Document; (e) the Document's date of destruction or discard, manner of destruction or discard, and the reason therefor; and (f) the persons authorizing and carrying out such destruction or discard.

11. Any and all objections to producing any category of Documents pursuant to these Requests should be made in a written response served on counsel for the Reed Smith Defendants within the time period for responding to these Requests.

12. If You object to the production of any requested Document(s) on the grounds that production is unduly burdensome, please describe the burden or expense.

13. In propounding these Requests, the Reed Smith Defendants do not concede the truth and/or validity of, and hereby expressly reserve all rights in respect of, any claim, assertion, or factual allegation.

14. The Reed Smith Defendants serve these Requests without prejudice to their right to seek additional Documents or to amend the Instructions or Definitions herein in response to an objection or request for clarification as to the scope of these Requests.

15. Nothing in these Requests is intended to require the production of any Document or Communication that is protected from disclosure by any privilege or immunity recognized under the laws of Canada, of the Province of Ontario, or of the United States, or the production of which would be contrary to the public policy of Canada or of the Province of Ontario. These Requests are to be complied with in the manner and within the time directed by the Ontario Superior Court of Justice, and in accordance with the Ontario Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED**

1. All Documents and Communications in the Spears Account, or otherwise maintained by You in electronic or hard copy form, Concerning (a) Gas, EMC, the Preferred Shares, or the Vessels; (b) any Relevant Proceeding; or (c) any Reed Smith Defendant, including its representation of any Eletson Entity.

2. All Documents and Communications Concerning (a) the acquisition of Blackstone's former preferred interest in Gas; (b) the BOL, the Loan, the Purchase Option, or the nomination of the Purported Nominees; and (c) the FAL, the LLCA, or the Share Transfer Agreement.

3. All Communications between You and Unigas, or any agent acting on behalf of any of them, Concerning Gas, EMC, the Vessels, the Unigas LOI, the Unigas Transaction, or the

Ownership Dispute, including any representation or statement Concerning who owned, controlled, or was authorized to act on behalf of Gas or to enter into the Unigas LOI.

4. Documents sufficient to show each role, title, or capacity in which Spears has acted for or on behalf of Levona, Gas, EMC, Pach Shemen, Holdings, Reorganized Holdings, Murchinson, or any Murchinson Affiliate, and all agreements (including any employment, consulting, services, advisory, appointment, or indemnification agreement) between You or Spears, on the one hand, and any of those Persons, on the other hand, together with Documents sufficient to show all compensation, fees, carried interest, profit participation, or other remuneration paid or payable to You or Spears in connection with any Eletson Entity, the Preferred Shares, or any Relevant Proceeding.

5. Documents sufficient to show any direct or indirect interest held by You or Spears in Levona, Nomis Bay, BPY, Pach Shemen, any fund managed or advised by Murchinson, Reorganized Holdings, the Preferred Shares, any claim in the Chapter 11 Cases, or any recovery in the Adversary Proceeding, and any agreement or arrangement Concerning the funding of, or the sharing of any recovery in, the Arbitration, the Vacatur Action, the Proof of Claim, or the Adversary Proceeding.

6. All Documents Concerning any valuation, appraisal, model, projection, mark, or assessment of the Preferred Shares, Gas, EMC, or any Vessel, including the financial model sent to Spears by Kanelos on or about July 13, 2022, the document entitled "Murchinson Buyout Steps," and any analysis of the losses alleged in Paragraphs 70, 119, 127, and 131 of the Amended Complaint.

7. All Documents and Communications Concerning the financing, refinancing, chartering, management, revenue, expenses, sale, lease, or transfer of any Vessel, including all Communications with any Vessel Financier.

8. Without regard to the Relevant Period, all Communications concerning or including Kanelos from October 1, 2020 to the present, and all Documents Concerning any payment, compensation, benefit, or other consideration provided, offered, or proposed to Kanelos.

9. Documents sufficient to show the date on which You or Spears first obtained, reviewed, or learned of the contents of any of the Withheld Documents, and the source from which and the capacity in which they were obtained, and all Communications Concerning the Withheld Documents prior to January 12, 2026.

10. For the period from October 25, 2024 to the present: (a) all Communications between Spears and any other director, officer, or representative of Levona, Reorganized Holdings, or Corp. Concerning the Proof of Claim, the Complaint, or the Amended Complaint, including any decision whether to contest or resolve the Proof of Claim; and (b) any common-interest, joint-prosecution, or joint-defense agreement between or among Levona, any Murchinson Affiliate, Reorganized Holdings, and Corp.

11. All Communications with any journalist, public-relations professional, or reputation-management professional Concerning Levona, Gas, EMC, any Eletson Entity, Marc Bistricer, or any Relevant Proceeding, and all Documents Concerning any reputational harm alleged by Plaintiffs in the Amended Complaint.

12. All reputational assessments and reviews, media-monitoring reports, sentiment analyses, and background checks concerning Murchinson or Marc Bistricer, whether prepared by or for You or received from any third party.

13. All Documents and Communications regarding any media coverage, potential media coverage, website creation, or web profile creation of any Reputational Matter and/or Marc Bistricer, including all Communications with any journalist or news organization, with any public relations professional, with any reputation management professional (including David Rosenberg or cleanyourname.com), and/or (internally or with a third party) referring to any search engine optimization, media coverage or potential media coverage concerning any Reputational Matter and/or Marc Bistricer.

