**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ELETSON HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 23-10322 (JPM)<br>Jointly Administered |
| LEVONA HOLDINGS LTD., ELETSON GAS LLC, and EMC GAS CORP.,<br><br>Plaintiffs,<br><br>- against –<br><br>ELETSON HOLDINGS INC., ELETSON CORP., APARGO LIMITED, FENTALON LIMITED, DESIMUSCO TRADING LIMITED, VASSILIS KERTSIKOFF, VASILIS HADJIELEFTHERIADIS, LASCARINA KARASTAMATI, REED SMITH LLP (DELAWARE), REED SMITH LLP (ENGLAND & WALES), CHARLES G. WELLER, and LOUIS M. SOLOMON,<br><br>Defendants. | Civ. No. 26-cv-3620 (LJL) |

**FOREIGN NON-PARTIES MURCHINSON LTD. AND ACE148 INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO THE REED SMITH DEFENDANTS' MOTIONS FOR ISSUANCE OF LETTERS ROGATORY**

SICHENZIA ROSS FERENCE CARMEL LLP
1185 Avenue of the Americas, 26th Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Foreign Non-Parties Murchinson Ltd. and Ace148 Incorporated*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

ARGUMENT ..... 6

I. LEGAL STANDARD ..... 6

II. THE COURT SHOULD DENY THE MOTIONS AS TO REQUESTS THAT ARE HARASSING, SPECULATIVE, AND/OR FAR EXCEED THE BOUNDS OF FEDERAL RULE 26 ..... 7

A. The Motions Should Be Denied as to Requests That Are Facially Harassing and Lack Any Plausible Relation to Any Claim or Defense ..... 7

B. The Court Should Narrow the Requests to Include Only Documents from July 1, 2022 through April 24, 2026 ..... 10

C. Requests Seeking All Documents Relating or Referring to the Amended Complaint Are Overbroad and Should Be Denied ..... 11

D. Requests Seeking "Discovery On Discovery" Should Be Denied ..... 12

E. Requests Seeking Discovery on Topics the Parties Have Agreed Not to Pursue in Party Discovery Should Not Be Permitted Against Non-Parties ..... 13

F. The Court Should Reject Requests on Issues on Which Discovery Was Already Conducted or Which the Court Has Decided. ..... 15

III. THE COURT SHOULD LIMIT THE OVERBROAD, UNDULY BURDENSOME, AND IRRELEVANT ASPECTS OF THE REQUESTS ..... 17

A. Requests That Are Facially Unduly Burdensome, Irrelevant, and Disproportionate to the Needs of the Case Should Be Limited ..... 17

B. The Court Should Limit Requests That Seek Seemingly Irrelevant Documents ..... 18

C. The Court Should Narrow the Reed Smith Defendants' Overbroad Definitions ..... 19

IV. THE REQUESTS ARE INCONSISTENT WITH PRINCIPLES OF COMITY ....... 22

V. THE MOTIONS SHOULD BE DENIED AS DRAFTED OR, AT THE VERY LEAST, THE REED SMITH DEFENDANTS SHOULD BE DIRECTED TO SIGNIFICANTLY NARROW THEIR REQUESTS ................................................ 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. New York Times Co.*,
2025 WL 3250875 (S.D.N.Y. Nov. 21, 2025) ... 12

*Burns v. Bank of Am.*,
2007 WL 1589437 (S.D.N.Y. June 4, 2007) ... 14

*Cuomo v. N.Y.S. Assembly Judiciary Comm.*,
683 F. Supp. 3d 258 (E.D.N.Y. 2023) ... 19

*Henry v. Morgan's Hotel Grp.*,
2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ... 17

*In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*,
347 F.R.D. 572 (E.D.N.Y. 2024) ... 12, 13

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2023 WL 4362933 (S.D.N.Y. July 6, 2023) ... 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ... 6

*Kaye v. New York City Health & Hosps. Corp.*,
2020 WL 283702 (S.D.N.Y. Jan. 21, 2020) ... 12

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
841 F. Supp. 2d 769 (S.D.N.Y. 2012) ... 6, 22

*Muslims on Long Island, Inc. v. Town of Oyster Bay*,
2025 WL 1582250 (S.D.N.Y. June 4, 2025) ... 15

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
325 F.R.D. 36 (E.D.N.Y. 2018) ... 19

*Pearlstein v. BlackBerry Ltd.*,
332 F.R.D. 117 (S.D.N.Y. 2019) ... 7, 11

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for Southern District of Iowa*,
482 U.S. 522 (1987) ... 7, 22, 24

*Trellian Pty, Ltd. v. adMarketplace, Inc.*,
2021 WL 363965 (S.D.N.Y. Feb. 3, 2021) ... 9

*United States v. Weisberg*,
2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) .......... 7

**Other Authorities**

Restatement (Third) of the Foreign Relations Law of the United States (1987), § 442(1)(c) ...... 22

**Rules**

Fed. R. Civ. P. 26 .......... 3, 6, 7, 10

Fed. R. Civ. P. 34 .......... 12

Fed. R. Evid. 404 .......... 10

Fed. R. Evid. Rule 608 .......... 10

**Regulations**

22 C.F.R. § 92.54 .......... 22

Foreign non-parties Murchinson Ltd. ("Murchinson") and Ace148 Incorporated ("Ace148") (Murchinson and Ace148 are hereinafter referred to as, the "Canadian Entities"), by and through their attorneys, Sichenzia Ross Ference Carmel LLP, respectfully submit this memorandum of law in opposition to the motions for issuance of letters rogatory by Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon (collectively, the "Reed Smith Defendants") seeking document production and testimony from Murchinson and Ace148, respectively (the "Motions").[1]

## PRELIMINARY STATEMENT

The Reed Smith Defendants' Motions, as drafted, are fatally flawed. They seek discovery that the parties in this matter have agreed is overly burdensome; seek documents on topics that this Court has already found are irrelevant; and demand documents about unrelated entities and imagined conspiracies. Moreover, the premise underlying the Motions is false.

The Canadian Entities do not oppose discovery, to wit, Murchinson and Ace148, as foreign non-parties to this action, have agreed to identify Plaintiffs' documents on their systems and deliver them to Plaintiffs' counsel for review and production in this case, using the search terms the Reed Smith Defendants are negotiating with Plaintiffs and the additional email filters the Reed Smith Defendants requested. The Canadian Entities do not oppose properly limited letters rogatory directed to non-duplicative information that bears on the claims and defenses actually at issue.