14. Non-privileged Documents sufficient to show (a) any email account, messaging application, or file repository other than the Spears Account used by Spears to conduct business Concerning Levona, Gas, EMC, any Eletson entity, or any Relevant Proceeding; (b) Your document-retention policies applicable to the Spears Account and any such other account or repository; (c) the criteria and process by which You have identified, or will identify, Documents in the Spears Account as Plaintiffs' documents for delivery to Plaintiffs in the Adversary Proceeding; and (d) the criteria and process by which You have identified, or will identify, Documents in the Spears Account as Eletson's documents for delivery to Eletson in the Adversary Proceeding.

15. All Documents and Communications Concerning an Eletson Holdings Inc. and Eletson Finance (US) LLC Offering Memorandum dated December 12, 2013.

16. All Documents and Communications Concerning: (a) any acquisition or contemplated acquisition by Murchinson or any Murchinson Affiliate, including Pach Shemen, of notes or other claims against any of the Debtors, and the purpose, rationale, or strategy for that acquisition (including all Communications with Jefferies and all Documents and Communications reflecting the origin of any decision to communicate with Jefferies and/or to conduct outreach to

Eletson Holdings noteholders and/or their counsel); (b) any consideration, analysis, planning, or decision, before March 7, 2023, to commence or join an involuntary bankruptcy or other insolvency proceeding against Eletson Holdings Inc. or any other Eletson Entity, including the timing, forum, and chapter selected; (c) the anticipated or intended effect of the Bankruptcy Proceeding on the Arbitration, the October 10, 2022 status quo order, the Unigas transaction, Gas, or the ownership or control of the Preferred Shares; (d) any agreement, coordination, or Communications with any creditor or noteholder of the Debtors Concerning the involuntary petitions; and (e) any information Concerning the Debtors' finances or creditors obtained from Peter Kanelos or any other current or former Eletson officer, director, or employee and used in connection with the decision to commence the Bankruptcy Proceeding.

**SCHEDULE B**

**SUBJECTS OF EXAMINATION AND PROPOSED WITNESSES**

Ace148 Incorporated is requested to produce for oral examination under oath one or more officers, directors, or employees who are knowledgeable with respect to the subjects set forth below. To avoid duplication, the examination shall not extend to matters covered in any deposition of Spears taken as a witness for Plaintiffs in the Adversary Proceeding, and the Reed Smith Defendants will cooperate in scheduling so that, to the extent practicable, any examination of Spears in both capacities occurs on a single occasion. The Reed Smith Defendants reserve the right to seek the examination of additional individuals.

**SUBJECTS**

1. The Documents produced in response to Schedule A.

2. The roles, titles, and capacities in which Spears has acted for or on behalf of Levona, Gas, EMC, Pach Shemen, Holdings, Reorganized Holdings, Murchinson, or any Murchinson Affiliate; any agreement between You or Spears and any of those Persons; and any compensation or other remuneration paid or payable to You or Spears in connection with any Eletson Entity, the Preferred Shares, or any Relevant Proceeding.

3. Any direct or indirect interest held by You or Spears in Levona, the Preferred Shares, Reorganized Holdings, any claim in the Chapter 11 Cases, or any recovery in the Adversary Proceeding, and any arrangement Concerning the funding of, or the sharing of any recovery in, the Adversary Proceeding.

4. The Spears Account, including its custody, structure, and retention, any other account or repository used by Spears to conduct business Concerning Levona, Gas, EMC, or any

Relevant Proceeding, and the criteria and process by which Documents in the Spears Account have been or will be identified as Plaintiffs' documents for delivery to Plaintiffs.

5. Your and Spears's role in (a) the acquisition of Blackstone's former preferred interest in Gas; (b) the BOL, the Loan, the Purchase Option, and the nomination of the Purported Nominees; (c) the FAL, the LLCA, and the Share Transfer Agreement; (d) the Unigas Transaction; and (e) the financing or refinancing of any Vessel.

6. Without regard to the Relevant Period, any valuation, appraisal, model, projection, or assessment of the Preferred Shares, Gas, EMC, or any Vessel, and the losses alleged in Paragraphs 70, 119, 127, and 131 of the Amended Complaint.

7. From October 1, 2020 to the present, Communications between You or Spears and Kanelos, and any payment, compensation, or other consideration provided, offered, or proposed to Kanelos.

8. For the period from October 25, 2024 to the present, Communications Concerning the Proof of Claim, the Complaint, or the Amended Complaint between Spears and any other director, officer, or representative of Levona, Reorganized Holdings, or Corp., and any common-interest, joint-prosecution, or joint-defense agreement among them.

Dated: November 13, 2026

GIBSON, DUNN & CRUTCHER LLP

By: <u>/s/ *Marshall R. King*</u>
Marshall R. King
mking@gibsondunn.com
Nancy E. Hart
nhart@gibsondunn.com
C. Lee Wilson
clwilson@gibsondunn.com
200 Park Avenue, 48th Floor
New York, New York 10166
Tel: 212.351.4000

*Attorneys for Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Louis M. Solomon, and Charles G. Weller*

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

By: <u>/s/ *Elkan Abramowitz*</u>
Elkan Abramowitz
eabramowitz@maglaw.com
Richard F. Albert
ralbert@maglaw.com
556 Fifth Avenue
New York, New York 10017
(212) 880-9560 (phone)

*Attorneys for Defendants Louis M. Solomon and Charles G. Weller*