What the Canadian Entities oppose is the Motions as drafted. The proposed letters rogatory contain 41 document requests and 13 deposition topics directed to Murchinson, and 28 document

---

[1] Herein, "Vacatur Dkt. No." refers to *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL) (S.D.N.Y.) (the "Vacatur Proceeding"), and "Bankr. Dkt." to *In re Eletson Holdings Inc.*, No. 23-10322 (JPM) (Bankr. S.D.N.Y.).

requests and 12 deposition topics directed to Ace148.[2] These requests include definitions that sweep in every affiliate, officer, agent, and attorney, reach back to January 2021, and extend to subjects that have nothing to do with this case, including a New Jersey company that happens to share Murchinson's name, Mr. Bistricer's citizenships and place of birth, and years-old press coverage of unrelated investments.

The Motions rest on an accusation, not evidence. The Reed Smith Defendants claim that Murchinson is "playing a shell game to conceal crucial evidence," ECF No. 126 at 1, but they do not identify a single responsive document that has been withheld. The discovery process they attack mirrors the segregation process this Court found "reasonable" in the Vacatur Proceeding, and has been the subject of *ad nauseam* negotiations in this matter, down to the custodians, search terms, and email-domain filters. Baseless speculation that documents "likely will be withheld" is insufficient to subject foreign non-parties to sweeping compulsory process.

Incredibly, the Motions also ask Canadian non-parties to provide what the Reed Smith Defendants have declined to pursue, or refused to provide, in party discovery. For example, they demand the Canadian Entities' document-retention policies and the "criteria and process" of their review, after agreeing with Plaintiffs to mutually withdraw requests for litigation-hold materials and rejecting Plaintiffs' request for discovery into their own collection and review of documents. Also, they demand funding and recovery-sharing arrangements, after proposing that the parties mutually withdraw their own request on that very subject. They also demand documents dating back to January 2021, while refusing to search their own files for anything before July 1, 2022. They do not confine searches of the Canadian Entities' files to the data sources and search parameters the parties have agreed to apply to their own searches. And they demand common-

---

[2] These figures account for lettered subparts within the requests to the Canadian Entities.

interest agreements that the parties agreed in the ESI Protocol would be exchanged only upon an assertion of that protection. Non-parties should not be made to bear burdens that the parties themselves have chosen not to bear.

Any urgency, moreover, is of the Reed Smith Defendants' own making. After all, they told the Court in July 2026 that they would need discovery from Murchinson and "other Canadian entities," yet they waited until November 10 and 13, roughly ten weeks before the January 22, 2027 deposition deadline, to file the Motions. In the meantime, much of what they seek is already being delivered to Plaintiffs for production in this action. Rule 26, principles of comity, and this Court's own handling of a letter rogatory to Murchinson in the Vacatur Proceeding all point to the same result: the Motions should be denied as to the requests identified in Points II and V, and any letter rogatory that issues should carry the specific limits set out herein.

## STATEMENT OF FACTS

### The Canadian Entities and the Prior Proceedings

The Court is familiar with the history of these disputes, and the Canadian Entities recite only the facts pertinent to the Motions. Murchinson is a Toronto-based investment adviser registered with the Ontario Securities Commission; it advises the funds, Nomis Bay Ltd. and BPY Limited, that invested in Plaintiff Levona Holdings Ltd. ("Levona"), a special purpose vehicle formed to acquire Blackstone's preferred interest in Eletson Gas LLC ("Gas"). Vacatur Dkt. No. 595-3 at 14:7-15, 19:22-20:18; Vacatur Dkt. No. 435 at 18. Ace148 is a separate Toronto company whose founder and principal, Adam Spears, is a director of Levona. ECF No. 136-1 at 1, 9 (Def. Nos. 3, 49). Neither Murchinson nor Ace148 is a party to this action, and neither was a party to the JAMS arbitration. *See* Vacatur Dkt. No. 678 at 19.

This Court has also already addressed a request for a letter rogatory to Murchinson. In the Vacatur Proceeding, Intervenors sought categories that reappear in the present requests, including

"[a]ll Documents concerning Peter Kanelos . . . from October 2020 to present." Vacatur Dkt. No. 435 at 13. The Court granted the request as to Murchinson only in part, limiting it to "documents and communications regarding the At-Issue documents prior to July 3, 2024," and denied outright the letters directed to Levona's foreign counsel and to Nomis Bay and BPY, reasoning that the Court "should not ask a foreign court to obtain for use in proceedings before it evidence that it can compel the parties before it to produce." *Id.* at 17-20. The Court likewise found reasonable the process by which Murchinson's counsel segregated Levona's documents from Murchinson's documents for production by Levona, Vacatur Dkt. No. 495 at 2, and declined to require Levona to produce Murchinson's documents absent "evidence of an alter ego relationship between Murchinson and Levona." Vacatur Dkt. No. 678 at 51 n.16.

**<u>Discovery in This Action and the Canadian Entities' Agreement to Provide Plaintiffs' Documents</u>**

Plaintiffs commenced this action on April 24, 2026, and the Court withdrew the reference on June 17, 2026. Bankr. Dkt. 2071. On September 8, 2026, Plaintiffs served their ESI disclosure, which identified Messrs. Spears, Lichtenstein, and Elliott Bistricer as custodians and explained that their documents are maintained in non-segregated accounts controlled by Ace148 and Murchinson, from which "Plaintiffs' documents will first need to be identified . . . for delivery to Plaintiffs." ECF No. 128-2 at 1. Plaintiffs later agreed to add Joshua Fenttiman as a custodian, and to accept service of deposition notices for Messrs. Spears, Lichtenstein, and Elliott Bistricer. ECF No. 128-1 at 37, 48, 64. On October 2, Plaintiffs identified the undersigned as counsel to Murchinson and Ace148. *Id.* at 48.

The Reed Smith Defendants first contacted the undersigned on October 7, 2026. ECF No. 128-3 at 7-8. The next day, counsel confirmed the limited representation, explained that Murchinson is not related to the New Jersey entity of the same name, and advised that counsel was

not authorized to accept service of subpoenas. *Id.* at 7. On October 21, counsel confirmed that Murchinson would provide Levona's documents to Levona using search terms and document review, and on October 27 confirmed that the same was true of Ace148 and that the search terms were being developed with Plaintiffs' counsel. *Id.* at 2-4.

That same day, Plaintiffs' counsel described the process in detail. ECF No. 128-1 at 18-20. It mirrors the one the Court found reasonable in the Vacatur Proceeding. Vacatur Dkt. No. 495.

When the Reed Smith Defendants asked for more, they received it. On November 4, "in [an] effort to compromise," Murchinson agreed to add to its filtered review each of the additional domains and email addresses the Reed Smith Defendants had requested, and Plaintiffs confirmed that documents concerning the vessels and their financing will be provided. ECF No. 128-1 at 16-17. Six days later, on November 10, 2026, the Reed Smith Defendants filed the Motion directed to Murchinson; the Motion directed to Ace148 followed on November 13.

**<u>The Reed Smith Defendants' Positions in Party Discovery</u>**

In party discovery, the Reed Smith Defendants have taken positions that cannot be reconciled with what they now demand from non-parties. They have refused to search their own files for documents dated before July 1, 2022. ECF No. 128-1 at 30, 41. They agreed with Plaintiffs to mutually withdraw requests for litigation-hold and preservation materials, *id.* at 28, 48, and rejected as overbroad and irrelevant Plaintiffs' request for documents concerning their collection, custodians, search terms, and review of documents in other proceedings, *id.* at 4-5. They proposed that the parties mutually withdraw the Reed Smith Defendants' own Request No. 4, concerning the funding, direction, control, and sharing of proceeds of the litigation, together with Plaintiffs' request for indemnification agreements, *id.* at 28, 54, and they have declined to produce documents concerning their own fees and collection efforts beyond billing records, *id.* at 30, 57-58. And on

November 2, 2026, they withdrew their motion to compel against Plaintiffs once Plaintiffs agreed to produce in response to narrowed requests. *Id.* at 10-13.

**The Meet-and-Confer on the Motions**

After the Motions were filed, counsel for the Canadian Entities and the Reed Smith Defendants met and conferred by videoconference and email. The Reed Smith Defendants agreed (i) that Murchinson need not produce documents that it is providing to Levona for Levona's potential production, and (ii) to revise or withdraw certain of their requests. *See* the accompanying Declaration of Marc J. Ross, Esq. ("Ross Decl."), Ex. B. The parties were unable, however, to resolve the vast majority of the Canadian Entities' objections, necessitating this opposition.

## ARGUMENT

### I. LEGAL STANDARD

A letter rogatory or letter of request "is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004). "In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012). The movant bears the burden of persuasion, and this Court has enforced it request by request, declining to transmit requests as to which the movants had "not satisfied their burden to show" relevance. Vacatur Dkt. No. 435 at 15-17, 20.

Under the Federal Rules, nonprivileged matter is discoverable only if it is "relevant to any party's claim or defense" and "proportional to the needs of the case," a standard that considers "the importance of the discovery in resolving the issues" and "whether the burden . . . of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court "must limit" the requested discovery if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" if "the party seeking discovery has had ample opportunity to

obtain the information by discovery in the action;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Courts are empowered to, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts exercise "special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). Ultimately, "[t]he decision of whether to issue letters rogatory is within the discretion of the court." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 4362933, at *1 (S.D.N.Y. July 6, 2023) (Liman, J.) (citation omitted).

## II. THE COURT SHOULD DENY THE MOTIONS AS TO REQUESTS THAT ARE HARASSING, SPECULATIVE, AND/OR FAR EXCEED THE BOUNDS OF FEDERAL RULE 26

### A. The Motions Should Be Denied as to Requests That Are Facially Harassing and Lack Any Plausible Relation to Any Claim or Defense.

The Motions seek information and documents that are devoid of any plausible relevance to the claims and defenses in this case, and should be rejected. A motion for issuance of letters rogatory should be denied where the requested foreign discovery constitutes a fishing expedition or seeks information that is not relevant to any claim or defense in the action. *See Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 121 (S.D.N.Y. 2019) (partially denying letter of request where information sought from foreign individual bore "tenuous relation" to claims in the case, and noting that "a non-party especially should not be burdened with preparation for a broader array of topics than is proportional to the needs of the case"); *United States v. Weisberg*, 2011 WL 1327689, at *9 (E.D.N.Y. Apr. 5, 2011) ("broad request constitute[d] a fishing expedition" and was "therefore prohibited in the context of letters rogatory"). In ordering the withdrawal of the bankruptcy reference, the Court identified the substantive issues in this action: the binding offer

letter and the LLC agreement, the Unigas sale and the purported exercise of the purchase option, the defendants' relationships to Eletson's former majority shareholders and their duties to Gas, and "Reed Smith's conduct in representing the defendants." ECF No. 19 at 16. Additional issues relevant to the action are laid out in the Amended Complaint, ECF No. 61.

As outlined herein, many of the requests to the Canadian Entities cannot plausibly relate to the claims or defenses in this action. Document Request Nos. 18 and 19 to Murchinson seek, respectively, "[a]ll Documents and Communications Concerning Murchinson Ltd. with New Jersey Business ID number 0450108038," and "[a]ll Documents and Communications Concerning Chaim Bodner, Curvature Holdings LLC, or Curvature Securities LLC." ECF No. 129-1 at 17. The Reed Smith Defendants assert that "Bodner is the President of Curvature Securities, and Bistricer has an association with a Curvature entity," and claim that this discovery is needed to "determine what relationship, if any, there is between the two entities identified as 'Murchinson Ltd.'" ECF No. 126 at 21 n.6. The relationship, or lack thereof, between Murchinson, a non-party, and other third parties that have no plausible relationship to the action, does not approach the relevance standard the Reed Smith Defendants are required to meet.

Indeed, the Reed Smith Defendants seek this information even though they concede that "Murchinson's counsel has stated that the Murchinson entity in Canada is not related to the entity in New Jersey," *id.*, and have made no showing whatsoever to contest it. Absent further explanation on how or why such information is remotely relevant, Request Nos. 18 and 19 seem like nothing more than a fishing expedition.

The Reed Smith Defendants' harassment veiled in a foreign discovery request goes further still. Document Request No. 20 to Murchinson seeks documents "sufficient to identify all citizenships and places of birth identified as being associated with Marc Bistricer." ECF No. 129-

1 at 18. First, the phrase "places [sic] of birth … as being *associated* with" an individual is nonsensical because people are born in a singular location and places of birth are not associated with individuals. Second, the Reed Smith Defendants fail to explain what relevance Mr. Bistricer's place of birth has to the case, particularly in a context in which they seek such information from Mr. Bistricer's employer. The Reed Smith Defendants' failure to explain the relevance of this request and the Motions' excessive focus on Mr. Bistricer's citizenship, going so far as to state, without support, that Mr. Bistricer is a U.S. citizen, further indicates that the Reed Smith Defendants' intended objective is anything but seeking relevant information. ECF 126 at 1.[3]

Document Request Nos. 14-17 to Murchinson and Document Request Nos. 12 and 13 to Ace148 are similarly problematic. They seek wide-ranging information about purported "Reputational Matters" involving Mr. Bistricer, including SEC administrative proceedings and other litigation involving Murchinson and Mr. Bistricer. *See* ECF No. 129-1 at 8-9 (defining "Reputational Matter" without reference to any proceeding involving Plaintiffs). Document Request Nos. 11 and 12 to Murchinson likewise seek information concerning every regulatory inquiry, lawsuit, complaint, or allegation of wrongdoing concerning Murchinson, any Murchinson Affiliate, or Mr. Bistricer, without limitation as to subject. *Id.* at 16. None of these matters involves Plaintiffs or bears on any issue, claim, or defense in this action. In any event, any legal proceedings involving Murchinson and Mr. Bistricer are a matter of public record, and the Reed Smith Defendants have no need for *non-public* documents and communications; materials that are not in

---

[3] If the intended purpose of the request was to explore some other route to discovery from Mr. Bistricer, that likely would be improper, *see Trellian Pty, Ltd. v. adMarketplace, Inc.*, 2021 WL 363965, at *2 (S.D.N.Y. Feb. 3, 2021) ("Courts . . . must be particularly sensitive to weighing the probative value [for third-party discovery]"), but would also be appropriately sought in an application directed to Mr. Bistricer, not through discovery from his employer through a foreign court. Pressing a non-party to document where its chief executive was born and what citizenships he holds, for no purpose connected to the merits, is harassment.

the public domain cannot have affected Murchinson's or Mr. Bistricer's *public* reputation.

These requests are harassment, and they should be recognized as such. Neither Murchinson nor Mr. Bistricer is a party, and none of the issues this Court has identified puts the reputation of either in question. Whether Murchinson or Mr. Bistricer was ever the subject of a regulatory inquiry, a lawsuit, or an accusation in some unrelated matter does not make any claim or defense here more or less probable. Offered to suggest how Murchinson or Mr. Bistricer acted in this matter, such material is barred by Federal Rule of Evidence 404; offered to attack a witness's character for truthfulness, it is extrinsic evidence barred by Rule 608(b). *See* Fed. R. Evid. 404(a)(1), (b)(1), 608(b). What remains is the only use such material has, which is to harass a non-party and its chief executive. That is the "improper purpose" that Rule 26(g) forbids, Fed. R. Civ. P. 26(g)(1)(B)(ii), and the "annoyance, embarrassment, oppression" that Rule 26(c) exists to prevent. The Court should decline such an attempted use.

Accordingly, the Canadian Entities respectfully request that the Court deny the Motions as to Document Request Nos. 11, 12, 14, 15, 16, 17, 18, 19, and 20, and Deposition Topics Nos. 7 and 8, to Murchinson, and Document Request Nos. 12 and 13 to Ace148 because they are harassing and the Motions fail to plausibly and reasonably explain their relevance.

**B. The Court Should Narrow the Requests to Include Only Documents from July 1, 2022 through April 24, 2026.**

The Reed Smith Defendants seek to impose a greater discovery burden on the non-party Canadian Entities than they are willing to bear themselves. The requests define the "Relevant Period" as "January 1, 2021 through April 24, 2026." ECF No. 129-1 at 8 (Def. No. 45). Yet the Reed Smith Defendants have refused to search their own files for documents dated before July 1, 2022, insisting that they "have no reason to believe that any relevant communications occurred prior to July 1, 2022." ECF No. 128-1 at 41. Plaintiffs have agreed to produce documents dated on

or after January 1, 2022. *See* ECF No. 128-2 at 2. There is no basis to require foreign non-parties to search eighteen months further back than the Reed Smith Defendants will search their own files. *See Pearlstein*, 332 F.R.D. at 121. At a minimum, the period should begin no earlier than January 1, 2022, the date Plaintiffs are using.

As to requests in which the Reed Smith Defendants seek to impose an even more expansive period on the Canadian Entities, the Court should certainly reject those. Document Request No. 7 (and Deposition Topic No. 6) to Murchinson seeks, "[w]ithout regard to the Relevant Period, all Documents Concerning Kanelos from October 2020 to the present." ECF No. 129-1 at 16, 21. Document Request No. 8 and Deposition Topic No. 7 to Ace148 likewise reach back to October 2020 to sweep in all communications with, and any consideration offered to, Peter Kanelos. ECF No. 136-1 at 16, 20. Beyond their temporal overbreadth, these requests seek information that the Court has previously held is not relevant to the issues in this case. *See infra* Point II(F).

Accordingly, to the extent the Court determines that a subset of the Reed Smith Defendants' requests is appropriate, the Court should limit the requests to documents from July 1, 2022 through April 24, 2026.

**C. Requests Seeking All Documents Relating or Referring to the Amended Complaint Are Overbroad and Should Be Denied.**

Document Request No. 6(b) and Deposition Topic No. 5 to Murchinson, and Document Request No. 10(a) and Deposition Topic No. 8 to Ace148, seek communications and testimony concerning the Proof of Claim, the Complaint, or the Amended Complaint, without further limitation. ECF No. 129-1 at 15, 20-21; ECF No. 136-1 at 16, 20. While the Reed Smith Defendants have agreed to replace "concerning" with "referring to" (*see* Ross Decl., Ex. B at 1-2), the requests remain impermissibly vague and overbroad in scope, and require the Canadian Entities to discern whether documents may indirectly "refer to" the Proof of Claim, the Complaint,

or the Amended Complaint in any manner whatsoever. Such a request "fails to 'describe with reasonable particularity each item or category of items to be inspected,' Fed. R. Civ. P. 34(b)(1), and amounts to little more than a request to produce 'all documents relating to the allegations in the Complaint,' which is overbroad." *Acosta v. New York Times Co.*, 2025 WL 3250875, at *2 (S.D.N.Y. Nov. 21, 2025).

Accordingly, the Motions should be denied as to Document Request No. 6(b) and Deposition Topic No. 5 to Murchinson and Document Request No. 10(a) and Deposition Topic No. 8 to Ace148 because those requests are impermissibly vague and ambiguous.

**D. Requests Seeking "Discovery On Discovery" Should Be Denied.**

Requests seeking discovery on discovery should be rejected, particularly in a context in which the Reed Smith Defendants have refused to produce documents concerning those topics in party discovery and are themselves accused of discovery misconduct. "Where, as here, a party seeks 'discovery on discovery,' that party 'must provide an adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process[.]'" *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 590 (E.D.N.Y. 2024) (quoting *Kaye v. New York City Health & Hosps. Corp.*, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020)). Courts generally decline to second-guess a party's, let alone a non-party's, search methodology "unless the requesting party shows a specific deficiency in production or unreasonableness in process." *Id.*

Document Request No. 25 to Murchinson seeks documents sufficient to show Murchinson's email accounts and repositories, its document-retention policies, and "the criteria and process by which You have identified, or will identify, Documents as Plaintiffs' documents." ECF No. 129-1 at 19. Document Request No. 14 to Ace148 seeks the same categories of

information as to the Spears Account, ECF No. 136-1 at 17. Deposition Topic No. 9 to Murchinson and Deposition Topic No. 4 to Ace148 suffer from the same defects.

The Reed Smith Defendants have made no showing of misconduct or improper deletion of documents that could justify such discovery, and there is none, so the requests and topics are facially improper. But more significantly, the Reed Smith Defendants rejected Plaintiffs' attempt to seek the same category of documents from them in party discovery. *See* ECF No. 128-1 at 69–70 (Reed Smith Defendants' position that Plaintiffs' Request No. 39 (litigation hold and retention policies) was improper). The parties eventually mutually withdrew their requests for litigation-hold and preservation materials, *see* ECF No. 128-1 at 28, 48, and now the Reed Smith Defendants demand from foreign non-parties documents they have declined to produce themselves.

Finally, the accusation of concealment sits uneasily with its source. In vacating the arbitral award, this Court found that Reed Smith's former clients fraudulently withheld documents in the arbitration. *See* Vacatur Dkt. No. 678 at 115-122. And while the Court did not conclusively find that the Reed Smith Defendants were involved in the initial improper withholding, the Court did find that Reed Smith "[a]t a minimum, . . . was the vehicle through which a fraud was committed," *id.* at 110, providing "an adequate factual basis to justify the discovery" from them. *In re Exactech*, 347 F.R.D. at 590 (internal quotes omitted). The same cannot be said about the Canadian Entities.

Accordingly, the Court should deny the Motions as to Document Request No. 25 and Deposition Topic No. 9 to Murchinson, and Document Request No. 14 and Deposition Topic No. 4 to Ace148.

**E. Requests Seeking Discovery on Topics the Parties Have Agreed Not to Pursue in Party Discovery Should Not Be Permitted Against Non-Parties.**

The Court should not allow the Reed Smith Defendants to seek additional discovery from the Canadian Entities that the parties themselves have mutually agreed not to pursue from each

other. For example, Document Request No. 6(c) to Murchinson and Document Request No. 10(b) to Ace148 seek "any common-interest, joint-prosecution, or joint-defense agreement between or among Levona, any Murchinson Affiliate, Reorganized Holdings, and Eletson Corp." ECF No. 129-1 at 15; ECF No. 136-1 at 16. But the parties agreed in the ESI Protocol to exchange information concerning common-interest or joint-defense protection only "upon first assertion," *see* ECF No. 81 § X(9), and the Reed Smith Defendants have rejected attempts by Plaintiffs to seek agreements on that topic, notwithstanding their assertion of common interest privilege on their privilege logs in the Vacatur Proceeding. *See* ECF No. 135-3 at 4. The Canadian Entities have made no such assertion. Non-parties should not be required to provide what the parties themselves need not. *Cf. Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (explaining that third party discovery is not meant to provide a substitute for party discovery).

Similarly, Request No. 5(d) and Deposition Topic No. 4 to Murchinson, and Request Nos. 4 and 5 and Deposition Topic Nos. 2 and 3 to Ace148, are another attempt to get discovery on a topic they narrowed in party discovery. The requests seek agreements concerning compensation, funding, and the sharing of any recovery in this action and related proceedings. ECF No. 129-1 at 15, 20; ECF No. 136-1 at 15, 19. Yet the Reed Smith Defendants proposed that the parties mutually withdraw their own request to Plaintiffs on precisely that subject: the funding, direction, control, and sharing of proceeds of the litigation, together with Plaintiffs' request for indemnification agreements, and they have declined to produce documents concerning their own fees and collection efforts beyond billing records. ECF No. 128-1 at 28, 30, 54, 57-58.

Finally, the Reed Smith Defendants' attempt to get documents and data that they agreed not to pursue with Plaintiffs should not be permitted. In party discovery, the Reed Smith Defendants and Plaintiffs agreed to not seek the collection, review, and production of data on

mobile devices. ECF No. 128-1 at 28 ("neither side will include mobile devices among the data to be searched"). Notwithstanding that agreement, and the Reed Smith Defendants' unwillingness to do the same for their own custodians, they seek that data from non-parties. *See* ECF No. 129-1 at 4 (definition of "Document" to include data from mobile devices and messaging applications); *id.* at 14 (Request No. 1 to Murchinson seeking documents in hard copy); ECF 136-1 at 4 (similar for Ace148); *id.* at 14 (similar for Ace148). In any event, the Reed Smith Defendants have proffered no reasonable basis to believe that Murchinson or Ace148 has control over its employees' mobile devices nor a justification to believe that there is relevant information on those devices. *See Muslims on Long Island, Inc. v. Town of Oyster Bay*, 2025 WL 1582250, at *3-*4 (S.D.N.Y. June 4, 2025) (holding even in the context of party discovery that the party seeking such information must make a showing that mobile devices likely contain relevant information).

For the reasons stated herein, the Court should deny the Motions as to Document Request Nos. 5(d) and 6(c) and Deposition Topic No. 4 to Murchinson and Document Request Nos. 4–5, 10(b) and Deposition Topics Nos. 2 and 3 to Ace148, and limit any requests to documents in email custodial accounts associated with relevant custodians.

**F. The Court Should Reject Requests on Issues on Which Discovery Was Already Conducted or Which the Court Has Decided.**

The Reed Smith Defendants' attempt to relitigate issues on which there has already been extensive discovery, and on which the Court has made findings, is improper. Document Request No. 8 to Murchinson and Document Request No. 9 to Ace148 seek documents sufficient to show when and in what capacity Murchinson and Ace148 first obtained or learned of the "Withheld Documents," ECF No. 129-1 at 16, ECF No. 136-1 at 16. Murchinson has already searched for documents on that subject and did not locate any responsive documents. *See* Ross Decl. ¶ 5. There is no basis to require that search to be repeated and the Reed Smith Defendants have offered none.

Similarly, when and in what capacity Mr. Spears received those documents was litigated in the Vacatur Proceeding. Mr. Spears testified that the only Withheld Documents he obtained came to him in connection with the bankruptcy and that he did not share them with Levona, and this Court found that "[t]he testimony does not establish that Spears had any of the Withheld Documents" during the arbitration. Vacatur Dkt. No. 678 at 104 & 136 n.41. And when the Court authorized a letter rogatory to Murchinson in that proceeding, it excluded "documents and communications relating to knowledge gained by Murchinson as a result of Pach Shemen's participation in the bankruptcy proceeding." Vacatur Dkt. No. 435 at 20. The Reed Smith Defendants offer no reason to relitigate the point through a foreign non-party.

The Reed Smith Defendants also seek documents and testimony concerning Peter Kanelos, which was the subject of extensive discovery in the arbitration and the Vacatur Proceeding. Document Request Nos. 7 and 24(e) and Deposition Topic No. 6 to Murchinson and Document Request No. 8 and 16(e) and Deposition Topic No. 7 to Ace148. ECF No. 129-1 at 16, 18, 21; ECF No. 136-1 at 16, 18, 20. But those documents are not relevant. This Court has already observed that allegations concerning Mr. Kanelos were never tied to any injury to Eletson. In vacating the arbitral award, the Court observed that neither Intervenors nor the arbitrator "explained how any of that conduct injured, or was to the detriment of, Eletson," and that "[n]one of the renumeration paid to Kanelos was from Eletson's share of any Eletson Gas proceeds." Vacatur Dkt. No. 678 at 91-92 n.29. And, as noted, this Court refused to extend a letter rogatory to Murchinson's communications with Mr. Kanelos beyond the narrow topic it had authorized. *See* Vacatur Dkt. No. 494 at 3; Vacatur Dkt. No. 435 at 20. The request for such documents is particularly unnecessary in light of Murchinson's agreement to transmit to Plaintiffs emails on which Mr. Kanelos's personal address appears. To the extent relevant materials with Mr. Kanelos

exist, Plaintiffs will have possession, custody, or control over them. *See* ECF 128-1 at 16 (Plaintiffs conveying Murchinson's agreement to filter for emails with Mr. Kanelos).

In light of the above, the Court should deny the Reed Smith Defendants' Motions as to Document Request Nos. 7, 8, and 24(e) and Deposition Topic No. 6 to Murchinson and Document Request Nos. 8, 9, and 16(e) and Deposition Topic No. 7 to Ace148 because those categories and topics are irrelevant based on the Court's prior findings.

## III. THE COURT SHOULD LIMIT THE OVERBROAD, UNDULY BURDENSOME, AND IRRELEVANT ASPECTS OF THE REQUESTS

### A. Requests That Are Facially Unduly Burdensome, Irrelevant, and Disproportionate to the Needs of the Case Should Be Limited.

The Court should limit or deny requests that fail to adequately limit the requests in a way that would not impose undue burden on the Canadian Entities. Requests that seek "'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition." *Henry v. Morgan's Hotel Grp.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (citation omitted). Document Request No. 1 to each Canadian Entity exemplifies such improper requests because they seek all documents and communications relating to Eletson Gas, EMC Gas, the Preferred Shares, any "Relevant Proceeding," or any Reed Smith Defendant without any limitation whatsoever. ECF No. 129-1 at 14; ECF 136-1 at 14. The requests are overbroad and unduly burdensome; they are the prototypical "[b]lanket requests [that] are plainly overbroad and impermissible." *Henry*, 2016 WL 303114, at *2. The request to Murchinson is even more troubling because it demands documents maintained anywhere on Murchinson's systems, including the entire @murchinsonltd.com domain. ECF No. 129-1 at 14. That request would require a search of every mailbox of every person at Murchinson, without limitation to specific relevant custodians (if any). The Reed Smith Defendants themselves have rejected far narrower search proposals as

producing a review population that "is not reasonable or proportionate." ECF No. 135-3 at 29. Nor should any search of the Canadian Entities' files reach further than the parties' own. The parties have agreed on the data sources and search parameters that govern party discovery, (ECF 128-1), and a letter rogatory should not be used to obtain through Ontario a broader search of the files of Messrs. Spears, Lichtenstein, Fenttiman, and Elliott Bistricer than the Reed Smith Defendants agreed to accept from Plaintiffs for the same individuals. The Court should therefore require the Reed Smith Defendants to narrow Request No. 1 to Murchinson and Ace148, or reject it entirely.

**B. The Court Should Limit Requests That Seek Seemingly Irrelevant Documents.**

Many of the requests include parts that have no apparent relevance to the issues in the case. Request No. 2(a) to Murchinson and Ace148 seeks documents concerning the purchase of the preferred shares from Blackstone, but it is not clear how or why the purchase relates in any way to the case. Document Request No. 23 to Murchinson and Document Request 15 to Ace148 seek "[a]ll Documents and Communications Concerning an Eletson Holdings Inc. and Eletson Finance (US) LLC Offering Memorandum dated December 12, 2013." ECF No. 129-1 at 18; ECF No. 136-1 at 17. That offering memorandum is Eletson Holdings' own document, available from the issuer and the bankruptcy record; a search for all documents "concerning" it is disproportionate and seeks irrelevant information. The Reed Smith Defendants have offered no basis to explain how that information is relevant to the claims and defenses here.

Document Request Nos. 4, 9, and 13 to Murchinson are similarly overly broad because they seek unbounded information concerning "valuation, carrying value, mark, write-up, write-down, or realized or unrealized gain … including investment memoranda, investment committee materials, fund financial statements, investor and limited-partner reporting, and mark-to-market records," a broad set of materials concerning vessels, and communications with investors, auditors, members, placement agents, fund administrators, and other parties involved in the investment

advisory industry. In considering discovery from non-parties, "the Court considers various factors including relevance, the need for the documents, and the breadth of the request." *Cuomo v. N.Y.S. Assembly Judiciary Comm.*, 683 F. Supp. 3d 258, 277 (E.D.N.Y. 2023); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 49-50 (E.D.N.Y. 2018) ("[W]here the breadth and volume of the data requested is potentially vast, proportionality principles require tailoring production to the subject matter of the litigation and the parties involved").

Given Murchinson's extensive role in the investment and financial industry, the request would sweep an inordinate volume of documents and information that is not remotely relevant to the issues in this case. For that reason, the requests must be denied or, at a minimum, be narrowed to, on a sufficient to show basis, the final annual versions of the requested materials and/or the final annual marks, to the extent they exist.

Document Request Nos. 2, 5, 21, and 24 and Deposition Topic Nos. 3 and 10 to Murchinson, and Document Request Nos. 2, 4, 5, 7, 11, and 16 and Deposition Topic Nos. 5 and 6 to Ace148, are similarly overbroad and disproportionate for reasons similar to those stated herein.

Accordingly, to the extent not denied, the Reed Smith Defendants should be required to meet and confer with the Canadian Entities to narrow Document Request Nos. 1, 2, 4, 5, 9, 13, 21, 23, and 24 and Deposition Topic Nos. 3 and 10 to Murchinson, and Document Request Nos. 1, 2, 4, 5, 6, 7, 11, 15, and 16 and Deposition Topic Nos. 5 and 6 to Ace148, to a scope that is permissible under the rules.

**C. The Court Should Narrow the Reed Smith Defendants' Overbroad Definitions.**

The Reed Smith Defendants' definitions reveal a telling double standard. When defining themselves, the Reed Smith Defendants adopt a narrow definition limited to the four named

defendants: "'Reed Smith Defendants' means Defendants Reed Smith LLP (Delaware), Reed Smith LLP (England & Wales), Charles G. Weller, and Louis M. Solomon." ECF No. 129-1 at 8 (Def. No. 43); ECF No. 136-1 at 8 (Def. No. 42). When defining the Canadian Entities and nearly every other entity, however, they sweep in each entity's "predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, members, managers, managed funds, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, representatives, or any other Person acting on its behalf." ECF No. 129-1 at 6 (Def. No. 30, "Murchinson"); *see also id.* at 1-2 (Def. No. 4, "Alpine").

These definitions exceed the uniform definitions of Local Civil Rule 26.3(c)(5), which the requests themselves purport to incorporate, *see* ECF No. 129-1 at 1 (Def. No. 2), through catch-all language such as "or any other Person acting on its behalf." Local Civil Rule 26.3(a) forbids exactly this: "No discovery request may use broader definitions or rules of construction than those set forth in paragraphs (c) and (d)." And the definition of a party in Local Civil Rule 26.3(c)(5) "is not intended to impose a discovery obligation on any person who is not a party to the litigation." The same defect infects Definition Nos. 11 ("BPY"), 16 ("Corp."), 20 ("EMC"), 23 ("Gas"), 24 ("Holdings"), 27 ("Levona"), 30 ("Murchinson"), 33 ("Nomis Bay"), 35 ("Pach Shemen"), 51 ("Unigas"), 58 ("VR Global"), and 60 ("You" or "Your") in the requests to Murchinson, which are also substantially mirrored in the requests to Ace148. Indeed, the definition of "Levona" expressly includes "parent companies (including Murchinson)," so that requests nominally about Plaintiff Levona become requests about Murchinson itself. ECF No. 129-1 at 5 (Def. No. 27).

Other definitions improperly treat Murchinson as a party or presuppose facts that do not exist. Definition No. 31 defines "Murchinson Affiliate" to include "all affiliates of Murchinson, including but not limited to Levona, Nomis Bay, BPY, Pach Shemen, VR Global, and Alpine,"

ECF No. 129-1 at 6, and the instructions then direct Murchinson to produce documents "maintained by You on behalf of, or for the benefit of, Levona or any other Murchinson Affiliate," *id.* at 11 (Instruction No. 2). Those provisions assume that Murchinson can, and is obligated to, produce documents on behalf of Levona and other entities, a premise this Court has already declined to adopt. *See* Vacatur Dkt. No. 678 at 51 n.16 (noting that the Court "did not require Levona to produce Murchinson documents because there was no evidence of an alter ego relationship between Murchinson and Levona"). The Definition for "Murchinson Affiliate" should be struck entirely. Definition No. 46 ("Reorganized Holdings") is likewise overbroad and assumes a separate entity that *does not exist* apart from Eletson Holdings Inc. And Definition No. 32 ("Murchinson Counsel") sweeps in seven law firms, including the undersigned, yet the term does not appear in any of the requests to Murchinson. This definition should likewise be struck entirely.

The definitions in the requests to Ace148 suffer from the same flaw. Definition Nos. 3, 49, and 50 define "Ace148" to include Adam Spears, define "Spears" to cover him "in any capacity in which he has acted," including as a director, officer, or representative of Levona, Gas, Pach Shemen, Reorganized Holdings, and Murchinson, and define the "Spears Account" to reach every mailbox and data repository he uses. ECF No. 136-1 at 1, 9. The instructions then require production "regardless of the capacity in which Spears created, sent or received" the documents. *Id.* at 11-12 (Instruction No. 2). These definitions collapse Ace148 into Mr. Spears in every capacity, including as a director of Plaintiff Levona, so that a request to a non-party becomes party discovery by another name. That is so even though Plaintiffs have agreed to accept service of a deposition notice for Mr. Spears as their representative. *See* ECF No. 135-3 at 64.

Finally, Definition No. 34 ("Ownership Dispute") is impermissibly vague. It reaches any "question as to whether Levona, Eletson Holdings, Eletson Corp., the Individual Defendants, the

Purported Nominees, or any other Person owned, controlled, or was authorized to give instructions or directions on behalf of Gas, EMC, or any Vessel-Owning Subsidiary," ECF No. 129-1 at 6, and thus requires the Canadian Entities to evaluate and draw legal conclusions about what is "in dispute" before they can even identify responsive documents. *See* Document Request No. 3 to Murchinson; Document Request No. 3 to Ace148.

Accordingly, Definition Nos. 4, 11, 16, 20, 23, 24, 26, 27, 30, 31, 32, 33, 34, 35, 46, 51, 58, and 60 in the requests to Murchinson and Definition Nos. 3, 11, 16, 19, 20, 23, 24, 25, 26, 29, 30, 31, 33, 34, 46, 49, 50, and 51 in the requests to Ace148 should be stricken or conformed to Local Civil Rule 26.3, and Document Request No. 3 to Murchinson and Ace148 should be stricken.

## IV. THE REQUESTS ARE INCONSISTENT WITH PRINCIPLES OF COMITY

"Both the issuance and enforcement of letters rogatory by U.S. and foreign courts 'rest entirely upon the comity of courts toward each other, and customarily embody a promise of reciprocity.'" *Lantheus*, 841 F. Supp. 2d at 776 (quoting 22 C.F.R. § 92.54). "When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Societe Nationale*, 482 U.S. at 546.

In the comity analysis, courts weigh the importance of the information, the specificity of the request, where the information originated, the availability of alternative means, and the interests of the two sovereigns. *See Lantheus*, 841 F. Supp. 2d at 792 (quoting Restatement (Third) of the Foreign Relations Law of the United States (1987), § 442(1)(c)). Each of these factors weighs against issuing the requests as drafted.

First, the requests lack the specificity that comity requires. The Reed Smith Defendants concede that letters rogatory must "identify the documents and topics sought with the specificity that an Ontario court requires." (ECF No. 126 at 8; ECF No. 134 at 5.) Yet, as shown above, the requests rely on open-ended definitions, an extended Relevant Period, requests for "all" documents

and communications concerning this action, related proceedings, and unrelated "reputational" matters, as well as "discovery on discovery." Asking the Ontario Superior Court of Justice to enforce requests of that breadth against foreign non-parties—particularly where the parties are not applying the same standards to their own discovery productions—is not the measured request for assistance that comity contemplates.

Second, alternative means of securing the information exist and are already in use. Murchinson is identifying, collecting, and transmitting documents concerning the business of Levona, Eletson Gas, and EMC Gas to Plaintiffs' counsel for production in this action, and Ace148 is doing the same with respect to Plaintiffs' documents in Mr. Spears's account. (ECF No. 126 at 7; ECF No. 134 at 18-19.) The Reed Smith Defendants also have full party discovery from Plaintiffs and Eletson. ECF No. 128-1. Their own requests to Ace148 concede the overlap, excusing production of "any documents that Plaintiffs have already produced in this action." ECF No. 136-1 at 12. The availability of those channels weighs heavily against burdening a foreign court and foreign non-parties with duplicative compulsory process before that discovery is complete. *See* Vacatur Dkt. No. 435 at 17-18.

Third, the information sought did not originate in the United States, and Canada's interests are implicated. The Reed Smith Defendants acknowledge that Murchinson is an Ontario entity with its principal place of business in Toronto and that Ace148 is a Toronto-based non-party. (ECF No. 126 at 22; ECF No. 134 at 1.) Their assertion that there is "no harm to Canada's sovereign interest" (ECF No. 126 at 22) ignores Canada's legitimate interest in protecting its residents, particularly non-parties, from expansive, American-style discovery untethered to the claims actually at issue. The U.S. Supreme Court has directed courts to "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of

its operations." *Societe Nationale*, 482 U.S. at 546. That admonition applies with even greater force to foreign non-parties.

Finally, this Court has already shown how comity should be applied to requests directed to Murchinson. In the Vacatur Proceeding, the Court authorized a letter rogatory only to the extent the requests were limited to a narrowed set of documents and communications, and it denied requests (such as those involving communications with Peter Kanelos) that lacked those limitations. *See* Vacatur Dkt. No. 494 at 2-3; Vacatur Dkt. No. 435 at 13, 19-20. The Court should exercise the same close supervision here, and decline to transmit requests that sweep far more broadly than anything the Court has previously approved.

## V. THE MOTIONS SHOULD BE DENIED AS DRAFTED OR, AT THE VERY LEAST, THE REED SMITH DEFENDANTS SHOULD BE DIRECTED TO SIGNIFICANTLY NARROW THEIR REQUESTS

The requests are so pervasively improper — speculative, overbroad, and disproportionate to the needs of the case — that they justify denying the Motions in their entirety. The Reed Smith Defendants chose to serve 41 document requests and 13 deposition topics on Murchinson, and 28 document requests and 12 deposition topics on Ace148, when counting subparts. At minimum, the Canadian Entities respectfully request that the Motions be denied as to Document Request Nos. 3, 5(d), 6(b), 6(c), 7, 8, 11, 12, 14 through 20, 24(e), and 25 and Deposition Topic Nos. 4 (to the extent it concerns funding or the sharing of any recovery), 5, 6, 7, 8, and 9 to Murchinson, and as to Document Request Nos. 3, 4, 5, 8, 9, 10, 12, 13, 14, and 16(e), and Deposition Topic Nos. 2, 3, 4, 7, and 8 to Ace148. For the reasons in Points II.A through II.F, each seeks material that is irrelevant, that the parties have agreed not to pursue, or that has already been litigated or searched.

The requests and topics addressed in Point III should be denied as drafted. To the extent any of them proceeds, and as to every request and topic not addressed above, any letter rogatory should carry five limits, each of which the Court can impose without redrafting the requests: (i)

the Relevant Period begins on July 1, 2022 or, at the earliest, January 1, 2022; (ii) the search is confined to the custodial files of Messrs. Spears, Lichtenstein, Fenttiman, and Elliott Bistricer and to the search terms the Reed Smith Defendants proposed; (iii) documents provided to Plaintiffs' counsel for production in this action are excluded; (iv) no data source, and no method of search or review, is required beyond those the parties have agreed to apply to their own files; and (v) the definitions and instructions identified in Point III.C are stricken or conformed to Local Civil Rule 26.3. That is the course the Court took in the Vacatur Proceeding, where it set the limits itself and left the parties only to submit a conforming letter. Vacatur Dkt. No. 435 at 20.

## CONCLUSION

For the foregoing reasons, Murchinson and Ace148 respectfully request entry of an Order (a) denying the Motions as to the document requests and deposition topics as set forth above; (b) limiting any letter rogatory that issues as to the remaining requests and topics as set forth above; and (c) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 23, 2026

Respectfully submitted,

SICHENZIA ROSS FERENCE CARMEL LLP

By: *_/s/ Marc J. Ross_*

Marc J. Ross, Esq.
John J. Elliott, Esq.
Amit Shertzer, Esq.
1185 Avenue of the Americas, 26th Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Foreign Non-Parties*
*Murchinson Ltd. and Ace148 Incorporated*